No. 15-1823

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

STUDENTS FOR FAIR ADMISSIONS, INC.,
Plaintiff – Appellee,
v.
PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD
CORPORATION),
Defendant – Appellee;

SARAH COLE, FADHAL MOORE, ARJINI KUMARI NAWAL, ITZEL
VASQUEZ-RODRIGUEZ, KEYANNA WIGGLESWORTH, M.B., K.C., Y.D.,
G.E., A.G., I.G., R.H., J.L., R.S.,
Movants – Appellants.
_____

On Appeal from the United States District Court
for the District of Massachusetts
_____

**BRIEF FOR MOVANTS – APPELLANTS**
_____

Lawrence E. Culleen
Nancy L. Perkins
ARNOLD & PORTER, LLP
555 12th Street, NW
Washington, D.C. 20004
Tel: (202) 942-5000

Steven L. Mayer
ARNOLD & PORTER, LLP
10th Floor, Three Embarcadero Center
San Francisco, CA  94111
Tel: (415) 471-3100

Jon M. Greenbaum
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005
Tel: (202) 662-8600

Iván Espinoza-Madrigal
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND ECONOMIC
JUSTICE
294 Washington Street, Suite 443
Boston, MA 02108
Tel: (617) 988-0624

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ......................................................................... ii

Statement Regarding Oral Argument ......................................................v

Jurisdictional Statement .....................................................................1

Statement of the Issue .......................................................................1

Statement of the Case .......................................................................1

Standard of Review...........................................................................7

Summary of Argument ......................................................................8

Argument........................................................................................11

    I.  THE STUDENTS HAVE DIRECT, PROTECTABLE INTERESTS THAT
       WOULD BE IMPAIRED BY THE RESULT SFFA SEEKS ......................13

      A. The Applicant Students' Interest in the Opportunity for Admission
         is Direct, Not Contingent...........................................................16

      B. Both Sets of Students Have a Protectable Interest in the Legality
         of a Race-Conscious Admissions Policy Even If They Cannot
         Bring a Claim Requiring Harvard to Adopt It..........................21

      C. The Outcome of the Litigation Could Impair the Students' Interests
         and Leave Them Without Recourse .........................................26

    II.  NEITHER HARVARD NOR A COMBINATION OF HARVARD
       AND SFFA WILL ADEQUATELY REPRESENT THE STUDENTS.......28

      A. The Students Met Their Burden By Showing Harvard Serves
         Constituencies Whose Interests Are at Odds with Their Own.................29

      B. The Fact That Certain of the Students' Issues Will Be Raised
         by the SFFA, and not Harvard, Demonstrates Inadequacy of
         Representation ........................................................................33

      C. *Amici* Status Is Not a Substitute for Adequate Representation
         By a Party When Arguments Depend on Factual Development..............35

Conclusion ....................................................................................35

Addendum

    Mem. & Order of Proposed Def-Intervenors' Mot. to Intervene, June 15,
    2015, ECF No. 52.

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
    440 F.3d 541 (1st Cir. 2006)...............................................29, 30, 31, 34

*Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v.
    Dep't of Interior*,
    100 F.3d 837 (10th Cir. 1996) ...........................................................35

*Conservation Law Found. of N.E. v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992)............................................ 13, 16, 21, 22, 23, 26, 31

*Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*,
    219 F.3d 31 (1st Cir. 2000)................................ 7, 8, 9, 15, 16, 17, 18, 19, 20, 24

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
    172 F.3d 104 (1st Cir. 1999)...................................................8, 21, 23, 25, 29, 30

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994)..................................................................................1

*Flynn v. Hubbard*,
    782 F.2d 1084 (1st Cir. 1986)..............................................................26

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) .........................9, 13, 16, 18, 19, 20, 22, 27, 29, 31

*In re Lopez-Soto*,
    764 F.2d 23 (1st Cir. 1985)...................................................................24

*Moosehead Sanitary Dist. v. S. G. Phillips Corp.*,
    610 F.2d 49 (1st Cir. 1979)...................................................................26

*New York Pub. Interest Research Group, Inc. v. Regents of University
    of State of N.Y.*,
    516 F.2d 350 (2d Cir. 1975) .................................................................23

*Northeast Florida Chapter of Associated General Contractors of*
  *America v. City of Jacksonville, Fla.*,
  598 U.S. 656 (1993)..................................................................................24

*NRDC v. U.S. Nuclear Regulatory Comm'n*,
  578 F.2d 1341 (10th Cir. 1978) ..................................................23, 24

*P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y La*
  *Judicatura*,
   637 F.3d 10 (1st Cir. 2011)..........................................................4, 12

*Public Service Co. of New Hampshire v. Patch*,
  136 F.3d 197 (1st Cir. 1998)......................................................20, 30

*Travelers Indem. Co. v. Dingwell*,
  884 F.2d 629 (1st Cir. 1989)................................15, 16, 25, 26, 27

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972)..................................................................................30

*Ungar v. Arafat*,
  634 F.3d 46 (1st Cir. 2011)......................................................................1

*United Nuclear Corp. v. Cannon*,
  696 F.2d 141 (1st Cir. 1982)..............................................................31

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................................*passim*

SCOTUSBlog, *Fisher v. University of Texas at Austin*,
  http://www.scotusblog.com/case-files/cases/fisher-v-university-of-
  texas-at-austin-2/..................................................................................2

Students for Fair Admissions, Inc., About,
  https://studentsforfairadmissions.org/about/....................................2

Students for Fair Admissions, Inc., Our Cases,
  https://www.projectonfairrepresentation.org/cases/ ........................2

iii

Students for Fair Admissions, Inc., *Project On Fair Representation Announces Lawsuits Challenging Admissions Policies At Harvard Univ. And Univ. Of North Carolina-Chapel Hill*, https://studentsforfairadmissions.org/project-on-fair-representation-announces-lawsuits-challenging-admissions-policies-at-harvard-univ-and-univ-of-north-carolina-chapel-hill/........................2

## STATEMENT REGARDING ORAL ARGUMENT

This case raises important issues of federal civil procedure that have a history of being reversed on appeal.  If the District Court is not reversed, then the First Circuit will be in direct conflict with the Sixth Circuit as to the standards for intervention as of right.  Movants-Appellants request oral argument in order to address these issues in greater detail and to respond to inquiries from the Court.

## JURISDICTIONAL STATEMENT

Movants-Appellants, current students at or prospective applicants to Harvard College, appeal from a district court order denying their Rule 24(a)(2) motion to intervene as of right in litigation concerning the use of race as a factor in undergraduate admissions at Harvard College. Although the District Court has not yet resolved the merits of that litigation, the Court has jurisdiction under 28 U.S.C. § 1291 because an order denying intervention as of right is immediately appealable as a collateral order. *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011); *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867-68 (1994) (discussing the finality requirement of § 1291 and the collateral order doctrine). The appeal is timely: the District Court issued its Order denying intervention to Proposed Defendant-Intervenors on June 15, 2015 and the Proposed Defendant-Intervenors filed their notice of appeal on July 13, 2015.

## STATEMENT OF THE ISSUE

Whether underrepresented minority students who benefit from Harvard's race-conscious admissions policy have the right to intervene to defend those benefits against the allegation that it is unlawful for Harvard to consider race in admissions.

## STATEMENT OF THE CASE

Harvard College is one of the most prestigious undergraduate institutions of higher education in the country, and has one of the most generous financial aid programs. *See* JA 189, ¶ 326. In order to select its freshman class each year Harvard employs a holistic admissions process that takes into account applicants'

backgrounds and personal characteristics.  JA 176, ¶ 196.  Consistent with federal law, Harvard aims to achieve the educational benefits of racial diversity in its undergraduate classes by considering, among many factors, an applicant's race.  *Id.*

Students for Fair Admissions, Inc. (SFFA) sued Harvard in district court on November 17, 2014, challenging its use of race in admissions.  SFFA claims to be a year-old, nonprofit, membership organization "whose members include highly qualified students recently denied admission to [Harvard], highly qualified students who plan to apply to [Harvard], and their parents."[1]  Its stated mission is to participate in litigation that will end racial classifications and preferences in college admissions and all educational settings.[2]  SFFA claims that among its members is an Asian American applicant who was "denied the opportunity to compete for admission to Harvard on equal footing with other applicants on the basis of race or ethnicity due to Harvard's discriminatory admissions policies."  JA 26, ¶ 22.  SFFA also claims to represent future applicants and parents of future applicants that fear being similarly denied that opportunity.  JA 26, ¶ 25-28.  It

---

[1] Students for Fair Admissions, Inc., *Project On Fair Representation Announces Lawsuits Challenging Admissions Policies At Harvard Univ. And Univ. Of North Carolina-Chapel Hill*, https://studentsforfairadmissions.org/project-on-fair-representation-announces-lawsuits-challenging-admissions-policies-at-harvard-univ-and-univ-of-north-carolina-chapel-hill/.

[2] *See* Students for Fair Admissions, Inc., *About*, https://studentsforfairadmissions.org/about/.  In addition to suing Harvard, SFFA is currently suing the University of North Carolina at Chapel Hill for its race-conscious admissions policies.  *See* Students for Fair Admissions, Inc., Our Cases, https://www.projectonfairrepresentation.org/cases/.  The attorneys for SFFA also represent Abigail Fisher in *Fisher v. University of Texas at Austin*, in which the U.S. Supreme Court granted *certiorari* for a second time in June 2015.  *See* SCOTUSblog, *Fisher v. University of Texas at Austin*, http://www.scotusblog.com/case-files/cases/fisher-v-university-of-texas-at-austin-2/.

provides no details about these future applicants.  It is unclear when they plan to apply to Harvard specifically or whether they have profiles that would make them competitive applicants.  *Id.*; JA 141, ¶¶ 15-18.

SFFA alleged that Harvard discriminates against Asian American students in violation of Title VI of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  JA 118-32,  ¶¶ 429, 432-33, 444, 447-48, 457, 460-61, 467, 470, 478, 481, 490, 493.  It argues that highly qualified Asian Americans are overrepresented in the applicant pool to Harvard and that Harvard's consideration of race in admissions therefore discriminates against Asian Americans relative to their non-Asian peers with similar scores on other admissions criteria, like the SAT.  JA 53, 61, 64-65, ¶¶ 161, 208, 218-220.  As part of the requested remedy, Plaintiff seeks to enjoin Harvard from learning the race of its applicants.  JA 136.  It also seeks a broad declaratory judgment that "any use of race or ethnicity" in any "educational setting" violates the Fourteenth Amendment and Title VI.  *Id.*  Thus, the remedy Plaintiff seeks would constrain all students who want to be considered for admissions or scholarships based in part on their racial or ethnic identities and on the related experiences that make them uniquely qualified for elite educational settings.

Harvard filed an Answer denying SFFA's allegations on February 18, 2015.

On April 29, 2015, before the District Court's first scheduling conference, Appellants filed a motion to intervene to defend Harvard's right to consider race in

college admissions decisions.[3]   JA 208-10.   Appellants comprise nine students intending to apply for admission to Harvard College and five current Harvard students (collectively, "the Students").   The Applicant Students all identify as members of one of three racial groups—African Americans, Latinos, and Native Americans—that tend to be underrepresented in elite applicant pools relative to the general population.   JA 211-45.   They each intend to apply to Harvard and believe that they are especially qualified to contribute to the diversity of the student body at Harvard in part based on their racial identities.   *Id.*   The Current Students are each racial minorities who believe the quality of their educational experience at Harvard depends on the presence of a critical mass of other students who can relate to their experiences with race.   JA 246-60.   Thus, these Students are either present or prospective beneficiaries of Harvard's race-conscious admissions policy.   JA 211-60.

