No. 15-1823

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

STUDENTS FOR FAIR ADMISSIONS, INC.,

Plaintiff – Appellee,

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD
CORPORATION),

Defendant – Appellee;

SARAH COLE, FADHAL MOORE, ARJINI KUMARI NAWAL, ITZEL
VASQUEZ-RODRIGUEZ, KEYANNA WIGGLESWORTH, M.B., K.C., Y.D.,
G.E., A.G., I.G., R.H., J.L., R.S.,

Movants – Appellants.

_____

On Appeal from the United States District Court for the District of Massachusetts

_____

BRIEF FOR PLAINTIFF-APPELLEE
STUDENTS FOR FAIR ADMISSIONS, INC.

_____

Paul M. Sanford
First Circuit # 38591
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
T: (617) 345-3000

Patrick Strawbridge
First Circuit # 1143599
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB, #706
Boston, MA 02109
T: (617) 227-0548
E: patrick@consovoymccarthy.com

## <u>RULE 26.1 DISCLOSURE STATEMENT</u>

Appellee Students for Fair Admissions, Inc., is a non-profit corporation organized under the laws of Virginia. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

RULE 26.1 DISCLOSURE STATEMENT ............................................................ ii

TABLE OF AUTHORITIES ................................................................................ iv

REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD ...................... vi

JURISDICTIONAL STATEMENT ...................................................................... 1

ISSUE PRESENTED FOR REVIEW .................................................................. 1

STATEMENT OF THE CASE .............................................................................. 1

SUMMARY OF THE ARGUMENT .................................................................... 4

ARGUMENT......................................................................................................... 7

I.   The District Court Correctly Held that the Students Failed to Meet
     the Standard for Intervention as a Matter of Right. ................................. 7

     A.  The Standard of Review Here Is Abuse of Discretion................................... 8

     B.  The District Court Correctly Found that the Students Lack a
         Sufficiently Protectable Interest.................................................................... 9

         1.   The District Court Correctly Held that the Students Lack Any Legally
              Protectable Interest in the Continued Use of Race at Harvard. ................. 10

         2.   Any Interest the Students May Have Is Contingent and Indirect. ............. 16

     C.  The District Court Correctly Found That Harvard Would Adequately
         Represent the Students' Interest in Defending the Use of Race in the
         Admissions Process........................................................................................ 17

II.  The Students Can Sufficiently Express Their Views by Participating
     as *Amici*. ....................................................................................................... 24

CONCLUSION .................................................................................................... 26

CERTIFICATE OF COMPLIANCE.................................................................... 27

CERTIFICATE OF SERVICE............................................................................. 28

## TABLE OF AUTHORITIES

**CASES**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
　440 F.3d 541 (1st Cir. 2006) ............................................................. 19

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
　966 F.2d 39 (1st Cir. 1992) ....................................................... 5, 12, 14

*Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*,
　219 F.3d 31 (1st Cir. 2000) ................................................. 5, 11, 13, 17

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
　172 F.3d 104 (1st Cir. 1999) ...................................................... *passim*

*Diamond v. Charles*,
　476 U.S. 54 (1986) ............................................................................ 21

*Fisher v. Univ. of Texas at Austin*,
　133 S. Ct. 2411 (2013) ...................................................................... 22

*Fisher v. University of Texas at Austin*,
　Case No. A-08-CA-263-SS (W.D. Tex. Aug. 11, 2008) .................... 18

*Flynn v. Hubbard*,
　782 F.2d 1084 (1st Cir. 1986) ........................................................... 14

*Hopwood v. State of Tex.*,
　21 F.3d 603 (5th Cir. 1994)......................................................... 12, 18

*In re Efron*,
　746 F.3d 30 (1st Cir. 2014) ................................................................. 8

*Int'l Paper Co. v. Inhabs. of Town of Jay, Me.*,
　887 F.2d 338 (1st Cir. 1989) ............................................................... 8

*Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*,
　378 F.3d 774 (8th Cir. 2004)............................................................. 21

*Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control
　Comm'n*,
　197 F.3d 560 (1st Cir. 1999) ...................................................... 21, 25

*Moosehead Sanitary Dist. v. S.G. Phillips Corp.*,
　610 F.2d 49 (1st Cir. 1979) ............................................................... 19

*Mosbacher; NRDC v. U.S. Nuclear Regulatory Comm'n*,
　578 F.2d 1341 (10th Cir. 1978)......................................................... 15

*Pub. Serv. Co. of New Hampshire v. Patch*,
  136 F.3d 197 (1st Cir. 1998) ..................................................... 7, 15, 25

*Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant
  Rights & Fight for Equal. by Any Means Necessary (BAMN)*,
  134 S. Ct. 1623 (2014) ..................................................... 5, 10