In support of their motion, the Students explained to the District Court that they met the requirements for intervention as of right: their motion to intervene was timely; they have protectable interests in Harvard's admissions process; there is a realistic threat that the outcome of the litigation would impair those interests; and Harvard will not adequately represent them.   *See P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y La Judicatura*, 637 F.3d 10, 14 (1st Cir. 2011).

---

[3]   The Students also requested the District Court grant them permissive intervention, but that issue is not on appeal.

4

The Applicant Students seek to protect their interests in applying for and gaining admission to Harvard and in accessing its generous financial aid program. JA 211-45. All the Students seek to protect their interests in a diverse campus environment with a critical mass of other underrepresented minorities. JA 211-60.

The Applicant Students who are now starting their senior year of high school are currently in the process of applying to Harvard, which has an application deadline of January 1st. JA 213-15, 221-22, 229-31, 237-38. The younger students will apply in future application cycles, within a short time of the likely resolution of the merits of this litigation. JA 217-19, 224-27, 233-35, 240-42, 244-45. All the Applicant Students have impressive accomplishments, including high grade-point averages and participation in extensive extracurricular activities, which ensure they will be competitive candidates for admission. *See* JA 211-45. They all wish to share with Harvard, as part of the admissions process, certain aspects of their racial identities that make them unique and deserving candidates who can contribute to the diversity of race and experience on campus. *Id.* It is quite possible that Harvard's ability to consider the race of the Applicant Students will be dispositive of whether each one is admitted to Harvard.

Additionally, both groups of Students seek to ensure that Harvard is not required, either by settlement agreement or court order, to stop considering race in admissions. Any such prohibition would increase the weight of other criteria Harvard uses in its admissions process. Harvard considers as a factor for admissions an applicant's legacy status, i.e. whether the applicant is the child of alumni. JA 191, ¶ 342. It also considers an applicant's standardized test scores

and conducts Early Action admission, which allows students to submit their applications early in the fall if they apply to only one school or promise to attend the school if admitted.  Harvard's Resp. 4, May 13, 2015, ECF No. 38.  SFFA alleges that "legacy preferences and early admission . . . operate to the disadvantage of minority applicants."  JA 22-23, ¶ 8; *see also* JA 98-99, 102-03, ¶¶ 344, 364-65, *but see* JA 144, 191, 193, ¶¶ 8, 344, 364-65.  The Students have an interest in avoiding an outcome that would force Harvard to place greater weight on criteria which tend to decrease the number of students on campus who share their backgrounds and relate to their experiences as underrepresented minorities.  *See* JA 246-60; *see also* JA 98-103, ¶¶ 344, 364-65.  Accordingly, the Students seek to defend Harvard's right to consider the race of applicants to the maximum extent permissible under the law.

Critically, neither SFFA nor Harvard recognizes the full extent that race plays in mediating the detrimental effect of other admissions criteria.  SFFA seeks to eliminate from educational settings entirely the goal of racial diversity.  It is thus indifferent to the effect of Harvard's admissions criteria on that objective.  For instance, SFFA does not acknowledge the racially discriminatory effect of the SAT, which it suggests should be more influential in admissions.  *See* JA, 61-62 ¶ 208, JA 64-65, ¶¶ 216-20 (alleging that higher SAT scores of Asian American students is proof that they should be admitted at higher numbers to Harvard).  And although SFFA does recognize the discriminatory effect of Harvard's preference for legacy applicants and its use of Early Action, it does so only to the extent it argues that Harvard's policy is not the least restrictive means for achieving its

allegedly unlawful goal.  *See* JA 22-23, 98-99, 102-03, ¶¶ 8, 344, 364-65.

Harvard, on the other hand, does espouse the goal of racial diversity, but it does not admit that its other admissions practices and criteria—including legacy preferences, Early Action, and the SAT—have a detrimental effect on that goal. *See* JA 144, 191, 193, ¶¶ 8, 344, 364-65.

SFFA opposed the Students' motion to intervene, arguing they met none of the requirements for intervention as of right.  JA 12.  Harvard argued that it would adequately represent the Students interests' because it would defend the admissions policy it had authored.  Harvard's Resp. 3, May 13, 2015, ECF No. 38.

On June 15, 2015, the District Court denied the Students' motion to intervene.  Mem. & Order on Proposed Def-Intervenors' Mot. to Intervene, June 15, 2015, ECF No. 52 (attached in addendum, hereinafter "Op.").  It held that the Students had satisfied the first requirement for intervention as of right—their motion was timely—but that they did not satisfy the other requirements of Rule 24(a)(2).  *Id.*

On July 13, 2015, the Students appealed the District Court's order denying them intervention as of right.

## STANDARD OF REVIEW

District courts must grant applicants the right to intervene when they meet the requirements of Rule 24(a)(2).  Even though "it is commonly said that review of the district court decision is for 'abuse of discretion,'" this is "a misleading phrase" because the 24(a)(2) requirements "considerably restrict[ ] the [district] court's discretion."  *Cotter v. Massachusetts Ass'n of Minority Law Enforcement*

7

*Officers*, 219 F.3d 31, 34 (1st Cir. 2000) (alterations in original) (quoting *International Paper Co. v. Inhabitants of the Town of Jay, Maine*, 887 F.2d 338, 344 (1st Cir. 1989); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n. 1 (1987) (Brennan, J., concurring)).  More precisely, this Court reviews *de novo* "the proper standards for evaluating intervention motions."  *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 109 (1st Cir. 1999).  It reviews findings of fact for clear error and "the extent of [its] deference" to the district court's application of the standards to those facts "tends to vary with the circumstances."  *See Cotter*, 219 F.3d at 34.

## SUMMARY OF ARGUMENT

Harvard's admissions policy directly affects the Students who seek to intervene here—the Applicant Students are assessed according to it and the Current Students have their classmates determined by it.  If a resolution on the merits or a settlement agreement eliminates or reduces Harvard's ability to consider race in admissions, then the Students will lose considerable benefits: the ability to vie for a spot at Harvard knowing that an applicant's distinct racial identity can be considered by Harvard in seeking to ensure that the student population includes other students who can relate to their experiences with race.  They would have no recourse after the litigation is over to reinstate those educational opportunities.

Intervention was created for this very purpose—to allow those whose lives may be most directly affected by a litigation the right to fully and vigorously defend their interests even if they are not named as a party.  Even though Harvard's policy is at issue, it will be the Students who are harmed if SFFA

prevails.  The Students should not be required to entrust Harvard to protect their interests solely because Harvard controls and defines the admissions process. Harvard's admissions priorities are many and have changed over time, but the Students have a single priority: preserving their educational benefits arising from the constitutional consideration of race in admissions.  Regardless of whether and how Harvard prioritizes racial diversity among other admissions criteria, the Students should be allowed to defend Harvard's right to consider race and to defeat SFFA's request for declaratory judgment.  Doing so is their only means to protect the full extent of the benefits they receive under Harvard's current policy and those they could receive under any future policy.

Because of the direct impact this litigation will have on the Students, and their distinct interest as compared to the parties, the Students have a right to intervene in this action, as is clearly demonstrated by the most relevant precedents. The First Circuit case most analogous to the case at hand is *Cotter*, 219 F.3d 31.  In *Cotter*, the Court overturned the district court's denial of intervention as of right for minority police officers who sought to defend the Boston Police Department's race-conscious promotion policy.  Similarly, in *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999), the Sixth Circuit, which is the only Circuit Court that has addressed the precise issue on appeal here, reversed two district court orders denying intervention and held that underrepresented minority students have a right to defend their interests in upholding race-conscious university admissions.

The District Court below failed to follow these precedents and denied intervention for reasons that are legally erroneous.  It found that the Applicant

Students lack a direct interest in the litigation because they did not have applications pending in the moment and because they might not be admitted to Harvard. The District Court reasoned that the Applicant Students do not have a distinct interest in Harvard's admissions policy that differentiates them from any other high school student "in the world," even though it recognized that the Applicant Students had "impressive academic accomplishments" that undoubtedly make them competitive applicants. Op. at 3. No court has required students to demonstrate they have applications pending in order to show a direct interest in a race-conscious admissions plan. Indeed, several of SFFA's alleged members are students who plan on applying to Harvard in the future, as well. Moreover, in the specific factual context here, meeting such a standard would have been impossible because Harvard was not reviewing applications at the time intervention was sought.

The District Court next erred by requiring both sets of Students to show an ability to bring a separate claim to protect their stated interests. By doing so, it mistakenly held defendant-intervenors (who must only show a practical interest in the outcome of a litigation) to the same standard as plaintiffs (who must show Article III standing in order to initiate a lawsuit). No case in the First Circuit has held that standing is required for intervention.

Finally, the District Court erroneously determined that Harvard will adequately represent the Students' interests. It presumed that where Harvard may be unable or unwilling to do so, SFFA would. In essence, the District Court concluded that because *either* Harvard *or* SFFA might have similar interests as the

Students, some combination of their representation will adequately protect the Students. No court that Appellants are aware of has found that intervention should be denied because the arguments the would-be intervenor wants to raise might be raised by opposing parties together. Such a rule would be illogical because neither the plaintiff nor the defendant would be an adequate representative by itself, and the two parties cannot serve a common set of interests because their own interests are at odds.

As a result, the District Court reached an untenable conclusion: that the individuals who are among those most directly and adversely affected by the pending litigation cannot be parties to it.

Because the District Court applied the incorrect standard, this Court should reverse the denial of intervention. The Applicant Students' opportunities for admission under a race-conscious policy are a direct interest that warrants intervention; the Students need not have standing to bring a separate legal claim to demonstrate a protectable interest; and the Students met the burden of showing Harvard may not adequately represent them. Accordingly, this Court should instruct the District Court to allow the Students to intervene in this action.

## ARGUMENT

In order to intervene under Rule 24(a)(2), movants must show:

(i)     the timeliness of its motion to intervene;

(ii)    the existence of an interest relating to the property or transaction that forms the basis of the pending action;

(iii)   a realistic threat that the disposition of the action will

11

> impede its ability to protect that interest; and
>
> (iv)    the lack of adequate representation of its position by any existing party.

*P.R. Tel. Co.*, 637 F.3d at 14.  The District Court correctly decided that the Students' motion was timely, but committed errors of law as to each of the other requirements.  Applying the correct legal standards, the Students also satisfy these criteria for intervention as of right.

*First*, the Students have a direct, protectable interest in the outcome of the litigation because their educational opportunities depend on Harvard's ability to consider race in admissions.  Because SFFA's request for relief puts these educational opportunities at risk, and because the Students would not be able to defend those interests outside the context of this litigation, there is sufficient likelihood of impairment to warrant intervention.