*Travelers Indem. Co. v. Dingwell*,
  884 F.2d 629 (1st Cir. 1989) ..................................................... 5, 14

*Ungar v. Arafat*,
  634 F.3d 46 (1st Cir. 2011) ..................................................... 1, 8

## OTHER AUTHORITIES

*Faust Pledges 'Vigorous Defense' Against Admissions Lawsuit*, The Harvard
  Crimson, September 3, 2015 ..................................................... 23

*Suit Alleges Race-Based Discrimination in Harvard Admissions Practices*, The
  Harvard Crimson, November 18, 2014 ..................................................... 23

## RULES

Fed. R. Civ. P. 24(a)(2) ..................................................... 5

## REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD

This Court should dispense with oral argument. In addition to the District Court's detailed order, the Court will have before it comprehensive briefing from three parties. Thus, the "arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C). Moreover, oral argument is unnecessary given the fact that this appeal is being used by Harvard and the would-be intervenors as a basis to delay the case below. The parties are still awaiting a decision on a motion to stay that Harvard filed in July. *See* Joint Appendix ("JA") 14-17. Two months after the denial of their motion to intervene, Movants-Appellants ("the Students") themselves filed their own belated motion to stay, JA 16, arguing that this appeal actually deprives the District Court of jurisdiction over the entire case. D.C. Dkt. 91. Because this appeal is being used as a basis for delay of all proceedings below—even as the window to apply to Harvard is closing for some of SFFA's members—SFFA respectfully requests that this Court dispense with argument and expedite its decision.

## JURISDICTIONAL STATEMENT

"An order denying a motion to intervene as of right is immediately appealable as a collateral order." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011). Movants-Appellants ("the Students") timely filed a notice of appeal below, and this Court has jurisdiction.

## ISSUE PRESENTED FOR REVIEW

Whether the District Court abused its discretion when it denied the Students' motion to intervene under Rule 24(a), after finding that the Students lacked a sufficiently protectable interest to warrant intervention and that Harvard would adequately defend its use of race in the admissions process.

## STATEMENT OF THE CASE

This case involves claims from Students for Fair Admissions, Inc. ("SFFA")—an organization of students, parents and prospective applicants— alleging that Harvard University's use of race in its admissions process violates Title VI of the Civil Rights Act of 1964. JA 18-137. Harvard concedes that it considers race in admissions decisions, *see* JA 167, so the case turns on whether the way in which Harvard uses race satisfies the strict scrutiny that the Supreme Court has held applicable to such affirmative-action policies. Harvard strongly denies that its policies violate Title VI or the Supreme Court's precedent, *see* JA 144, 167-170, 198-204, and it has vowed to mount a full and "vigorous defense" of

1

SFFA's claims. Opinion Below ("Op.") at 16.

SFFA filed its Complaint on November 17, 2014. JA 10. Harvard filed its Answer on February 18, 2015. JA 11. More than two months later—and more than five months after the Complaint was filed—the Students, a group of 14 current Harvard students and potential applicants to Harvard, moved to intervene in the action. JA 12. These students allege that they are (or expect to be) beneficiaries of Harvard's current use of race in the admissions policies, and they assert an interest in that policy. *See* Op. at 11, 15. The prospective Students allege an interest in the policy because they hope to benefit from consideration of race in the admissions process. *Id.* at 11. The current Students, having already obtained admission, assert an interest "in continuing to enjoy the academic and personal benefits that they believe arise out of Harvard's racially diverse student body, and their desire to see an increase in the number and diversity of underrepresented minority groups admitted to Harvard." *Id.* at 15. The Students' motion sought intervention as a matter of right under Fed. R. Civ. P. 24(a)(2), and permissive intervention under Fed. R. Civ. P. 24(b). JA 208.

Both SFFA and Harvard opposed the Students' motion to intervene. SFFA contended that the motion was untimely because the Students took more than five months to move. *See* Op. at 6. SFFA also argued that the Students lacked the required "demonstrated interest" in this litigation. *Id.* Both Harvard and SFFA

argued that intervention was not warranted because Harvard would adequately represent the Students' interests. *Id.* And both Harvard and SFFA expressed concern about the introduction of 14 new parties into the case, and the effect intervention would have on discovery, schedules, expert witnesses, and other practical aspects of trying the case. *Id.* Harvard raised additional concerns about the privacy of its students and applicants, which would be exacerbated by the intervention of additional parties. *Id.* Notwithstanding their objections to intervention, both SFFA and Harvard consented to the Students' participation as *amici curiae*. *Id.*

After full briefing, the District Court on June 15, 2015, denied the Students' motion in a 22-page order, but granted them substantial rights to participate as *amici* going forward. *See* Op. at 2. With respect to mandatory intervention (the only claim the Students press on appeal here), the District Court held that the motion to intervene was timely. *Id.* at 9-10. But it held that the prospective Students' interest in Harvard's current admissions policy was indirect and contingent. *Id.* at 11-12. Moreover, the District Court found that the Students as a whole lacked any legally protectable interest in the policy. *Id* at 12-13. The District Court carefully considered the Students' argument that it should follow out-of-circuit precedent permitting intervention in another affirmative-action challenge, but explained why it found that case and others relied upon by the Students as

3

unpersuasive. *Id.* at 13-15. Separately, the District Court held that even if the Students had a protectable interest justifying intervention, they failed to overcome the presumption that Harvard would adequately represent their interests. *Id.* at 15-20.