*Second*, neither of the parties already in this action will adequately represent the Students.  SFFA has the opposite goal in the litigation.  Harvard claims it will vigorously defend its current admissions policy, which is consistent with the Students' goal.  Even so, it has not claimed it will defend the race-conscious criterion when doing so is in conflict with its other criteria or priorities.  Harvard serves multiple constituencies, many of whom have interests that are in conflict with the Students' single priority of defending the constitutional use of race in admissions.  For instance, Harvard is unlikely to concede or present the detrimental effect that its other admissions criteria may have on racial diversity on campus.

Applying the appropriate standards for intervention as of right, this Court

should come to the same conclusion as the Sixth Circuit did in *Grutter*: the Students whose lives are most affected by the race-conscious admissions policy at issue should be able to intervene in this litigation to defend it.

## I.    THE STUDENTS HAVE DIRECT, PROTECTABLE INTERESTS THAT WOULD BE IMPAIRED BY THE RESULT SFFA SEEKS.

As individuals among the most directly affected by Harvard's ability to consider race in admissions, the Students have direct interests in this litigation that they can only protect through intervention.

Under Rule 24(a)(2), an intervenor must "claim[] an interest relating to the property or transaction that is the subject of the action."  Fed. R. Civ. P. 24(a)(2). The advisory committee notes to Rule 24(a) provide courts with a guiding principle to determine whether a proposed intervenor's interest is protectable: "[i]f an absentee would be substantially affected *in a practical sense* by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, Advisory Committee Note to 1966 Amendments (emphasis added). Accordingly, the First Circuit's test for intervention entails a fact-sensitive, case-by-case assessment of whether a movants' interest will be impaired as a practical matter.  *Conservation Law Found. of N.E. v. Mosbacher*, 966 F.2d 39, 41-42 (1st Cir. 1992).

Here, the "property or transaction that is the subject of the action" is the

Harvard admissions process—*i.e.*, the interaction between students who want to attend Harvard College and the administration that decides who to admit. Both groups of Students are substantially affected in a practical sense by how that process is conducted. At stake here is whether the Applicant Students will have their distinct racial identities and experiences factor into the decisions on their admission. For the Current Students, the diversity of their classmates and colleagues, and whether they will study among a critical mass of students who can relate to their racial identities, necessarily depends on who gets into Harvard. Both sets of Students justifiably claim that their own educational opportunities will suffer if Harvard cannot consider race and ethnicity in the admissions process. *See* JA 218-19, ¶¶ 8-9, 13; JA 222, ¶ 9; JA 226, ¶ 10; JA 230, ¶ 9; JA 234, ¶ 10; JA 241-42, ¶¶ 9-10; JA 245, ¶ 8; JA 248, ¶¶ 6-8; JA 251, ¶¶ 6-8; JA 254, ¶¶ 6-8; JA 257, ¶¶ 6-8; JA 259-60, ¶¶ 6-8. Thus, their interests will be impaired as a practical matter if SFFA prevails in this litigation. Because the Students do not have an independent constitutional claim that would require the consideration of race, their only recourse is to defend the legality of the choice to consider race to the full extent allowable under law.

The District Court erred in holding the Students' interests were insufficient for intervention. Op. at 14-15. The District Court did not deny that the Appellants would be affected, as a practical matter, by whether the Harvard can consider race

14

and ethnicity in admissions. Instead, analyzing the interests of the Applicant Students and of the Current Students separately, it held that these interests were not sufficient as a matter of law to justify intervention as of right.

For the Applicant Students, the District Court relied upon the First Circuit's standard that an interest must be "direct, not contingent," *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989), but it misinterpreted that standard as applied to opportunities for advancement under a race-conscious assessment. Op. at 10-15. As detailed below, the First Circuit held in *Cotter* that racial minorities have a sufficiently direct interest in race-conscious assessments that help determine their opportunities for advancement. *Cotter*, 219 F.3d at 37. The District Court also erred by relying on the idiosyncrasies of the college application cycle, rather than the Applicant Students' declared intent to apply, in holding that the Students' interests in the admissions process were speculative. Op. at 11.

For both sets of Students, the District Court erred by holding, without legal support, that an interest is not "protectable" within the meaning of Rule 24(a)(2) unless it could be the basis for a legally cognizable claim. *See* Op. at 12-13, 15. In effect, the District Court required defendant-intervenors to have the standing necessary to initiate a lawsuit when this Circuit has never required such a showing. Finding that the Students could not bring a claim that Harvard *must* consider race, it held their interests insufficient for intervention. Op. at 12. To the contrary, it is

precisely because the Students do not have an independent affirmative claim that they require intervention to protect their interests.

These errors should be reversed. Applying the holding from *Cotter* and the reasoning from *Grutter*, the Court should hold the Students' interests are sufficiently direct and protectable and that their ability to defend them will be impaired unless they are allowed to intervene here.

### A. The Applicant Students' Interest in the Opportunity for Admission Is Direct, Not Contingent.

The District Court held the Applicant Students' interests were "too removed, too speculative, and too contingent" because they did not have applications pending with Harvard and because Harvard is an independent gatekeeper to the admission they seek. Op. at 11. That conclusion was in error because it is contrary to this Court's holding in *Cotter*. *See* 219 F.3d at 37.

Although an intervenor must have an interest that is "direct, not contingent," *Travelers Indem.*, 884 F.2d at 638, "there is no precise and authoritative definition of the interest required to sustain a right to intervene" and the court must consider the practical effect on would-be intervenors. *Mosbacher*, 966 F.2d at 42 (quoting *Travelers Indem.*, 884 F.2d at 638). That is the approach this Court took in *Cotter*, and it should apply the same principles here to find the Applicant Students have a direct interest in this litigation.

16

In *Cotter*, this Court held that underrepresented minorities have a direct interest in preserving a race-conscious policy under which they would likely be assessed and which would increase their opportunities for advancement. *Cotter*, 219 F.3d at 37. Like SFFA's members here, the plaintiffs in *Cotter* sought to invalidate a race-conscious policy. *Id.* at 32-33. They claimed it was an unconstitutional means of assessment that reduced their chances to beat out underrepresented minorities for a limited number of promotions. *Id.* At issue there was the Boston Police Department's criteria for promoting officers. *Id.* The question there was whether intervention as of right should be granted to the minority officers promoted under the policy and the Massachusetts Association of Minority Law Enforcement Officers ("MAMLEO"), who represented minority officers who might seek promotion in the future. *Id.* at 33.

The Court held the interests of MAMLEO's members were protectable within the meaning of Rule 24(a)(2) because "the decision may be likely to control an ongoing process within the department or agency for formulating rules for advancement and so predictably affect the interests of others who . . . will in turn be seeking advancement." *Id.* at 37. The interests were sufficiently direct even though the members had not yet sought promotions because "[j]udged in the most practical terms, the outcome of this case may very well determine how the Boston Police Department handles, and is allowed to handle, comparable situations almost

17

certain to arise in the future." *Id.*

The First Circuit also noted the unique character of civil rights litigation, which may require a more flexible approach to defining the interest requirements under Rule 24. *Id.* ("Civil rights litigation involving race, and especially cases involving employment, do not always neatly fit the model of a discrete common law action between a plaintiff and a defendant.").

Moreover, *Cotter* relied on *Grutter v. Bollinger*, 188 F.3d 394. *See* 219 F.3d at 35 n.1. *Grutter* is squarely on point. *Grutter* involved two separate challenges to the use of race in undergraduate admissions (*Gratz v. Bollinger*) and law school admissions (*Grutter v. Bollinger*). *Grutter*, 188 F.3d at 396-97. In *Gratz*, the proposed intervenors were African American and Latino high school students who applied or planned to apply to the university and an organization whose mission was to preserve opportunities for African American and Latino students in higher education. *Id.* at 397. In *Grutter*, the proposed intervenors were undergraduate students of various races and African American high school students who planned to apply to the law school; current students at the law school; a Latino graduate student who planned to the apply to the law school; a black graduate student at the University of Michigan who was a member of the Defend Affirmative Action party; and three pro-affirmative action coalitions. *Id.* In both cases, the district court denied the motions to intervene. *Id.* at 396, 401.

The Sixth Circuit consolidated the appeals of the denials of the motions to intervene and reversed in each case. *Id.* The Court held that all of the intervenors, including the prospective minority student applicants, had a direct interest in a race-conscious admissions policy that will govern their opportunity for attending the university. *Grutter*, 188 F.3d at 401. No other circuit has considered whether underrepresented minority students have a right to intervene to defend the use of race in university admissions. Any argument that there is a meaningful distinction between the police department promotion policy in *Cotter* and the university admissions policy here is, therefore, belied by the First Circuit's citation to *Grutter* as persuasive authority. *See* 219 F.3d at 35 n.1.

The District Court in this case, without discussing the citation in *Cotter*, distinguished *Grutter* on the basis that the Sixth Circuit has "'a rather expansive notion of the interest sufficient to invoke intervention of right.'" Op. at 14 (quoting *Grutter*, 188 F.3d at 398). But there is no question that the Sixth Circuit standard included the directness requirement. It held the proposed intervenors, including current and future applicants, had a "direct, substantial, and compelling" interest. *Grutter*, 188 F.3d at 399. The District Court therefore erred in holding that the Applicant Students' interests are overly contingent because they may not ultimately be admitted to Harvard. As in *Cotter* and *Grutter*, an interest in assessment criteria is sufficiently direct and concrete if it is likely to govern the

19

proposed intervenors' opportunities for advancement.

The District Court also erred in relying upon the fact that the Applicant Students had not yet submitted applications to Harvard at the time of intervention. Op. at 11. There is no such requirement in this context. Again, *Cotter* is instructive: it was irrelevant whether the members of MAMLEO had a promotion pending because it was sufficiently likely that some of them would be assessed under the promotion policy at some point. *Cotter*, 219 F.3d at 37. The Students here are even more likely to be assessed under the challenged policy than the minority officers were in *Cotter*. Each Applicant Student here has declared his or her intent to apply to Harvard and those who are now high school seniors are in the process of doing so. JA 213-15, 221-22, 229-31, 237-38. Indeed, as discussed above, many intervenors in *Grutter* were also future applicants. *Grutter*, 188 F.3d at 397.

The District Court also failed to consider that Harvard had not yet released its application for admission to this year's applicants. It was thus impossible to gather any information at all from the fact that the Students had not submitted applications to Harvard. But the District Court used that fact as a basis for deciding that the Students were no different than "any other minority student in America, or indeed, the world," Op. at 11, and for analogizing to the factually dissimilar case *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197 (1st

Cir. 1998).   To the contrary, the Students' declarations establish that they are competitive candidates for Harvard who will apply as soon as possible. JA 211-45. The Students have thus demonstrated that they are sufficiently likely to be assessed under the policy being litigated and thus have a direct interest in the suit.

### B.   Both Sets of Students Have a Protectable Interest In the Legality of a Race-Conscious Admissions Policy Even If They Cannot Bring a Claim Requiring Harvard to Adopt It.