The Students filed a notice of appeal on July 13, 2015. JA 15.

## SUMMARY OF THE ARGUMENT

The Students appeal the denial of their motion to intervene in this case. They argue that the District Court abused its discretion by concluding that they failed to satisfy the requirements for mandatory intervention under Federal Rule of Civil Procedure 24(a)(2). But orders denying intervention under that Rule are subject to a highly deferential standard of review in this Court, and the District Court's 22-page order sets forth both the correct legal standard and a detailed, fact-specific, and thoroughly reasoned analysis explaining why the Students lack a sufficient protectable interest in the litigation to support intervention as a right, and why they failed to overcome their burden of demonstrating that Harvard would not adequately defend its use of race in the admissions process. The District Court's decision is a sound application of law to the specific factual circumstances of this case, and its decision to deny the motion—but to grant the Students substantial rights to participate in the case as *amici*—was well within its ample discretion. This Court should affirm the decision below.

*First*, the Students contend that the District Court abused its discretion in finding that the Students lacked the required protectable "interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). But the District Court correctly recognized that the Students have no legal right in the continuation of Harvard's existing affirmative action program, as the Supreme Court has recently made clear. *See Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equal. by Any Means Necessary (BAMN)*, 134 S. Ct. 1623 (2014). Without a protectable *legal* interest in Harvard's existing program, the District Court was well within its discretion to determine that the Students could not demonstrate an interest sufficient enough to warrant intervention as a matter of right. *See Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989). It also properly rejected a prior Sixth Circuit decision that applied an extremely "liberal approach to intervention" that this Court to date has declined to adopt. *See Conservation Law Found. of New England, Inc. v. Mosbacher,* 966 F.2d 39, 41-42 (1st Cir. 1992).

Even if the Students did have some protectable interest in this case, the District Court also found that the prospective Students' interest was, at most, contingent and indirect. As this Court has noted, finding the requisite direct interest depends upon "matters of degree and a particular fact pattern," *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 37 (1st Cir. 2000), and

the District Court's careful analysis satisfies abuse-of-discretion review.

*Second*, regardless of the level of protectable interest, the District Court determined that the Students failed to overcome the burden of proving that Harvard—which shares the Students' objective of defending its existing use of race, and which has repeatedly vowed to defend its policies vigorously—would not adequately represent their interest in this litigation. The Students face a particularly heavy burden in trying to reverse the District's Court findings on this point, *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 111-12 (1st Cir. 1999), and they cannot overcome this burden simply by pointing to minor speculative differences in legal strategy and arguments of dubious merit that Harvard might not choose to assert.

None of this is to say that the Students should have no role in this case. To the contrary, the District Court—with the consent of both Appellees—granted the Students considerable rights to participate as *amici* in this case. This includes not only the right to file briefs in dispositive motions, but also the ability to participate in oral argument, submit declarations, and offer resources, evidence, or assistance in preparing for trial. These substantial rights are more than sufficient to permit the Students to provide their perspective and make their arguments without unduly delaying or complicating discovery and other proceedings below.

For each and all of these reasons, the District Court's order should be affirmed.

## ARGUMENT

### I.   The District Court Correctly Held that the Students Failed to Meet the Standard for Intervention as a Matter of Right.

The Students limit their appeal of the Order below to the denial of their request for mandatory intervention under Rule 24(a)(2).[1] That rule requires a court to permit intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *Id.* In applying the Rule, this Court has identified "four conjunctive prerequisites," and noted that an applicant "must run the table and fulfill all four of these preconditions," so that "the failure to satisfy any one of them dooms intervention." *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998). Those four factors are:

> (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest.

---

[1] Below, the Students alternatively sought permissive intervention under Fed. R. Civ. P. Rule 24(b), which the District Court also properly denied. Op. at 19-22.

*Id.* The District Court correctly held that the Students failed to satisfy factors (2) and (4). This Court should affirm that decision for the following reasons.

### A.    The Standard of Review Here Is Abuse of Discretion.

This Court "review[s] the denial of a motion to intervene as of right for abuse of discretion." *In re Efron*, 746 F.3d 30, 35 (1st Cir. 2014). As a result, this Court will reverse a denial of intervention only "if the court fails to apply the general standard provided by the text of Rule 24(a)(2), or if the court reaches a decision that so fails to comport with that standard as to indicate an abuse of discretion." *Int'l Paper Co. v. Inhabs. of Town of Jay, Me.*, 887 F.2d 338, 344 (1st Cir. 1989).