In denying the motion to intervene, the District Court erroneously held that the Students' interests are not "protectable" because they cannot compel Harvard to consider the race of applicants or otherwise "maintain a legal claim in support of those practices" and therefore do not have a constitutional interest "on par" with SFFA's members. Op. at 12.  But there is no requirement that the beneficiary of a policy show that the policy is legally required in order to intervene and defend it. *See, e.g., Daggett*, 172 F.3d 104; *Mosbacher*, 966 F.2d 39.  Likewise, there is no requirement that a would-be intervenor's interest be "on par" with the one that a plaintiff claims, or that it rise to the level of the "injury in fact" required to initiate a lawsuit. *See Daggett*, 172 F.3d at 109.  Rule 24 does not adopt the requirements of Article III standing, and it is illogical to hold defendant-intervenors to the standard required of plaintiffs.  This Court has held the Article III requirement, if there is one at all for intervenors, is much lower for defendant-intervenors. *Id.*

The Students' party status is justified by the fact that the Complaint threatens the legality of a policy in which they have practical interests as beneficiaries. *See* Fed. R. Civ. P. 24, Advisory Committee Note to 1966 Amendments; *Mosbacher*, 966 F.2d at 41-42.

As an initial matter, the District Court's error here is identical to that which led the Sixth Circuit to reverse the lower court decision in *Grutter*. *See* 188 F.3d at 398-99. In that case, one of the district court's denials of intervention relied "heavily on the premise that the proposed intervenors do not have a significant interest unless they have 'a legally enforceable right to have the existing admissions policy construed.'" *Id.* But the Sixth Circuit reversed this decision, holding that "[t]he proposed intervenors have enunciated a specific interest in the subject matter of this case, namely their interest in gaining admission to the University. . . ." *Id.* at 399. The District Court here did not distinguish *Grutter* on this point, nor would it have the basis to do so.

Similarly, the First Circuit has also granted intervention as of right to the beneficiaries of policies who have no legally enforceable claim to the policy, but who have a practical interest in defending it in order to preserve the status quo. For example, in *Mosbacher*, 966 F.2d 39, the Court permitted intervention for beneficiaries of a fishing regulation who had no legal claim under the policy. The plaintiffs were conservation groups that had sued the government for tougher

regulations. *Id.* at 40. Commercial fishing groups moved to intervene to defend the status quo. *Id.* The conservation groups opposed intervention, arguing that the mere "economic" interests of the fishing groups were not "legally cognizable" because they would not be entitled to affirmatively sue the agency to stop the proposed revisions to the policy. *Id.* at 41. But this Court rejected the argument, holding that the regulated entities must be allowed to intervene where they "are the real targets of the suit and are the subjects of the regulatory plan. Changes in the rules will affect the proposed intervenors' business, both immediately and in the future." *Id.* at 43; *see also Daggett*, 172 F.3d at 109 (holding political candidates had sufficient interest to intervene as defendants because they benefitted financially from the challenged campaign finance law).

In reaching its conclusion, the First Circuit drew upon similar reasoning from other Circuits. *Mosbacher*, 966 F.2d at 43 (citing *NRDC v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) (potential uranium mill licensees had interest in environmentalists' suit to enjoin federal agency from licensing operations); *New York Pub. Interest Research Group, Inc. v. Regents of University of State of N.Y.*, 516 F.2d 350, 351-52 (2d Cir. 1975) (pharmacists had interest in consumers' challenge to a regulation prohibiting advertising price of prescription drugs, even though pharmacists had no legal right to the regulation, because it affected their economic interests). For instance, the Tenth Circuit

pointed out in *NRDC v. U.S. Nuclear Regulatory Commission*, that "the Rule refers to impairment 'as a practical matter.'   Thus, the court is not limited to consequences of a strictly legal nature."   578 F.2d at 1345; *see also In re Lopez-Soto*, 764 F.2d 23, 26 (1st Cir. 1985) (citing *NRDC* for the proposition that the protectable interest of Rule 24(a)(2) "does not have to be of a legal nature identical to that of claims asserted in the main action" (quotation marks omitted)). Accordingly, there is no basis to insert an additional "legally cognizable interest" requirement in Rule 24(a) that does not appear in its text.

The District Court's citations in support of its elevated requirement are inapposite.   It cited to *Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla*., 598 U.S. 656, 666 (1993), for the proposition that SFFA has an Article III injury in fact because it brings a constitutional challenge to the process of being assessed under Harvard's admissions policy rather than the result of being admitted or denied.   Op. at 13. First, that case does not require defendant-intervenors to show an injury in fact, let alone a constitutional claim.   Second, the Students, too, challenge the process of admissions rather than the result.   As *Cotter* makes clear, they have a direct interest in that process and its effect on their educational opportunities. *See* 219 F.3d at 37. Indeed, the District Court recognized that both the Supreme Court and this Court have reserved judgment on whether even a plaintiff-intervenor must possess

Article III standing. *See* Op. at 13 n.4 (citing *Diamond v. Charles*, 476 U.S. 54, 68-69 & n.21; *Daggett*, 172 F.3d at 109). In *Daggett*, the Court held that if Article III requirements apply to intervenors at all, then the standard for a defendant-intervenor is "modest" and satisfied when it has a "concrete stake" in the outcome of the litigation. 172 F.3d at 109. Finally, the District Court's citation to *Travelers Indem.*, 884 F.2d 629, is unhelpful because that case involved an insurance company that sought to intervene in order to oppose the insured defendant's desire to settle. 884 F.2d at 638. The insurance company additionally had a separate claim against the defendant to deny coverage. *Id.* As is explained in the next section, that case actually weighs in favor of the Students here because the insurance company did not need to intervene in order to protect its interests.

Requiring defendant-intervenors to show a legally cognizable claim under a policy they seek to defend is bad policy, as well as bad law. Beneficiaries of a policy which confers no legally cognizable right should be permitted to intervene when the litigation in which it seeks to intervene is the *only* opportunity to defend the policy and protect their benefits pursuant to it. Without an independently cognizable legal claim, the Students could not bring a separate action to defend the legality of considering race in educational settings and, therefore, could not protect the educational opportunities associated with it. Rule 24 plainly takes this risk into account by instructing courts to consider the potential for impairment.

### C.    The Outcome of the Litigation Could Impair the Students' Interests and Leave Them Without Recourse.

Rule 24(a)(2) authorizes intervention where "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." The District Court did not consider this part of Rule 24(a)(2) because it held that Appellants had not shown a direct, protectable interest. Op. at 14-15. But there is no question that both the Applicant Students and the Current Students will be affected by the outcome of this litigation. If SFFA prevails, they will have little if any recourse to reinstate the benefits they could have received had SFFA's challenge been defeated.

The First Circuit has denied intervention on the basis that would-be intervenors might not be harmed if they may assert their right or protect their interest in a separate proceeding. *See, e.g., Travelers Indem.*, 884 F.2d at 638-39; *accord Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 55 (1st Cir. 1979); *Flynn v. Hubbard*, 782 F.2d 1084, 1089 (1st Cir. 1986). On the other hand, if the would-be intervenor cannot bring a separate action to defend a direct interest, then impairment is more likely and there is greater reason to allow intervention. *See Mosbacher*, 966 F.2d at 42 (explaining the importance of "practical" impairment factor by distinguishing cases which denied intervention when alternative forums were available for relief). Thus, in *Travelers Indem.*, the Court

held the insurance company could not intervene to oppose settlement in the underlying claim because the it could more appropriately defend its interests in another suit to deny coverage.  884 F.2d at 639-40.  However, unlike the proposed intervenors in *Travelers Indem.*, the Students would not be able to vindicate their interests here in a separate suit.

If SFFA prevails here, the Applicant Students will lose the benefit of Harvard's ability to consider their distinct racial identities and experiences. Indeed, they will lose the right even to share this information with Harvard. Accordingly, their opportunity for admission and access to Harvard's generous financial aid will be impaired.

The Current Students will lose assurance of studying among a critical mass of underrepresented minority students at Harvard with backgrounds and experiences similar to their own.  In short, as the Sixth Circuit held on similar facts in *Grutter*, "[t]here is little room for doubt that access to the University for African-American and Latino/a students will be impaired to some extent and that a substantial decline in the enrollment of these students may well result if the University is precluded from considering race as a factor in admissions."  188 F.3d at 400.

In sum, the Students have a direct, protectable interest at stake as members of the distinct group that will be assessed by Harvard's admissions policy and will

benefit from the increased opportunities that a race-conscious admissions policy would create for them. Without being allowed to intervene they will have no other recourse to protect their interest in studying among a critical mass of racially diverse students and in vying for admissions and other educational benefits in part on the basis of their unique racial identities and experiences. The Court should allow them to intervene to defend against this attack on their worthiness.

## II.   NEITHER HARVARD, NOR A COMBINATION OF HARVARD AND SFFA, WILL ADEQUATELY REPRESENT THE STUDENTS.

The District Court erred when it denied the Students' motion to intervene on the basis that, in its view, either Harvard or a combination of Harvard and SFFA will adequately represent the Students. Op. at 18. Selectively integrating potential arguments to be made by parties on opposite sides of a litigation in order to find adequacy of representation appears to be without precedent. That the District Court relied on the opposing party's arguments only illustrates that Harvard, by itself, is unlikely to be an adequate representative of the Students. The Students have met their burden to demonstrate Harvard has a conflict of interests that creates a risk it will not make all of the Students' arguments in defense of the race-conscious aspect of its admissions policy. To the extent that the District Court held that the burden was higher, it was incorrect as a matter of law.

Students seek to intervene because it is clear that SFFA's interests are

undeniably at odds with theirs and they cannot rely on Harvard to prioritize their interests above those of other constituents or to assert arguments that would undermine other, longstanding aspects of its admissions policy.  This Court should follow the Sixth Circuit in *Grutter* and hold that a university that operates a race-conscious admissions policy is not an adequate representative for the students whose educational opportunities are determined by it.  *Grutter*, 188 F.3d at 400-01.

> **A.**     **The Students Met Their Burden By Showing Harvard Serves Constituencies Whose Interests Are at Odds with Their Own.**

The District Court relied heavily on the rebuttable presumption of adequate representation that flows from a proposed intervenor sharing the same "goals" as one of the parties.  Op. at 16 (citing *Daggett*, 172 F.3d at 111).  But Harvard and the Students share the same goals only in the broadest sense that the Students seek to defend certain elements of the status quo against attack by SFFA.  Even though it is the Students' burden to rebut the presumption, the District Court erroneously required the Students to prove precisely how Harvard would fail them, when the correct question is whether the Students have shown that Harvard has conflicting interests that jeopardize the adequate representation of the Students' interests.  *See Daggett*, 172 F.3d at 111-12; *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545-46 (1st Cir. 2006).

This was the precise error the district courts made in *Grutter*, *see* 188 F.3d at

400, and yet the District Court did not even attempt to distinguish the case on that basis. There, the Sixth Circuit found the students had met their burden because there was at least some risk that the university's internal and external pressures, as well as its comparatively limited stake in the outcome, would lead it not to make some arguments in defense of the race-conscious policies. *Id.* at 400-01.

Likewise here, the Students have articulated multiple reasons that readily satisfy the general rule that a proposed intervenor need only make a "minimal" showing that the existing parties "*may*" inadequately represent their interests, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). It is sufficient to rebut the presumption of adequacy by explaining the representative party's "adversity of interest," *Daggett*, 172 F.3d at 111, or how the two sets of interests are "sufficiently different in kind or degree." *B. Fernandez*, 440 F.3d at 546. "Without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party." *Id.*, 440 F.3d at 547 (quoting *Tell v. Trustees of Dartmouth Coll.*, 145 F.3d 417, 419 (1st Cir. 1998)).