Here, there is no serious question that the District Court correctly set forth and applied the "general standard provided by the text of Rule 24(a)(2)." *Id. See* Op. at 7-8. The Students' appeal thus amounts to a challenge to the District Court's "series of judgment calls—a balancing of factors that arise in highly idiosyncratic factual settings." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011); *see also Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999) ("[I]ntervention 'as of right' usually turns on judgment calls and fact assessments that a reviewing court is unlikely to disturb except for clear mistakes."). The Students accordingly face a steep hurdle in establishing that the Order below reaches a conclusion on the specific facts of this case that is so

unreasonable as to amount to an abuse of discretion.

**B.     The District Court Correctly Found that the Students Lack a Sufficiently Protectable Interest.**

The District Court found that the Students lacked a sufficiently protectable interest in the litigation to justify intervention under Rule 24(a). The Court held that both the prospective and current Students lacked *any* "protectable" interest in maintaining the use of race in Harvard's application process. First, unlike SFFA's members, who have a legal right to apply for admission to Harvard without being subjected to the unconstitutional use of race, the prospective Students conceded, as they must, that "they have 'no constitutional right to have their race considered by Harvard.'" Op. at 12. Their interest was thus merely derivative of Harvard's right to use race in its admissions process, and was "qualitatively different" from the rights of SFFA's members to be free from discrimination in applying to Harvard. *Id.*

Second, the District Court held that the current Students, having gained admission, "have no remaining interest in Harvard's continued consideration of race and ethnicity with respect to their own applications," but instead sought only to "enjoy the academic and personal benefits that they believe arise out of Harvard's racially diverse student body, and their desire to see an increase in the number and diversity of underrepresented minority groups admitted to Harvard." *Id.* at 15. The Court found that this too was not a protectable interest sufficient to

9

warrant intervention as a matter of right. *Id.*

Third, the District Court found that the prospective Students' interests in Harvard's continued use of race—whether it was legally "protectable" or not— were at most contingent or indirect, and not the "direct interest" required by this Court. Op. at 10-11 (citing *Patch*, 136 F.3d at 205-06).

This analysis is correct as a matter of law and discretion. The Students have no sufficient, legally protectable interests that meet the requirements of intervention as of right. And even if there were a protectable interest, it would still at most be contingent and indirect, and thus insufficient to satisfy Rule 24(a)(2).

        1.    <u>The District Court Correctly Held that the Students Lack Any Legally Protectable Interest in the Continued Use of Race at Harvard.</u>

There can be no dispute that *none* of the Students has a protectable interest—let alone a "significant" and "direct" interest—in the continued use of racial preferences at Harvard or anywhere else. In *Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equal. by Any Means Necessary (BAMN)*, 134 S. Ct. 1623 (2014), the plaintiffs, who included "prospective applicants to Michigan public universities," filed suit claiming that a ballot initiative banning the use of racial preferences in admissions violated their legal rights. *Id.* at 1629-30. The Court disagreed. While the use of racial preferences in admissions is presumptively unconstitutional and thus subject to

strict scrutiny, a university's decision to *refrain* from using or to discontinue such racial preferences is *never* illegal. *See id*. at 1629-36. As the Court explained, a university's decision to shift from a race-based admissions system to a race-neutral one does not cause any potential applicant "specific injury of the kind" needed to create a protectable legal interest. *Id*. at 1636. The Equal Protection Clause could never "forbid" a university "from banning a practice that the Clause barely—and only provisionally—permits." *Id*. at 1639 (Scalia, J., concurring in the judgment). Indeed, even the dissent agreed that a university is perfectly free to eliminate racial preferences in admissions without offending the Constitution. *See id*. at 1652-53, 1669-70 (Sotomayor, J., dissenting).

*Schuette* confirms what the District Court recognized: unlike SFFA's members, which have a legally protectable right to ensure that Harvard's use of race complies with Title VI and the Equal Protection Clause, the Students lack any protectable legal interest in maintaining the use of race in admissions. *See* Op. at 12-13. Many of the Students' cases involving affirmative action challenges can be distinguished on this basis alone—including the Sixth Circuit's decision in *Grutter v Bollinger*, 188 F.3d 394 (6th Cir. 1999), as well as this Court's decision in *Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 36 (1st Cir. 2000).