Although an intervenor must describe the interests with some specificity, *Patch*, 136 F.3d at 210, it need only show a reasonable *potential* for conflict that jeopardizes adequate representation, not that the conflict is certain. *Daggett*, 172 F.3d at 112. "[I]t is not Applicants' burden at this stage in the litigation to

anticipate specific differences in trial strategy. It is sufficient for Applicants to show that, because of differences in interests, it is likely that Defendants will not advance the same arguments as Applicants." *B. Fernandez*, 440 F.3d at 547 (quoting *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 824, 824 (9th Cir. 2001)). The First Circuit has reiterated that an identity of interests for the purpose of adequate representation means that the defendant "will undoubtedly" make all the intervenor's legal arguments and includes an assessment of whether the party is "capable and willing to make such arguments." *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982) (quoting *Blake v. Pallan*, 554 F.2d 947, 954-55 (9th Cir. 1977)).

Like the intervenors in *Grutter*, the Students here clearly satisfy their burden because they have shown that Harvard must balance the interests of multiple constituencies it serves, several of which have admissions priorities and concerns over public perception that could jeopardize its unreserved defense of the underrepresented minority students' educational opportunities. The District Court did not deny that Harvard serves multiple constituencies, including alumni, faculty, the academic community, and the public. But it erroneously demanded "evidence" that these different constituencies would in fact have different interests than the Students. Op. at 17. That reasoning is contrary to *Mosbacher*, in which the Court took the common sense approach that a defendant with a broad base of constituents

and a commitment to them all could not adequately represent the narrow interests of one group of those constituents.  966 F.2d at 44-45.  Here, too, it is common sense that the Students' narrow goal of defending the consideration of race directly conflicts with some of the other constituents' goals, like maintaining admissions privileges given to the children of donors and alumni or avoiding public controversy.

Furthermore, the District Court did not deny the contention that the Students would advance a number of arguments that Harvard would likely resist, including how Harvard's history, along with its preference for legacy applicants, for Early Action applicants, and for high SAT scores, disfavors underrepresented racial minorities and justifies its race-conscious admissions decisions.  Op. at 17-18. Indeed, Harvard denies that Early Action and legacy preferences disfavor underrepresented minorities at all.  JA 144, 191, 193, ¶¶ 8, 344, 364-65.  The Students, by contrast, "admit on information and belief that particular admissions policies, such as legacy preferences, have a disparate negative impact on racial minority applicants, but [] otherwise deny [the further allegation that eliminating such practices would result in sufficient levels of diversity]."  JA 302, ¶ 305.

Harvard's unwillingness to recognize the need for race-conscious admissions policies to balance the adverse effect of other admissions criteria and practices demonstrates a sufficient likelihood that Harvard's multiple

constituencies prevent it from being "capable and willing" to make key defense arguments. It also suggests a settlement risk: if Harvard prioritizes practices, like the legacy policy, that encourage donors and continued financial support of the institution and it perceives them to be at risk in this litigation, then it might modify or abandon its race-conscious policies in order to settle.

These showings are sufficient to rebut the presumption of an identity of interests and to meet the Students' "minimal" burden to show Harvard "may" be an inadequate representative.

### B. The Fact That Certain of the Students' Issues Will Be Raised By SFFA, and not Harvard, Demonstrates Inadequacy of Representation

By acknowledging that SFFA is more likely than Harvard to raise arguments about the admissions criteria that disfavor underrepresented minority students, the District Court sought to combine the opposing parties' arguments to find adequate representation where Harvard, by itself, was lacking. Op. at 18. But combining opposing parties' likely arguments to find adequate representation appears to be unprecedented in this Court's prior case law, and understandably so. Rule 24(a)(2) is meant to protect a non-named party in the context of an adversarial process. Thus, it is designed to protect interests, not merely individual arguments. This Court has clearly explained that there is adequate representation only when a party

can stand in as a complete "proxy" for the absent party.  *B. Fernandez*, 440 F.3d at 547.

The Students cannot rely upon SFFA as a proxy, regardless of its intended arguments, because SFFA seeks to eliminate, in its entirety, any race-consciousness in the admissions process at Harvard, the very element of Harvard's policies that the Students seek to defend.  JA 136.  The District Court also appears to ignore the underlying motivation for SFFA's contention: SFFA argues Harvard must eliminate those criteria and rely instead upon statistics and test scores, whereas the Students seek to preserve Harvard's ability to consider candidates holistically as individuals that will contribute to the educational experience on campus.[4]  Clearly those opposite goals would taint how SFFA would choose to present any argument it might have in common with the Students.

Even if a court should consider opposing parties together in determining whether representatives will raise the proposed intervenor's arguments, the District Court mistakenly ignored the Students' uncontested point that they would be the only party to argue that a race-conscious admissions policy is necessary to offset the adverse effects of evaluating applicants based on standardized test scores such as the SAT.

---

[4] *Compare* JA 61-62, ¶ 208; JA 64-65, ¶¶ 216-20 (alleging Asian Americans are underrepresented because their test-scores indicate their superior qualifications which warrant higher admissions rates) *with* JA 212-260, 327.

### C.    *Amici* Status Is Not a Substitute for Adequate Representation By a Party When Arguments Depend on Factual Development.

Rule 24(a)(2) instructs a court to consider only whether "parties," not *amici*, will adequately represent the proposed intervenor's interests. *See also Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) ("The right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action under Rule 24(a)(2)."). Harvard is an inadequate representative even if the Students, as *amici*, will be able to raise all of the legal arguments that Harvard is unlikely to make.  To the extent the District Court held otherwise, it was in error.  *See* Op. at 19. The Students' arguments about the SAT, Early Action, and legacy status, require factual development, including expert witness reports.  Because only a party will be able to develop those arguments, *amicus* status is not a substitute for adequate representation by a party in the suit.

Harvard's inadequacy as a party representative, therefore, cannot be cured by Students' *amici* status.

### CONCLUSION

For the foregoing reasons, the order of the District Court denying Appellants' motion to intervene as of right should be vacated, and the case remanded to the District Court with instructions to grant Appellants' motion to

intervene as of right under Rule 24(a)(2).


Dated: September 2, 2015

Respectfully submitted,

<u>s/ Lawrence E. Culleen</u>
Lawrence E. Culleen
First Circuit # 1171295
ARNOLD & PORTER, LLP
555 12th Street, NW
Washington, D.C. 20004
Tel: (202) 942-5000

Jon M. Greenbaum
First Circuit # 95913
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005
Tel: (202) 662-8600

Iván Espinoza-Madrigal
First Circuit # 1171237
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND ECONOMIC
JUSTICE
294 Washington Street, Suite 443
Boston, MA 02108
Tel: (617) 988-0624

*ATTORNEYS OF RECORD FOR
MOVANTS – APPELLANTS*

Nancy L. Perkins
ARNOLD & PORTER, LLP
555 12th Street, NW
Washington, D.C. 20004
Tel: (202) 942-5000

Steven L. Mayer
ARNOLD & PORTER, LLP
10th Floor, Three Embarcadero
Center
San Francisco, CA  94111
Tel: (415) 471-3100

*ATTORNEYS FOR MOVANTS –*
*APPELLANTS*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,748 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

s/ Lawrence E. Culleen
Lawrence E. Culleen

*ATTORNEY FOR MOVANTS – APPELLANTS*

September 2, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2015, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<u>s/ Lawrence E. Culleen</u>
Lawrence E. Culleen

*ATTORNEY FOR MOVANTS – APPELLANTS*

September 2, 2015

# ADDENDUM

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

Memorandum and Order on Proposed Defendant-Intervenors' Motion to
Intervene (Op.) ........................................................................................ 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC. | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 14-cv-14176-ADB |
| | * | |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION) | * | |
| | * | |
| | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM AND ORDER ON PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE

BURROUGHS, D.J.

## I.    INTRODUCTION

In this action, Plaintiff Students for Fair Admissions, Inc. ("SFFA") alleges that

Defendant Harvard College ("Harvard") employs racially and ethnically discriminatory policies

and procedures in administering its undergraduate admissions program, in violation of Title VI

of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to

the United States Constitution. SFFA's Complaint sets forth two types of allegations. First,

SFFA asserts that the general manner in which Harvard considers race in its undergraduate

admissions program violates the Equal Protection Clause. As opposed to using race as a mere

"plus" factor in admissions decisions, SFFA alleges that Harvard engages in prohibited "racial

balancing." Second, SFFA alleges that Harvard's policies invidiously discriminate against Asian-

American applicants in particular. Because Harvard allegedly limits the number of Asian-

American applicants to whom it will offer admission every year, SFFA contends that those

applicants are forced to compete against each other for a limited number of openings.
Consequently, a large number of otherwise highly qualified Asian-American applicants are
allegedly denied admission to Harvard on the basis of their race or ethnicity.[1] Harvard denies
these allegations, insists that its admissions policies fully comply with federal law, and maintains
its intention to mount a vigorous defense to SFFA's claims.

Presently before the Court is a Motion to Intervene in Defense of Harvard's Admission
Policy, which was filed on April 29, 2015 [ECF No. 30]. The movants and proposed intervenors
are nine minority high-school students who intend to apply for admission to Harvard College at
some time in the future (the "Future Applicants"), and five minority college students who are
currently enrolled in Harvard's full-time undergraduate program (the "Harvard Students")
(collectively, the "Students"). In contrast to SFFA, these Students support Harvard's
consideration of race in its admissions process, and they seek to intervene "in order to ensure that
Harvard retains the right to consider race in its admissions decisions to the full extent allowed by
law." [ECF No. 31, p. 3]. For the reasons set forth herein, the Court finds that the Students do not
meet the criteria for intervention as of right pursuant to Fed. R. Civ. P. 24(a), and it declines to
allow permissive intervention pursuant to Fed. R. Civ. P. 24(b). Consequently, the Court will
deny the Students' Motion to Intervene, but allow them to participate in this litigation as *amici
curiae*.

## II.    RELEVANT FACTS

SFFA filed its Complaint with this Court on November 17, 2014, and Harvard filed its
Answer on February 18, 2015. On May 4, 2015, the Court issued a Scheduling Order governing

---

[1] SFFA purports to be a coalition of applicants and prospective applicants to institutions of
higher education, along with their parents and other individuals. It further alleges to have at least
one Asian-American student member who applied for and was denied admission to Harvard's
2014 entering class [Complaint ¶¶ 12-24, ECF No. 1].

the timing of discovery, dispositive motions, and other matters. At this point, the case has not

advanced beyond the early stages of discovery. On April 29, 2015, the Students filed their

Motion to Intervene with the Court [ECF No. 30], along with a supporting Memorandum of Law

[ECF No. 31]. In addition, each of the Students filed a declaration explaining their purported

interest in this case [ECF No. 31-1].

**The Future Applicants**

Movant M.B. is a high school junior, who identifies as African American and Caucasian.

Movant K.C. is a high school sophomore and identifies as a Native American. Movant Y.D. is a

high school junior and a member of the Oneida Tribe. Y.D. identifies as Native American.