*Grutter* is particularly inapt. First, the Students' inflate its significance,

incorrectly asserting that "[n]o other circuit has considered whether underrepresented minority students have a right to intervene to defend the use of race in university admissions." Br. of Students, at 19. In fact, the Fifth Circuit has considered and rejected virtually identical intervention attempts. *See Hopwood v. State of Tex.*, 21 F.3d 603, 606 (5th Cir. 1994) (affirming denial of students' motion to intervene in challenge to university's use of race in its admissions program). Setting that aside, it is far from clear that the Sixth Circuit would reach the same outcome post-*Schuette*. Moreover, the Sixth Circuit itself conceded in *Grutter* that it was applying "a 'rather expansive notion of the interest sufficient to invoke intervention of right'" under Rule 24(a). 188 F.3d at 398. Indeed, the Sixth Circuit has long employed a "liberal approach to intervention" that this Court to date has declined to adopt. *See Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41-42 (1st Cir. 1992). The District Court opinion analyzed *Grutter* and ultimately declined to adopt its logic for these reasons. Op. at 14-15. This Court should do the same.

As for *Cotter*, the Students' newfound fervor about this decision is somewhat puzzling; before the District Court, the Students cited *Cotter* only twice in their reply memorandum, and only for a collateral point regarding Article III standing. *See* D.C. Dkt. No. 42, at 4-5. The Students never argued below, as they do now, that *Cotter* somehow "makes clear" that the Students "have a direct

interest in that process and its effect on their educational opportunities." Br. of Students, at 24.[2] A review of the case reveals why. Not only does *Cotter* predate the Supreme Court's clarifying decision in *Schuette*; it also is painstakingly tied to "matters of degree and a particular fact pattern," *Cotter*, 219 F.3d at 37, and thus does not broadly stand for the Students' proposition that all potential beneficiaries from the consideration of race have a protectable interest in any controversy over those policies. The Court's resolution of the "difficult … question" in that case ultimately turned on its assessment of the substantial and predictable nature of the effect on the rights of the intervenor's members, which, as discussed further *infra* at Section I.B.2, were more direct and non-contingent than any interest here. *Id.* at 36. It also bears noting that the defendants in *Cotter* did not object to intervention.

Beyond *Grutter* and *Cotter*, the Students contend that their interest need not be "legally cognizable" to be protectable to warrant mandatory intervention. But the cases they rely upon do not stand for their sweeping proposition that *any* "practical" interest, legal or not, is sufficient to justify intervenor status. To the contrary, there is ample authority that intervention requires a *legally* protectable

---

[2] The Students' failure to identify *Cotter* as key decision below may explain why the District Court chose to distinguish *Grutter* "without discussing the citation in *Cotter*." Br. of Students at 19. In any event, a passing citation in a footnote hardly represents the wholesale adoption of *Grutter*'s "expansive" and "liberal" view of the interests sufficient to support intervention. And the District Court in fact cited *Cotter* in its discussion of the Article III point, Op. at 13 n.4, so it was clearly aware of the case.

13

interest. *See, e.g.*, *Flynn v. Hubbard*, 782 F.2d 1084, 1093 (1st Cir. 1986) (rejecting motion for intervention from party claiming "a generalized injury to reputation, but identif[ying] no legal detriment arising from" the outcome in the case); *see also id.* at 1092 (Coffin, J., concurring) (arguing that the interest must be "direct, substantial, *and legally protectable*") (emphasis added); *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989) (same).

The remaining cases cited by the Students are inapposite. For example, the students heavily rely upon *Conservation Law Foundation v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992), in which they contend that this Court "rejected" the argument that a legally cognizable interest was required. But *Mosbacher* does not stand for that proposition. *See* Op. at 15 n.5. To the contrary, this Court made clear that the proposed consent decree that was the subject of that case threatened both the intervenors' legal and financial interests, noting that "[t]he fishing groups are presently regulated by the Secretary and, if the consent decree is ultimately effective, will be subjected to even more stringent rules than those presently in effect." *Mosbacher*, 966 F.2d at 44; *see also Daggett,* 172 F.3d at 109 (noting that "if the plaintiffs' challenge is successful, each [intervenor] will lose the opportunity for direct payment by the state that would otherwise accrue").[3]

---

[3] Moreover, *Mosbacher* explained that the requirement of a legally protectable interest was relaxed, if at all, "where public law disputes affecting federal regulatory programs are at issue." 966 F.2d at 42. Some of the cases relied

Contrary to the Students' suggestion, *see* Br. of Students, at 20-21, the District Court expressly *declined* to hold that an intervenor must satisfy the requirements of Article III. Op. at 13 & n.4, 22. This Court has previously avoided deciding that question, *Daggett*, 172 F.3d at 109, and it need not do so now. Whether or not the Students' interest needs to rise to the level of an Article III injury—and their interest surely does not, in light if *Schuette*—the District Court's finding that, on these facts, the Students have not shown a sufficiently protectable interest is correct and does not constitute an abuse of discretion.