Movant G.E. is a high school freshman and an enrolled member of the Gila River Indian

Community. G.E. identifies as Native American.  Movant A.G. is a high school junior of

Hispanic and Filipino descent. Movant I.G. is a high school freshman and is also of Hispanic and

Filipino descent. Movant R.H. is an African American high school junior. Movant J.L. is a high

school sophomore and states that his or her tribal affiliation is Jemez Pueblo and Zuni Tribe. J.L.

identifies as Native American. Movant R.S. is a high school freshman and identifies as Native

American, of the Confederated Tribes of the Umatilla Indian Reservation.

These students' declarations detail their impressive academic accomplishments, high

grade-point-averages, involvement in extracurricular programs, and participation in activities

related to their cultural and ethnic heritage. In addition, each student expresses a desire to

experience a racially diverse environment in college, and a belief that his or her own unique

cultural and ethnic background will contribute to the educational experiences of his or her peers.

Further, each of these students states that he or she intends to apply for admission to Harvard's

undergraduate program, and to apply for financial aid. None, however, claims to have submitted an application to Harvard at this point in time.

### The Harvard Students

Movant Sarah Cole is a full-time undergraduate student at Harvard, who identifies as Black or African American. Movant Fadhal Moore is a full-time undergraduate student at Harvard and identifies as African American. Movant Arjini Kumari Nawal is full-time undergraduate student at Harvard, who identifies as Asian American, of Sri Lankan descent. Movant Itzel Libertad Vasquez-Rodriguez is a full-time undergraduate student at Harvard College. She identifies as Native American and Latina, of Mexican Ancestry. Movant Keyanna Wigglesworth is a full-time undergraduate student at Harvard, who describes her race and ethnicity as Black American. Each of these students professes to experience academic and/or personal benefits from Harvard's racially diverse student body, and each believes that his or her education would be harmed if Harvard stopped considering race in its admissions policy. Each student also states that he or she would like to see an increase in the number and diversity of underrepresented minority groups admitted to Harvard.

## III.    SUMMARY OF THE STUDENTS' POSITION

The Students argue that Harvard must remain free to address the underrepresentation of certain racial and ethnic minority groups in its student body, so as to secure for these students access to opportunities associated with attending Harvard. Further, the Students believe they are in the best position to advance these interests, because their educational goals, career aspirations, and life experiences would be adversely affected if Harvard were prohibited from considering race in its admissions process. They seek to intervene because they believe that Harvard may not adequately represent their interests in this litigation, for a number of reasons. First, the Students

wish to emphasize certain arguments that they fear Harvard may not present to the Court. For example, the Students believe that Harvard should remain free to consider race and ethnicity in order to offset the disparate impact of certain other aspects of Harvard's admissions policy – including Harvard's consideration of so-called "legacy" applicants whose parents may have attended Harvard; the school's Early Action admissions program; and its reliance on SAT scores as a factor in admission. Each of these policies or criteria, the Students argue, has a negative impact on the admission of minority applicants. Accordingly, the Students want to argue that Harvard's continued use of race and ethnicity in its admissions process is critical to offsetting the disparate impact of such programs. And because Harvard is unlikely to concede that its own admissions policies have adverse effects on minority applicants, the Students argue that Harvard does not adequately represent their interests in this regard [ECF No. 31 pp. 4-5]. In addition, the Students claim that they will argue – and that Harvard is unlikely to argue – that achieving a "critical mass" of minority students is necessary to reduce the racial isolation of minority students on campus [ECF No. 42 p. 8].

Second, the Students suggest that Harvard's defense of its admissions procedures "may be affected by concern over its public perception or by the need to serve myriad constituencies such as alumni, faculty, and the academic community . . . ." Essentially, the Students argue that Harvard would not be as zealous an advocate as they, and "[t]o the extent Harvard would seek to settle or would otherwise avoid politically sensitive topics," their intervention would ensure that those arguments are presented as fully and forcefully as possible [ECF No. 31 p. 5].

Third, the Students claim that Harvard lacks the ability to defend its race-conscious admissions policy adequately because "Harvard, as an institution, does not have the personal experiences that Movants do with respect to race and ethnicity." [ECF No. 31 p. 14].

The Students argue that these considerations entitle them to intervene in this matter as of
right, pursuant to Fed. R. Civ. P. 24(a). Alternatively, they argue that the Court should allow
permissive intervention pursuant to Fed. R. Civ. P. 24(b).

## IV.   SUMMARY OF SFFA AND HARVARD'S POSITIONS

Both SFFA and Harvard oppose the Students' full-fledged intervention in this action,
and both argue that the Students are not entitled to intervene as of right under Fed. R. Civ. P.
24(a). Harvard submits that intervention is not warranted because Harvard will adequately
represent the Students' interests [ECF No. 38]. SFFA agrees, and it further argues that the
Students lack a "demonstrated interest" in this litigation, and that the Students' motion to
intervene was not timely filed [ECF No. 37]. In addition, both parties are concerned that full-
scale intervention could interfere with the expeditious and orderly resolution of this case, by
adding additional parties, broadening the scope of discovery, and engendering delays. Harvard
has also cited concerns for the privacy of its students and applicants, which would be
exacerbated by the intervention of additional parties.

However, neither SFFA nor Harvard opposes a more limited form of participation by
the Students. SFFA suggests that the Students be permitted to participate as *amici curiae* [ECF
No. 37 pp. 9-10]. Harvard submits that if the Court permits intervention, it should limit the
Students' participation to the submission of briefs, the presentation of their own declarations, and
participation in any oral argument that the Court may choose to hear. Alternatively, Harvard is
not opposed to the Students' participation as *amici curiae*, as suggested by SFFA [ECF No. 38
pp. 8-10].

## V.    ANALYSIS

### A.  Legal Standard

The Federal Rules of Civil Procedure contemplate two types of motions to intervene:

intervention as of right, as set forth in Fed. R. Civ. P. 24(a), and permissive intervention,

pursuant to Fed. R. Civ. P. 24(b). R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d

1, 8 (1st Cir. 2009). "The differences are significant." Id. Faced with a motion to intervene as of

right, the court must apply a four-factor test, and its discretion is "somewhat more constrained

than in the case of a motion for permissive intervention." Id. In contrast, when deciding whether

permissive intervention is warranted under Fed. R. Civ. P. 24(b), the district court "can consider

almost any factor rationally relevant," and "enjoys very broad discretion" in allowing or denying

the motion. Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104,

113 (1st Cir. 1999).

### 1.  Fed. R. Civ. P. 24(a) – Intervention as of Right

Federal Rule of Civil Procedure 24(a) provides an "authoritative recipe" that lists the

"essential ingredients" for intervention as of right. Ungar v. Arafat, 634 F.3d 46, 50 (1st Cir.

2011). In the absence of a federal statute providing for a right to intervene, and on a timely

motion, the court must permit anyone to intervene who:

> claims an interest relating to the property or transaction that is the
> subject of the action, and is so situated that disposing of the action
> may as a practical matter impair or impede the movant's ability to
> protect its interest, unless existing parties adequately represent that
> interest.

Fed. R. Civ. P. 24(a). "It follows that a would-be intervenor must demonstrate that: (i) its motion

is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of

the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to

protect this interest; and (iv) no existing party adequately represents its interest." Ungar, 634
F.3d at 50.

Although "[e]ach of these requirements must be fulfilled, [and] failure to satisfy any one
of them defeats intervention as of right," id. at 51, the "inherent imprecision of Rule 24(a)(2)'s
individual elements dictates that they 'be read not discretely, but together,' and always in
keeping with a commonsense view of the overall litigation." Pub. Serv. Co. of N.H. v. Patch, 136
F.3d 197, 204 (1st Cir. 1998) (citation omitted). Further, the First Circuit has noted that deciding
whether each of these requirements has been met "requires a series of judgment calls—a
balancing of factors that arise in highly idiosyncratic factual settings." Ungar, 634 F.3d at 51.

### 2. Fed. R. Civ. P. 24(b) – Permissive Intervention

In contrast to the four-factor test for intervention as of right, permissive intervention has
only two criteria. Upon a timely motion, the court has discretion to allow permissive intervention
"when an applicant's claim or defense and the main action have a question of law or fact in
common." Daggett, 172 F.3d at 112-13; see Fed. R. Civ. P. 24(b)(1)(B).[2] Permissive
intervention, however, is "wholly discretionary," and when exercising its discretion, the court
may consider "almost any factor rationally relevant . . . ." Daggett, 172 F.3d at 113. In addition,
Rule 24(b)(3) expressly provides that the court must consider "whether intervention will
prejudice the existing parties or delay the action." Fed. R. Civ. P. 24(b)(3); see Glass
Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State St. Bank &
Trust Co., 290 F.R.D. 11, 14 (D. Mass. 2013).

---

[2] In addition, the claim or defense asserted by the proposed intervenor must be supported by
independent jurisdictional grounds. Int'l Paper Co. v. Inhabitants of Town of Jay, Me., 887 F.2d
338, 346 (1st Cir. 1989).

8

**B.  The Students' Motion to Intervene Is Timely**

As a threshold matter, the Court finds that the Students' Motion to Intervene is timely for purposes of Fed. R. Civ. P. 24(a) and (b). Rule 24's timeliness inquiry "is inherently fact-sensitive and depends on the totality of the circumstances." R & G Mortgage Corp., 584 F.3d at 7. Generally, the court should consider

> (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

Id. (citation omitted).

SFFA argues that the Students' motion is untimely because they waited more than five months after the Complaint was filed to move for intervention. SFFA further submits that the existing parties would be prejudiced by the Students' delay, as the Court has already entered a scheduling order setting discovery deadlines, which would need to be modified to accommodate the proposed-intervenors. These arguments are not sufficiently persuasive. In evaluating the timeliness of a motion to intervene, "the status of the litigation at the time of the request for intervention is 'highly relevant.'" Id. (quoting Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1231 (1st Cir. 1992)). Although SFFA filed its Complaint in this case on November 17, 2014, Harvard did not answer the Complaint until February 18, 2015. The Students filed their Motion to Intervene on April 29, 2015, before an initial scheduling conference had taken place, and before the Court had issued the Scheduling Order. The Court does not find this to be an unreasonable delay. Furthermore, if the Students were permitted to intervene, any corresponding adjustments to the Scheduling Order would not prejudice the parties, as this case is in the very early stages of discovery. Compare Glass Dimensions, Inc., 290 F.R.D. at 15 (denying motion to

9

intervene as untimely, where intervention would require, among other things, re-opening fact and expert discovery and re-briefing summary judgment), with Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 64-65 (1st Cir. 2008) (finding that nine-month delay was not untimely, in part because the case had not progressed beyond its initial stages and no discovery had taken place). Under these circumstances, the Court finds that the Students' Motion is timely.

### C.  The Students Lack a Sufficiently Protectable Interest to Warrant Intervention as of Right

To satisfy intervention as of right, however, Fed. R. Civ. P. 24(a) also requires a proposed intervenor to demonstrate "an interest relating to the property or transaction that is the subject of the action," and that the disposition of the action "may, as a practical matter impair or impede the movant's ability to protect its interest . . . ." Fed. R. Civ. P. 24(a)(2). Although the interest requirement has eluded precise definition, the First Circuit has established some guidelines. At a bare minimum, the proposed intervenor must show that it has a "significantly protectable interest," Patch, 136 F.3d at 205 (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)), "that is 'direct, not contingent.'" Id. (quoting Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir. 1989)). Further, the intervenor's claim must "bear a sufficiently close relationship to the dispute between the original litigants." Travelers Indem. Co., 884 F.2d at 638 (internal quotations and citation omitted).