Finally, the Students attempt to argue that their lack of a protectable legal interest in this case actually supports intervention because this is the only opportunity they will have to defend their interest in preserving Harvard's use of race in the admissions process. Br. of Students at 26-28. This twisted reasoning gets Rule 24(a) exactly backwards. Intervention as of right is the exception, not the rule. Parties must not only have a protectable legal interest, but they must also demonstrate that the disposition of the case at issue "threatens to create a practical impairment or impediment to its ability to protect that interest." *Patch*, 136 F.3d at 204. Thus, a party may have a legal interest in the outcome, but still be denied intervention for lack of any likelihood of impairment. But this does not mean that a

___

upon by the Students fit that pattern, *see* Br. of Students at 14 (citing *Mosbacher*; *NRDC v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

party without any protectable legal interest must be permitted to intervene because it is the only opportunity to protect a *non*-legal interest. None of the cases the Students cite supports this novel proposition, which would greatly expand the scope of Rule 24(a)(2) and render Rule 24(b)'s standard for *permissive* intervention irrelevant.

Of course, there is an established way in which parties with an interest in the case that is not legally protectable may still participate: through an *amicus* brief, which the District Court correctly determined is the appropriate role for the Students in this case. *See infra* Section II.

> 2.    Any Interest the Students May Have Is Contingent and Indirect.

Even if the Students have some non-legal but nonetheless "protectable" interest in Harvard's current admissions policies, the District Court separately held that it still would not be sufficiently "direct" to require intervention. Op. at 10-12. As the District Court noted, any interest that the prospective Students may have is general, contingent, and indirect, flowing primarily from Harvard's voluntary admissions policies. *Id.* at 11-13.

Whatever non-legal interest the Students do have here, they are less "direct," than those of the police officers in *Cotter*. As noted above, this Court in *Cotter* was clear that the high likelihood of a direct effect on the intervenor association's officers was the key factor: "Assuredly, a number of [Massachusetts Association

of Minority Law Enforcement Officers ("MAMLEOs")] current officer members are going to seek promotion to sergeant … and the likely impact on other MAMLEO members seems to us substantial, predictable and far more concrete than some general interest in precedent." *Cotter*, 219 F.3d at 37. In short, it was "matters of degree" and the "particular fact pattern" that tipped the scales on the "difficult question" presented there. *Id.* Here, the District Court determined that Students' interests were more general and less concrete. *See* Op. at 13-14. This finding was not an abuse of discretion.

Contrary to the Students' arguments, the District Court's decision did not turn solely on the specific timing of the Harvard application cycle. *See* Br. of Students, at 19-20. Its analysis of the contingent nature of the claim instead was grounded in the very "matters of degree" that *Cotter* acknowledged as decisive, as well as its recognition that the student's interest were ultimately derivative of Harvard's voluntary admission policy. The District Court's analysis on this point does not amount to an abuse of discretion required to reverse its finding.

### C.    The District Court Correctly Found That Harvard Would Adequately Represent the Students' Interest in Defending the Use of Race in the Admissions Process.

The District Court held that even if the Students could satisfy their burden of demonstrating a sufficient protectable interest, Harvard would adequately defend that interest in this case. Op. at 15-16. It noted that the Students and Harvard share

the "same objective" of vigorously defending its current admissions policies, and the Students thus bore the burden of rebutting the presumption that Harvard's representation would be adequate. *Id.* at 16 (citing *Daggett*, 172 F.3d at 111). The District Court found that the Students failed to overcome this burden because (1) subtle differences in arguments and strategy are insufficient and (2) the possibility of Harvard settling the case is "speculative" and "extremely remote." *Id.* 16-17. The District Court also rejected the Students' emphasis of the possibility that Harvard would fail to argue about the need for race to be used to remedy past discrimination because it recognized that this was not a legally permissible defense of Harvard's admissions policy, and that some of the underlying factual questions were likely to be developed by the parties. *Id.*

The District Court's thoroughly reasoned conclusion that Harvard would adequately defend its admissions policy was eminently correct, and consistent with prior decisions considering similar facts. *See Hopwood*, 21 F.3d at 606 (affirming denial of motion of intervention as of right where student groups "have not met their burden of demonstrating that they have a separate interest that the State will not adequately represent" or "that the State will not strongly defend its affirmative action program"); *Fisher v. University of Texas at Austin*, Order, Case No. A-08-CA-263-SS, at *2 (W.D. Tex. Aug. 11, 2008) (Doc. 83) ("Specifically, the Court finds movants' interests adequately represented by the existing parties, specifically

18

the defendants, in this litigation. The Court also finds denial of the motions to intervene to be in the best interest of an efficient resolution of this case."). On appeal, the Students fail to identify any abuse of discretion in the District Court's findings that the Students failed to overcome the presumption of adequate representation in this case. This Court should affirm the decision below on that basis alone.