In this case, because the proposed intervenors are comprised of two distinct groups (nine Future Applicants to Harvard, and five current Harvard Students), and because each group's purported interest in this matter is slightly different, the question of "interest" must be analyzed separately for each group.

### 1. Future Applicants

The Court agrees with SFFA that the Future Applicants do not have a direct, protectable interest in this litigation that warrants intervention as of right under Rule 24(a). As a practical matter, although each of the Future Applicants has stated his or her intent to apply to Harvard at some point in the future, none of them has even a pending application. Therefore, there is little that distinguishes the proposed intervenors currently before the Court from any other minority student in America, or indeed, the world, who may potentially be affected by Harvard's consideration or non-consideration of race and ethnicity in its admissions decisions, if he or she should decide to apply. This is not a case where the proposed intervenors "belong to a small group, quite distinct from the ordinary run of citizens," who would be affected directly by the outcome of the case. Daggett, 172 F.3d at 110. These students' purported interests in Harvard's admissions policies are simply too removed, too speculative, and too contingent, to justify intervention as of right under Rule 24(a).

The First Circuit's holding in Public Service Co. of New Hampshire v. Patch is instructive in this regard. 136 F.3d 197 (1st Cir. 1998). In Patch, a citizens' group of several hundred residential and commercial electricity consumers sought to intervene in an action brought by utility companies against the state of New Hampshire's public utilities commission. Id. at 203-04. Although the intervenors argued that they had an interest in the outcome of the litigation, because it would affect their ability to obtain lower utility rates, the First Circuit found that this theory "operates at too high a level of generality," as "every electricity consumer in New Hampshire . . . yearns for lower electric rates." Id. at 205. Further, the court found that the interest articulated by the consumers had an "overly contingent quality," where the intervenors "root their professed economic interest in an as yet unrealized expectancy of lower electric

rates." Id. at 205-06. The court noted that this was not a case "in which ongoing litigation directly threatens an economic right or benefit presently enjoyed by any would-be intervenor." Id. at 205.  Here, like the New Hampshire consumer group in Patch, the purported interests of the Future Applicants in Harvard's continued consideration of race and ethnicity in its admissions process are too general and too contingent to warrant intervention as of right.

The Court also finds that the Future Applicants' purported interest is not sufficiently "protectable" to warrant intervention as of right. The Students concede that they have "no constitutional right to have their race considered by Harvard," assuming that they eventually apply [ECF No. 42, p. 4]. They argue, however, that they are nonetheless "entitled to protect their interests in Harvard's right to consider race in admissions regardless of whether Harvard is legally compelled to do so." [Id.]. This argument is not persuasive. As the Students seem to acknowledge, this interest is indirect, as it is derivative of Harvard's right to consider race in its admissions process.[3]

Nor do the Students have a protectable interest that is on-par with that of the Plaintiff in this case. SFFA's claims in this action derive from their members' constitutional right to be *free* from unlawful discrimination based on race. It does not follow, however, that all prospective applicants have an equally protectable interest in the school's continued consideration of race in its admissions policies, or that they may maintain a legal claim in support of those practices. In other words, the Plaintiff's interest in preventing Harvard from considering race in its admissions decisions is qualitatively different from the proposed-intervenors' interest in supporting Harvard's admissions policies. The former gives rise to a constitutional claim, while the latter does not.

---

[3] And, to the extent that the Students share in Harvard's interest, that interest is adequately represented by Harvard, as will be discussed, *infra*.

Similarly, the Future Applicants also lack a protectable interest in obtaining the many benefits of a Harvard education, or Harvard's financial aid program. To borrow from the language of Article III standing, "the 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 666 (1993).[4] Although the Court understands why the Future Applicants are interested in the outcome of this litigation, their interest is not a significantly protectable one that warrants intervention. See Travelers Indem. Co., 884 F.2d at 638 (citing Flynn v. Hubbard, 782 F.2d 1084, 1092 (1st Cir. 1986) (Coffin, J., concurring) (noting that interest must be "direct, substantial, [and] legally protectable")).

In addition, though the Students argue that courts "routinely" grant intervention as of right to parties "seeking to protect their interests in race-conscious programs from which they benefit," [ECF No. 31 p. 10], the cases they cite are largely distinguishable. See, e.g., Johnson v. San Francisco Unified Sch. Dist., 500 F.2d 349, 352 (9th Cir. 1974) (per curiam) (parents of children of Chinese ancestry had a right to intervene in action challenging compulsory desegregation program in their public school district); Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex., 19 F.3d 992, 994 (5th Cir. 1994) (group of city firefighters had right to intervene

---

[4] This Court recognizes that neither the Supreme Court nor the First Circuit has expressly decided whether the "interest" referred to in Rule 24(a) requires a proposed intervenor to possess Article III standing. See Daggett, 172 F.3d at 109 (citing Diamond v. Charles, 476 U.S. 54, 68-69 & n.21 (1986) (declining to resolve the issue)); see also Igartua v. United States, 636 F.3d 18, 19 (1st Cir. 2011). The First Circuit has noted, however, that although the two concepts may not be identical, "the 'interest' required under Rule 24(a) has some connection to the interest that may give the party a sufficient stake in the outcome to support standing under Article III." Daggett, 172 F.3d at 110. The First Circuit has also suggested that while it may not be impossible for an intervenor to demonstrate a Rule 24(a) interest without possessing Article III standing, such cases would be "unusual" and involve "peculiar circumstances." Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers, 219 F.3d 31, 34 (1st Cir. 2000).

in action, where consent decree would affect their promotional opportunities). In <u>Johnson</u>, the

intervenors were not simply "potential" applicants to a private university and possible

beneficiaries of its resources – they were established residents of a public school district, whose

children would be compelled to follow the district's reassignment policies. 500 F.2d at 352. In

<u>City of Dallas,</u> the intervenors were firefighters, presently employed by the city, whose

opportunities for promotional advancement would be immediately and directly impacted by the

outcome of a racial discrimination suit. 19 F.3d at 994-95. Thus, these intervenors' interests were

not speculative, indirect, or contingent.

The Students also rely heavily on <u>Grutter v. Bollinger</u>, in which the Sixth Circuit held, in

circumstances very similar to these, that prospective minority applicants had a substantial

interest in an action challenging the University of Michigan's admissions policy, and a

corresponding right to intervene in the litigation. 188 F.3d 394. The Court has carefully reviewed

the <u>Grutter</u> opinion, and notes that the Sixth Circuit applied, in its own words, "a 'rather

expansive notion of the interest sufficient to invoke intervention of right'" under Rule 24(a). 188

F.3d at 398. This is in contrast to a more restrictive test employed by some other circuits, which

rejects interests that are "speculative, indirect, or contingent." <u>Conservation Law Found. of N.e.</u>

<u>v. Mosbacher</u>, 966 F.2d 39, 42 (1st Cir. 1992) (discussing different Circuits' approaches to the

"interest" required for intervention). The First Circuit has declined to adopt either of these

approaches, and opts instead for a fact-based, case-by-case determination. <u>See id.</u> at 41-42.

Consistent with the pragmatic approach counseled by the First Circuit, and cognizant of its

instruction to analyze the elements of Rule 24(a) intervention "in keeping with a commonsense

view of the overall litigation," <u>Patch</u>, 136 F.3d at 204, the Court finds that the Future Applicants

do not, on these facts, have a sufficient interest in this litigation to warrant intervention as of

right under Rule 24(a).

### 2.  Harvard Students

The current Harvard Students are in a different posture. In contrast to the Future

Applicants, these students were admitted to Harvard, chose to matriculate, and are currently

enrolled in the full-time undergraduate program at the College. Therefore, they have no

remaining interest in Harvard's continued consideration of race and ethnicity with respect to

their own applications. Rather, their purported interest is in continuing to enjoy the academic and

personal benefits that they believe arise out of Harvard's racially diverse student body, and their

desire to see an increase in the number and diversity of underrepresented minority groups

admitted to Harvard [ECF. No. 31-1, Exhibits 1.10-1.14]. Although this interest is less

speculative and less contingent than the interest articulated by the Future Applicants, it is still not

a significantly protectable interest. For the same reasons that the Future Applicants lack a

protectable interest in Harvard's continued consideration of race in its admissions policies, so too

do the current Harvard Students.[5] Further, to the extent that the current Harvard Students have

any interest in the continued consideration of race in Harvard's admissions process, they have

not established that Harvard may not adequately represent those interests, as more fully set forth

below.

### D.  The Students Have Not Established Inadequate Representation

Both Harvard and SFFA argue that the Students are not entitled to intervene as of right,

because the Students have not demonstrated that Harvard may not adequately represent their

---

[5] Although the Students rely on <u>Conservation Law Foundation of New England, Inc. v.
Mosbacher</u>, 966 F.2d 39 (1st Cir. 1992), for the proposition that intervention as of right does not
require a "legally cognizable" interest [ECF No. 42, p.3], the <u>Mosbacher</u> case does not stand for
this principle.

interests. The Court agrees. The Students claim that their ultimate goal in this litigation is to "ensure that Harvard retains the right to consider race in its admissions decisions to the full extent allowed by law." [ECF no. 31 p. 3]. Harvard shares this same objective and intends to mount a "vigorous defense" of its admissions policies [ECF No. 38 p. 1]. Where, as here, "the goals of the applicants are the same as those of the plaintiff or defendant," "adequate representation is presumed." Daggett, 172 F.3d at 111. Although the Students advance several arguments in support of Harvard's inadequacy, none of these arguments is persuasive, and all are speculative. Cf. Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n, 197 F.3d 560, 567 (1st Cir. 1999) (noting that burden of overcoming a presumption of adequacy is on the would-be intervenor). In short, the Students have not sufficiently rebutted the presumption of adequacy.

First, the Students suggest that their interests would not be adequately represented should Harvard decide to settle this suit, or decline to appeal an unfavorable outcome. However, merely speculating about this possibility does not establish inadequacy. See Daggett, 172 F.3d at 112 (noting that there was no indication Attorney General would "compromise or would decline to appeal if victory were only partial"). Harvard has argued that it would be "inconceivable" for Harvard to accede to SFFA's demands [ECF No. 38, p. 4], and the Court agrees that this possibility currently appears to be "extremely remote." Patch, 136 F.3d at 208. Moreover, in the unlikely event that Harvard settled this action or failed to appeal, the Students could renew their motion to intervene at that point in time. See Massachusetts Food Ass'n, 197 F.3d at 568; Daggett, 172 F.3d at 112.

In addition, the Students allege that even if Harvard is not inclined to settle, it may want to "avoid politically sensitive topics" surrounding racial and ethnic diversity when defending its

admissions policies. In other words, the zealousness and thoroughness of Harvard's defense may be compromised by "concern over its public perception or by the need to serve myriad constituencies such as alumni, faculty, and the academic community, who may all have differing opinions about the propriety of the goal of achieving racial and ethnic diversity." [ECF No. 31 p. 5]. The Students, however, do not cite any evidence to substantiate this fear. Further, courts have held that "[i]t is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests. Little Rock Sch. Dist. v. N. Little Rock Sch. Dist., 378 F.3d 774, 780 (8th Cir. 2004). Thus, subtle differences in approach or rationale in pursuit of a common goal do not demonstrate inadequacy.