The Students concede that, "in cases where the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc*., 440 F.3d 541, 546 (1st Cir. 2006) (citing *Daggett*, 172 F.3d at 111); *see also Moosehead Sanitary Dist. v. S.G. Phillips Corp*., 610 F.2d 49, 54 (1st Cir. 1979); Br. of Students at 30. But they then proceed to ignore the import of the presumption, repeatedly arguing that only a "minimal" showing is required for inadequacy and citing cases that do not involve the presumption. *See* Br. of Students at 30, 33 (quoting *Trbovich v. United Mine Workers of Am*., 404 U.S. 528, 538 n.10 (1972)). This Court has explained, however, that far more than a "minimal" showing is required when the presumption applies. *B. Fernandez*, 440 F.3d at 546 (distinguishing *Trbovich*'s standard from cases where the party seeking intervention shares the same "ultimate objective" of the party).

Here, there is no dispute that Harvard and the Students share the same

"ultimate objective"—the vigorous defense of Harvard's use of race under its current admissions policies. *See* Op. at 16; JA 144, 167-170, 198-204. The presumption of adequacy therefore applies, and the Students' burden on appeal is "a heavy one, since adequacy is primarily a fact-sensitive judgment call and the standard of review is deferential." *Daggett*, 172 F.3d at 111-12.

The Students cannot satisfy this burden by recycling the same arguments that the District Court correctly rejected. They begin by arguing that there may be *potential* conflicts between them and Harvard that *might* give rise to settlement risks or prevent Harvard from making certain arguments about the need for diversity. Br. of Students at 31-32. But the District Court was justifiably unpersuaded by these speculative arguments. *See* Op. at 16-17. For example, the fact that Harvard represents other constituencies is not enough, by itself, to demonstrate inadequacy. *See Daggett*, 172 F.3d at 112 ("The general notion that the Attorney General represents 'broader' interests at some abstract level is not enough."); *Patch*, 136 F.3d at 207-08 (rejecting an argument that a party's status as the "protector of the general public interest precludes its effective representation of their particularized interests"). Nor are differences in strategy or the presentation of particular arguments enough to rebut the presumption—particularly when, as here, the would-be intervenor will have the full opportunity to present its alternative arguments in an amicus brief. *Daggett*, 172 F.3d at 112 ("[T]he use of different

arguments as a matter of litigation judgment is not inadequate representation *per se*”); *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) (noting that prospective intervenors' desire to offer additional legal arguments “were easily presented in amicus briefs” and insufficient to establish inadequacy); *see also Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) (“It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests.”).

In any event, as the District Court noted, even if Harvard were to settle or decline to appeal, the Students could not proceed unless they met the requirements of Article III standing.  *See* Op. at 22 (“[A]n intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art[icle] III.”) (quoting *Diamond v. Charles*, 476 U.S. 54, 68 (1986)). The Students' lack of a cognizable legal interest thus further weighs against granting them intervention.

The Students further contend that the District Court improperly “sought to combine the opposing parties' arguments to find adequate representation where Harvard, by itself, was lacking.” Students Br. at 33. To begin with, this mischaracterizes both the parties' arguments and the decision below. The District Court referred to SFFA's allegations about SAT scores, legacy admissions, and

21

Early Action not to suggest that SFFA and the Students were aligned in the outcome of the litigation, but instead to address the Students' claims that their intervention was essential to develop the record on these issues. Op. at 18; *see also* D.C. Dkt. 42, at 9-10. The District Court reasonably concluded that these issues "were likely to surface over the course of discovery, even absent the Students' intervention," and thus were not sufficient to justify intervention. Op. at 18.

More importantly, the Students' goal in developing these issues is legally meritless. Their own stated goal is to seek to demonstrate "how Harvard's history, along with its preference for legacy applicants, for Early Action applicants, and for high SAT scores, disfavors underrepresented racial minorities and justifies its race-conscious admissions decisions." Br. of Students at 32; *see also* Op. at 18 (describing the Students' "wish to argue that all of these policies have a negative impact on minority applicants' chances for admission, and that Harvard should be able to consider race and ethnicity in its admissions decisions in order to offset or 'remedy' the disparate impact of these criteria."). But as the District Court recognized, *id.* at 18 n.6, the Supreme Court has explicitly *rejected* the notion that a race-based admissions process can survive strict scrutiny as a remedy for historical discrimination. *See Fisher v. Univ. of Texas at Austin*, 133 S. Ct. 2411, 2417 (2013) (quoting *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 307-09 (1978) (opinion of Powell, J.)). The Students cannot overcome the presumption

of adequacy of representation by complaining that Harvard will not raise arguments that the Supreme Court has explicitly rejected. And even to the extent there is *any* value in presenting these arguments,[4] the Students retain the ability to do so as *amici*.

In sum, the District Court was unquestionably correct to conclude that Harvard intends to mount a "vigorous" defense of its policies. Op. at 16. Indeed, in public statements before and after this appeal was filed, Harvard's General Counsel[5] and President[6] have reiterated their dedication to defending its current policies, in perfect alignment with the Students' ultimate objective. Furthermore, for decades Harvard has been at the forefront in the use of racial preferences in admissions. JA 45-56. There is no basis to think that Harvard would suddenly and

---

[4] Although the Students and Harvard may disagree about the wisdom of some admissions criteria, the only legal question at issue in this case is whether Harvard's use of *race* is constitutional. On this question, their interests align completely, and Harvard will adequately represent the Students.

[5] *Suit Alleges Race-Based Discrimination in Harvard Admissions Practices*, The Harvard Crimson, November 18, 2014 ("University General Counsel Robert W. Iuliano ... wrote in a statement that [Harvard's] … 'admissions processes remain fully compliant with all legal requirements and are essential to the pedagogical objectives that underlie Harvard's educational mission.'"), *available* at http://www.thecrimson.com/article/2014/11/18/law-suit-admissions-alleged-discrimination.

[6] *Faust Pledges 'Vigorous Defense' Against Admissions Lawsuit*, The Harvard Crimson, September 3, 2015, *available* at http://www.thecrimson.com/article/2015/9/3/faust-pledges-lawsuit-defense/.

voluntarily abandon a practice it deems essential to its institutional mission.[7] Although the Students may wish otherwise, "the adequacy of interest requirement is more than a paper tiger. A party that seeks to intervene as of right must produce some tangible basis to support a claim of purported inadequacy." *Patch*, 136 F.3d at 207. The Students have failed to do so, and the decision below should be affirmed on this basis alone.

## II.    The Students Can Sufficiently Express Their Views by Participating as *Amici*.

Although the District Court correctly held that the Students failed to satisfy the requirements for intervention as a matter of right, it did not prevent the Students from meaningfully participating in the litigation. With the consent of both Harvard and SFFA, the Court granted the Students status as *amici* going forward, permitting them "to submit their own declarations, file substantive briefs on dispositive motions, and participate in oral arguments on those motions." Op. at 22. That level of participation is more than sufficient to address the Students' interests and is further evidence that the District Court's decision carefully and correctly addressed the Students' concerns.

The Students' own arguments indicate that they are chiefly concerned with

---

[7] Even if Harvard were to do so, this would still not warrant intervention now because, as the District Court noted "in the unlikely event that Harvard settled this action or failed to appeal, the Students could renew their motion to intervene at that point in time." Op. at 16. At that point, of course, the standing question would be directly presented. *See* Op. at 22.

issues of law and policy, not the details of factual discovery. Although the Students claim—without elaboration—that their arguments for the explicit consideration of race "require factual development, including expert witness reports," Br. of Students at 35, what they primarily seek to provide are additional *legal* defenses. *See supra* Section I.C. That is precisely the kind of argument that can be shared through an *amicus* brief. This is not a case in which SFFA's constitutional complaint "require[s] an evidentiary determination and where the would-be intervenors had information that could only be presented by their participation as parties." *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) (approving *amicus* status, rather than intervention as adequate to permit the participation of allegedly affected parties).

In sum, participation as *amici* will permit the Students to represent their interests without further delaying or unnecessarily complicating the litigation below. As the District Court observed, "the addition of fourteen additional parties propounding discovery, presenting expert testimony, cross-examining witnesses, and participating in all other aspects of the adversary process would inevitably slow and unduly complicate the progress of this litigation." Op. at 22. This "commonsense view of the overall litigation," *Patch*, 136 F.3d at 204, was again a sound exercise of the District Court's decision. This Court should not disturb it on appeal.

## CONCLUSION

For the reasons stated, this Court should affirm the decision of the District

Court below denying the Students' motion to intervene as a matter of right.


Dated: September 23, 2015

                                         s/ Patrick Strawbridge

Paul M. Sanford                          Patrick Strawbridge
First Circuit # 38591                    First Circuit # 1143599
BURNS & LEVINSON LLP                     CONSOVOY MCCARTHY PARK PLLC
125 Summer Street                        Ten Post Office Square
Boston, MA 02110                         8th Floor South PMB, #706
                                         Boston, MA 02109
                                         T: (617) 227-0548
                                         E: patrick@consovoymccarthy.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), undersigned counsel certifies that this brief:

(i) complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 6,174 words, including footnotes; and

(ii) complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font

<u>/s/ Patrick Strawbridge</u>

Patrick Strawbridge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of September 2015, a true and correct copy of the foregoing was filed with the Clerk of the United States Court of Appeals for the First Circuit via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.


<u>/s/ Patrick Strawbridge</u>

Patrick Strawbridge