The Students further argue that Harvard lacks the ability to defend its race-conscious admissions policy adequately because "Harvard, as an institution, does not have the personal experiences that Movants do with respect to race and ethnicity." [ECF No. 31 p. 14]. This argument is also unavailing. Harvard is perfectly capable of gathering and presenting evidence of its students' interests and experiences, and it is not necessary for these Students to intervene as full-fledged litigants for this to occur. See Daggett, 172 F.3d at 113 (noting that there was "no obvious reason why" the state defendant could not offer the testimony of the proposed intervenors, treating them as friendly witnesses). However, to the extent that the Students' individual experiences and viewpoints may be enlightening, the Court is more than willing to permit the Students to participate as *amici curiae*, and to submit these views through declarations, substantive briefs and, in appropriate cases, oral argument.

Next, the Students identify specific arguments that they claim Harvard is unlikely to make in this litigation, and that the Students wish to present to the Court. For example, although the Students support Harvard's continued consideration of race and ethnicity, they oppose other

aspects of Harvard's admissions policies and programs, including (1) Harvard's reliance on SAT

scores; (2) the school's "early admission" program; and (3) the so-called "legacy" factor,

pursuant to which Harvard sometimes considers whether an applicant's parent(s) are alumni of

the school. The Students wish to argue that all of these policies have a negative impact on

minority applicants' chances for admission, and that Harvard should be able to consider race and

ethnicity in its admissions decisions in order to offset or "remedy" the disparate impact of these

criteria [ECF No. 31 pp. 2, 5, 13-14]. As a preliminary matter, the Students do not clearly

explain why this "remedy" theory would be a constitutionally sufficient reason to uphold

Harvard's admissions practices.[6] Furthermore, the Students' interest in exposing the allegedly

disparate impact of other admissions criteria is already represented in this case, if not by

Harvard, then by SFFA. For example, SFFA alleges in its Complaint that Harvard's alleged use

of "legacy" preferences, as well as other policies, has a disparate impact on minorities, and it

suggests that Harvard can achieve diversity in its student body without using race as a factor in

admissions decisions, by simply eliminating policies such as legacy preferences. [Complaint ¶¶

341-355, ECF No. 1]. Thus, such issues are likely to surface over the course of discovery, even

absent the Students' intervention.

---

[6] In the context of school admissions cases, the Supreme Court has recognized that achieving the educational benefits of a more diverse student body may be a compelling interest justifying the use of racial classifications. See Fisher v. Univ. of Texas at Austin, 133 S. Ct. 2411, 2417, 186 L. Ed. 2d 474 (2013) (citing Grutter v. Bollinger, 539 U.S. 306, 325 (2003)). The Court, however, has also suggested that a university may not employ racial classifications to remediate past instances of discrimination or injustice, because a "university's 'broad mission [of] education' is incompatible with making the 'judicial, legislative, or administrative findings of constitutional or statutory violations' necessary to justify remedial racial classification." Id. at 2417 (alteration in original) (quoting Regents of Univ. of California v. Bakke, 438 U.S. 265, 308-09 (1978) (opinion of Powell, J.)).

The Court is also unpersuaded by the Students' argument that "[t]he record reflects that Harvard is unlikely to argue that achieving a critical mass of underrepresented minority students is necessary to achieve diversity," and to "reduce racial isolation and the spokesperson status of minority students." [ECF No. 42 p. 8]. In support of this statement, the Students cite the absence of such arguments in Harvard's *amicus* briefs filed in other school admissions cases, such as Regents of the University of California v. Bakke, 438 U.S. 265 (1978); Grutter v. Bollinger, 539 U.S. 306 (2003); and Fisher v. University of Texas at Austin, 133 S.Ct. 2411 (2013). Critically, however, Harvard's admissions policies were not being challenged in those cases. The fact that Harvard did not emphasize a particular argument in an *amicus* brief does not plausibly suggest that it will fail to do so in this case, which mounts a full-scale challenge to its own admissions policies. Further, the Court notes that any unique arguments the Students wish to advance can be submitted via *amicus* briefs and their personal declarations. See Massachusetts Food Ass'n, 197 F.3d at 568 (noting that *amici curiae* can advise the court of missing arguments).

Overall, the Students have identified only relatively minor, and very speculative divergences in interests, which do not establish that Harvard's representation may be inadequate. Although the burden of showing inadequacy has been described as a "minimal" one, B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006), this does not mean that raising a mere possibility of inadequacy triggers an automatic right to intervene. Because the elements of Rule 24(a) intervention must be considered holistically, Patch, 136 F.3d at 204, the required showing of inadequacy "tend[s] to vary depending on the strength of the interest [at stake]." Daggett, 172 F.3d at 113. "Courts might require very little 'inadequacy' if the would-be intervenor's home were at stake and a great deal if the interest were thin and widely shared." Id. at 113-14. Here, the Court has found that the Students lack a significantly

protectable interest in this litigation. But even assuming that they possessed some limited

interest, it would fall on the "thin and widely shared" end of the spectrum. Id. Given the relative

weakness of the Students' purported interests, the potential inadequacies they cite are not

sufficiently compelling to warrant intervention as of right. The Students' Motion to Intervene as

of right pursuant to Fed. R. Civ. P. 24(a) is therefore DENIED.

### E.  The Court Declines to Allow Permissive Intervention

In the alternative, the Students have moved for permissive intervention under Fed. R.

Civ. P. 24(b), which provides that a court may allow intervention upon a timely motion, "when

an applicant's claim or defense and the main action have a question of law or fact in common."

Daggett, 172 F.3d at 112-13; see Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention, however,

is "wholly discretionary," and the court should consider "whether intervention will prejudice the

existing parties or delay the action." Glass Dimensions, Inc., 290 F.R.D. at 14; see Fed. R. Civ.

P. 24(b)(3).

The Court declines to allow permissive intervention here, for a number of reasons. First,

as discussed earlier in this Memorandum, Harvard should adequately represent the interests of

both the Future Applicants and the Harvard Students in this litigation. Second, both SFFA and

Harvard have objected to the Students' full-fledged intervention, citing concerns for expediency,

and, in Harvard's case, privacy. Harvard is also concerned that the Future Applicants could

become privy to the inner workings of Harvard's admissions process, which could pose an unfair

advantage. The Court shares the parties' concerns. In their moving papers, the Students suggest

that if permitted to intervene, they will be "present and involved" in fact discovery, and that they

may gather evidence and present expert testimony beyond that sought by the parties [ECF No. 42

pp. 9-10]. In all likelihood, allowing fourteen Students to intervene as parties would further

complicate proceedings, lengthen the discovery process, add expense, and significantly delay the

ultimate resolution of this case. See Massachusetts Sch. of Law at Andover, Inc. v. United States,

118 F.3d 776, 782 (D.C. Cir. 1997) (noting that the "delay or prejudice" standard referenced in

Rule 24(b) captures "all the possible drawbacks of piling on parties; the concomitant issue

proliferation and confusion will result in delay as parties and court expend resources trying to

overcome the centrifugal forces springing from intervention, and prejudice will take the form not

only of the extra cost but also of an increased risk of error").

In sum, the Court finds that the Students' intervention would add undue delay, cost, and

complexity to these proceedings, and that such intervention is unwarranted where Harvard

adequately represents the Students' interests. See State v. Dir., U.S. Fish & Wildlife Serv., 262

F.3d 13, 21 (1st Cir. 2001) (affirming denial of permissive intervention, where district court felt

that intervention "would delay and complicate matters"); Daggett, 172 F.3d at 113 (deferring to

district court's judgment on whether permissive intervention would cause disruption and delay).

Consequently, the Students' Motion to Intervene pursuant to Fed. R. Civ. P. 24(b) is also

DENIED.

### F. Amicus Curiae Status

Although the Students may not intervene in this case as parties, the Court will permit the

Students to participate as *amici curiae*. The role of an *amicus curiae*, meaning "friend of the

court," is to "assist the court 'in cases of general public interest by making suggestions to the

court, by providing supplementary assistance to existing counsel, and by insuring a complete and

plenary presentation of difficult issues so that the court may reach a proper decision.'" Sierra

Club v. Wagner, 581 F.Supp.2d 246, 250 n.1 (D.N.H. 2008) (quoting Newark Branch,

N.A.A.C.P. v. Town of Harrison, N.J., 940 F.2d 792, 808 (3d Cir. 1991)). The Court finds that

*amicus* status will be sufficient for the Students to present their views and arguments in this case. As *amici curiae*, the Students will be permitted to submit their own declarations, file substantive briefs on dispositive motions, and participate in oral arguments on those motions.

The Students argue that *amicus* status is not sufficient, because an *amicus* cannot "file pleadings; create, extend, or enlarge an issue before the court; challenge the validity of testimony; . . . challenge an injunction while it remains in effect;" gather evidence; or provide expert testimony [ECF No. 42 p. 9]. Although this is not entirely accurate, the Court takes their point. Nonetheless, the Students have not demonstrated any significantly protectable interest, or sufficiently inadequate representation, to justify their full-scale participation in discovery. Further, the Court has declined to permit discretionary intervention precisely because the addition of fourteen additional parties propounding discovery, presenting expert testimony, cross-examining witnesses, and participating in all other aspects of the adversary process would inevitably slow and unduly complicate the progress of this litigation.

The Students also note that as *amici*, they would not have the right to appeal an adverse decision. That may be true, but the Students would arguably lack standing to appeal even if the Court were to permit intervention. "[A]n intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art[icle] III." Diamond v. Charles, 476 U.S. 54, 68 (1986); see Rio Grande Silvery Minnow v. Keys, 46 F. App'x 929, 932-33 (10th Cir. 2002) (unpublished) (holding that intervenors-appellants lacked Article III standing to appeal, where they lacked injury in fact). The issue of Article III standing, however, is not presently before the Court. In the unlikely event that Harvard declined to appeal from an unfavorable decision, the

would-be intervenors could renew their motion to intervene at that time. See Massachusetts Food

Ass'n, 197 F.3d at 568; Daggett, 172 F.3d at 112.

## VI.    CONCLUSION

For the foregoing reasons, the Proposed Intervenors' Motion to Intervene [ECF No. 30] is

DENIED; however, the Proposed Intervenors are granted leave to participate in this action as

*amici curiae* as follows: (1) a*mici curiae* may, through their counsel, submit a brief or

memorandum of law not to exceed 30 pages, exclusive of exhibits, on any dispositive motion in

this case; (2) *amici curiae* may, through their counsel, participate in oral argument on any

dispositive motion in this case; (3) *amici curiae* may submit personal declarations or affidavits in

support of their memorandum of law, which may be accorded evidentiary weight if otherwise

proper; (4) as appropriate, the Defendant may take full advantage of *amici curiae's* offers of

resources, evidence, or assistance, where doing so would help Defendant in preparation for and

during trial. However, *amici curiae* will not be granted leave to propound discovery, participate

in depositions, obtain copies of documents requested in discovery, or otherwise participate in

discovery in this case. Nor will *amici curiae* be permitted to participate in expert discovery or

present expert testimony. Should this case proceed to trial, *amici curiae* may file a motion to

participate in the proceedings, and the Court will consider the appropriate scope of participation

at that time.

SO ORDERED.

Dated: June 15, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE