No. 15-1823

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

STUDENTS FOR FAIR ADMISSIONS, INC.,

*Plaintiff-Appellee*,

*v.*

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

*Defendant-Appellee*,

SARAH COLE; FADHAL MOORE; ARJINI KUMARI NAWAL; ITZEL VASQUEZ-RODRIGUEZ; KEYANNA WIGGLESWORTH; M.B.; K.C.; Y.D.; G.E.; A.G.; I.G.; R.H.; J.L.; R.S.,

*Movants-Appellants*.

On Appeal from the United States District Court for the District of Massachusetts
in Case No. 1:14-cv-14176, Judge Allison D. Burroughs

## BRIEF FOR DEFENDANT-APPELLEE
## PRESIDENT AND FELLOWS OF HARVARD COLLEGE

FELICIA H. ELLSWORTH
ERIC F. FLETCHER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

September 23, 2015

SETH P. WAXMAN
PAUL R. Q. WOLFSON
DANIEL WINIK
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6000

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee President and Fellows of Harvard College certifies that it is a non-profit corporation with no parent corporation and that no public company owns any interest in it.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ................................................................................... 1

STATEMENT OF THE CASE ................................................................. 3

SUMMARY OF ARGUMENT .................................................................. 5

ARGUMENT ......................................................................................... 6

THE DISTRICT COURT PROPERLY DENIED INTERVENTION BECAUSE
    HARVARD WILL ADEQUATELY REPRESENT THE STUDENTS'
    INTERESTS IN THIS LITIGATION ..................................................... 6

    A.    Because Harvard Shares The Students' Objective, It Is
           Presumed To Represent Their Interests .................................. 8

    B.    The Students Cannot Overcome The Presumption Of
           Adequacy ..................................................................................... 9

           1.   Harvard will litigate this case vigorously ................... 10

           2.   Harvard need not present precisely the same
               arguments as the Students in order to represent
               their interests adequately ............................................... 12

    C.    The Sixth Circuit's Decision Allowing Intervention In
           *Grutter* Does Not Require A Different Result ..................... 18

           1.   *Grutter* does not control this case ............................... 19

           2.   Other courts have denied intervention in similar
               circumstances ................................................................... 22

CONCLUSION ..................................................................................... 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003), *as amended* (May 13, 2003) ......................10, 20

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
   440 F.3d 541 (1st Cir. 2006) ............................................................. 9-10, 14, 20

*Blake v. Pallan*,
   554 F.2d 947 (9th Cir. 1977) .................................................................14

*Bradley v. Milliken*,
   828 F.2d 1186 (6th Cir. 1987) .............................................................12

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001) ........................................................10, 20

*Conservation Law Foundation of New England, Inc. v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992) .................................................................15

*Daggett v. Commission on Governmental Ethics & Election Practices*,
   172 F.3d 104 (1st Cir. 1999) .....................................7, 8, 12, 13, 14, 15

*Ewers v. Heron*,
   419 F.3d 1 (1st Cir. 2005) ..............................................................7, 20

*Fisher v. University of Texas at Austin*,
   133 S. Ct. 2411 (2013) .................................................................16, 21

*Grutter v. Bollinger*,
   188 F.3d 394 (6th Cir. 1999) ....................................6, 18, 19, 20, 21

*Grutter v. Bollinger*,
   539 U.S. 306 (2003) .........................................................................16

*Hopwood v. State of Texas*,
   21 F.3d 603 (5th Cir. 1994) ..................................................19, 22, 23

*In re Efron*,
   746 F.3d 30 (1st Cir. 2014) .................................................................7

*International Paper Co. v. Inhabitants of Town of Jay, Maine,*
  887 F.2d 338 (1st Cir. 1989) ................................................................7

*Linton by Arnold v. Commissioner of Health and Environment, State
  of Tennessee,*
  973 F.2d 1311 (6th Cir. 1992) ...........................................................20

*Little Rock School District v. North Little Rock School District,*
  378 F.3d 774 (8th Cir. 2004) .............................................................12

*Massachusetts Food Association v. Massachusetts Alcoholic
  Beverages Control Commission,*
  197 F.3d 560 (1st Cir. 1999) ...............................................................9

*Moosehead Sanitary District v. S. G. Phillips Corp.,*
  610 F.2d 49 (1st Cir. 1979) ...........................................................9, 21

*Perry v. Proposition 8 Official Proponents,*
  587 F.3d 947 (9th Cir. 2009) ......................................................12, 14

*Public Service Co. of New Hampshire v. Patch,*
  136 F.3d 197 (1st Cir. 1998) ...................................................9, 11, 21

*R & G Mortgage Corp. v. Federal Home Loan Mortgage Corp.,*
  584 F.3d 1 (1st Cir. 2009) ....................................................................6

*Regents of the University of California v. Bakke,*
  438 U.S. 265 (1978) ..............................................................2, 16, 17

*Southwest Center for Biological Diversity v. Berg,*
  268 F.3d 810 (9th Cir. 2001) .............................................................14

*State v. Director, U.S. Fish & Wildlife Service,*
  262 F.3d 13 (1st Cir. 2001) ..................................................................7

*Stuart v. Huff,*
  706 F.3d 345 (4th Cir. 2013) .............................................................20

*Trbovich v. United Mine Workers of America,*
  404 U.S. 528 (1972) ......................................................................9, 20

*United Nuclear Corp. v. Cannon,*
  696 F.2d 141 (1st Cir. 1982) ........................................................13, 14

*United States v. City of Chicago*,
796 F.2d 205 (7th Cir. 1986) ............................................................................12

*United States v. State of Louisiana*,
90 F.R.D. 365 (E.D. La. 1981) ........................................................................18

## RULES

Fed. R. Civ. P. 24(a)(2) ..................................................................................6

## DOCKETED CASES

*Fisher v. University of Texas at Austin*, No. 08-cv-263 (W.D. Tex.)................23, 24

## OTHER AUTHORITIES

Faust, Drew, President of Harvard University, 2015 Remarks at
Morning Prayers (Sept. 2, 2015), *available at* http://www.harvard.
edu/president/speech/2015/2015-remarks-morning-prayers ........................11, 14

Brief of Columbia University, Harvard University, Stanford
University, and the University of Pennsylvania as Amici Curiae,
*Regents of the University of California v. Bakke*, 438 U.S. 265
(1978) (No. 76-811), 1977 WL 188007 (June 7, 1977) ......................................2

# INTRODUCTION

Appellants ("the Students") are fourteen current and former Harvard students and potential future applicants who sought to intervene in this litigation to defend Harvard's right to consider an applicant's race or ethnicity in its freshman admissions process. The Students harbor strong and sincere commitments to the value of diversity on campus and the importance of an admissions process that seeks to achieve that diversity by taking into account the full breadth of an applicant's background and personal characteristics. The Students are not entitled to intervene, however, because Harvard shares their commitments and is advocating vigorously to achieve this very objective.

Indeed, Harvard has for decades worked to implement these commitments in practice and to defend them in court. It has done so because student body diversity, including racial diversity, is essential to its pedagogical objectives and its institutional mission. Diversity enhances the education of students of all races and backgrounds, and it helps prepare students to assume leadership roles in our increasingly pluralistic society. Harvard has long committed extraordinary resources to a labor-intensive admissions process that aims to consider every dimension of the perspective each individual applicant might bring to campus, including the applicant's race or ethnicity. Its commitment to diversity was already well established nearly forty years ago, when Justice Powell appended the

- 1 -

"Harvard College Admissions Program" to his influential opinion in *Regents of the University of California v. Bakke*, 438 U.S. 265, 322 (1978).  Harvard's amicus brief in *Bakke* explained that "diversity makes the university a better learning environment" and that to achieve diversity, it is "essential" that race be one of the numerous characteristics that the university considers in choosing a student body. *See* Br. of Columbia University, Harvard University, Stanford University, and the University of Pennsylvania as Amici Curiae, *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978) (No. 76-811), 1977 WL 188007, at *12, *16 (June 7, 1977).

Harvard's commitment to student body diversity is beyond question.  As it has for the past forty years, Harvard will continue zealously to defend its admissions practices and the importance of diversity on its campus.  That commitment on Harvard's part means that Harvard will more than adequately represent any legally protectable interests that the Students might have in this litigation.  As the district court ruled, therefore, the Students are not entitled to intervene as a matter of right.

Recognizing the value of the Students' perspective, the district court granted them the ability to participate in briefing and oral argument as amici curiae, as well as to submit declarations attesting to their experiences.  This approach will enable the Students to present any distinct perspective they might have in this litigation

- 2 -

while still allowing the litigation to proceed expeditiously.  This Court should affirm.

## STATEMENT OF THE CASE

Plaintiff Students for Fair Admissions, Inc. ("SFFA") filed this action on November 17, 2014, alleging that Defendant President and Fellows of Harvard College ("Harvard") violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*, by considering the race or ethnicity of its applicants in determining whether to admit them to its freshman class.  Joint Appendix ("JA") 18-137.  On February 18, 2015, Harvard filed an Answer to the Complaint, in which it defended its holistic admissions process as fully complaint with the law. JA 143-207.

On April 29, 2015, a day before the district court held the initial status conference in this case, the Students—nine high school students who say they plan to apply for admission to Harvard, four current Harvard College students, and one recent graduate of Harvard College (who was enrolled at the time)—moved to intervene.  JA 208-209.  The Students argued that a judgment in SFFA's favor would deny them the benefits—or, in the case of the future applicants, the possible future benefits—of diversity in Harvard's undergraduate student body.  District Court Docket ("Dkt.") 31 at 11.  They further argued that Harvard could not or would not adequately represent their interests.  Harvard responded that it would

vigorously defend its admissions practices and would represent any cognizable interest the Students might have in this litigation. Dkt. 38 at 3-7. SFFA additionally argued that the Students' motion was untimely and that they have no protectable interest at stake in this case. Dkt. 37 at 3-9.

On June 15, 2015, the district court issued a memorandum and order denying the motion to intervene. Addendum to Appellants' Br. ("Dist. Ct. Op.") 1-23. The court held that the Students' motion was timely (*id.* at 9-10) but that the Students lack any protectable interest sufficient to entitle them to intervene (*id.* at 10-15). Even if the Students had a legally sufficient interest, the court held, Harvard would adequately represent it: "Harvard shares" the Students' "ultimate goal in this litigation … and intends to mount a 'vigorous defense' of its admissions policies," and the Students' "speculative" arguments to the contrary cannot overcome the resulting presumption of adequate representation. *Id.* at 16. The district court did, however, grant the Students the right "to submit their own declarations, file substantive briefs on dispositive motions, and participate in oral arguments on those motions." *Id.* at 22.

The Students timely filed this appeal on July 13, 2015 (JA 331-332) and, several weeks later, moved to stay proceedings in the district court pending the appeal (Dkt. 90). The district court has not yet ruled on that motion.

## SUMMARY OF ARGUMENT

As this Court has repeatedly recognized, the decision whether to allow intervention—including intervention as of right—is committed to the discretion of the district court, which is closely familiar with the litigation and understands the interests at stake and the parties' commitments to those interests. This Court accordingly reviews the denial of a motion to intervene only for abuse of discretion. The district court did not err, and certainly did not abuse its discretion, in denying the Students' motion to intervene.

Even to the extent the Students can state a legally cognizable interest in this litigation, they are not entitled to intervene as a matter of right, because Harvard will more than adequately represent their interests. A party is presumed to represent the interests of a proposed intervenor where the party and the proposed intervenor share the same goal in the litigation. That is undeniably the case here: Both Harvard and the Students seek a determination that Harvard's admissions practices comply with Title VI. The Students point to a handful of arguments in support of that outcome that they say they would present but Harvard would not. But as the district court held, "none" of the Students' arguments as to Harvard's supposed inadequacy "is persuasive, and all are speculative." Dist. Ct. Op. 16. The Students have therefore not met their burden of overcoming the presumption that Harvard will adequately represent them.

The Students rely heavily on the Sixth Circuit's decision permitting intervention in a previous challenge to the consideration of race in university admissions. *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999). But that decision is inconsistent with this Court's precedent on intervention, and its reasoning has been undermined by intervening Supreme Court precedent. The district court properly applied *this* Court's precedents in denying intervention, and this Court should affirm, just as other courts (including the Fifth Circuit) have declined to allow intervention in analogous circumstances.

## ARGUMENT

### THE DISTRICT COURT PROPERLY DENIED INTERVENTION BECAUSE HARVARD WILL ADEQUATELY REPRESENT THE STUDENTS' INTERESTS IN THIS LITIGATION

To intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure, "a putative intervenor must establish (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party." *R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). The district court ruled that Harvard will adequately represent any interest the Students might have in this litigation. That finding is correct and sufficient to sustain the district court's decision to deny the Students' motion to intervene.

A district court's decision to deny intervention as of right is reviewable only for abuse of discretion. *See In re Efron*, 746 F.3d 30, 35 (1st Cir. 2014); *International Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 344 (1st Cir. 1989); *see also State v. Director, U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 18 n.3 (1st Cir. 2001) (noting that this Court reviews denials of intervention more deferentially than some other circuits). As this Court has explained, "[d]espite its nomenclature, intervention 'as of right' usually turns on judgment calls and fact assessments that a reviewing court is unlikely to disturb except for clear mistakes." *Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999). The Court will therefore "reverse a district court's denial of intervention" only if the district court "fail[ed] to apply the general standard provided by the text of Rule 24(a)(2)"—which the Students do not argue—or "reache[d] a decision that so fails to comport with that standard as to indicate an abuse of discretion." *International Paper Co.*, 887 F.2d at 344; *see also Ewers v. Heron*, 419 F.3d 1, 2-3 (1st Cir. 2005).

As explained below, the district court did not abuse its discretion in applying the standards of Rule 24(a)(2). There is therefore no reason for this Court to disturb the district court's denial of the Students' motion to intervene.

### A.    Because Harvard Shares The Students' Objective, It Is Presumed To Represent Their Interests

"[A]dequate representation is *presumed* where the goals of the applicants [for intervention] are the same as those of the plaintiff or defendant."  *Daggett*, 172 F.3d at 111 (emphasis added).  That is manifestly the case here.

Harvard and the Students seek exactly the same outcome in this litigation: the vindication of Harvard's consideration of race or ethnicity, among many other characteristics of an applicant, in admitting the freshman class.  The Students are seeking to intervene "*in defense of*" Harvard's admissions practices.  JA 208 (emphasis added).  As the Students' brief explains (at 9), their objective—identical to Harvard's—is "to defend Harvard's right to consider race and to defeat SFFA's request for declaratory judgment."

Although the Students may not in fact support all of Harvard's admissions practices, that criticism is irrelevant to whether their "goals" in this litigation "are the same as" Harvard's.  *See Daggett*, 172 F.3d at 111.  The Students' proposed pleading, like Harvard's Answer, asks the Court to affirm the legality of Harvard's *current* admissions practices.  *Compare* JA 204 (Harvard's Answer stating that SFFA "is not entitled to any form of relief") *with* JA 326 (Students' proposed Answer, stating that SFFA "is not entitled to any form of relief").  Even if the Students might wish for Harvard to alter certain practices with which they disagree, that is not a basis to justify their intervention to defend the legality of

- 8 -

Harvard's current admissions process.  Harvard will therefore adequately represent any legally protectable interest the Students might have.

### B.    The Students Cannot Overcome The Presumption Of Adequacy

As the Students acknowledge (at 29), "the burden of overcoming the presumption" of adequacy "is upon the would-be intervenor." *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999).  That burden is significant.  Even absent a presumption of adequacy, "[a] party that seeks to intervene as of right must produce some *tangible basis* to support a claim of purported inadequacy." *Public Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998) (emphasis added).  That requires "more than speculation." *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979).  Indeed, where a presumption of adequacy applies, as it does in this case, rebutting that presumption "ordinarily" (though not invariably) requires a showing of "adversity of interest, collusion, or nonfeasance." *Id.*

The Students rely (at 30) on the Supreme Court's description of the burden to show inadequacy as "minimal," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).  As this Court (and other courts) have explained, however, the *Trbovich* characterization does not apply where, as here, "the intervenor's ultimate objective matches that of the named party." *B. Fernandez &*

*Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545-546 (1st Cir. 2006); *see also Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003) ("If the applicant's interest is identical to that of one of the present parties, a *compelling showing* should be required to demonstrate inadequate representation." (emphasis added)); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) ("While the burden to demonstrate inadequacy of representation is generally speaking 'minimal,' we have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." (citations omitted)).

The Students have made no showing of inadequacy, let alone one sufficient to overcome the presumption of adequacy. They speculate (at 33) that Harvard "might modify or abandon its race-conscious policies in order to settle" this case, and they principally argue that Harvard would not adequately represent their interests because they "would advance a number of arguments that Harvard would likely resist," even though Harvard shares their goal of upholding its current admissions practices. Br. 32. These arguments fail, however, for the reasons identified by the district court.

### 1. Harvard will litigate this case vigorously

As a threshold matter, the Students' suggestion that Harvard might settle this case is fanciful. For decades, Harvard has publicly committed itself to the value of

student diversity on its campus and has recognized the need for a holistic admissions process—considering applicants' race or ethnicity alongside all their other attributes—to achieve diversity. It defies credulity to suggest that Harvard might suddenly abandon the practice of race-conscious admissions in order to put this litigation to rest.

The likelihood that Harvard will mount a vigorous defense is particularly clear from the fact that Harvard already has begun doing so. *See Patch*, 136 F.3d at 208 (finding "the likelihood that" defendants would "capitulate cravenly to the plaintiffs' onslaught" to be "extremely remote," where the defendants had "launched a full-scale, uncompromising defense of their" conduct, and holding that "[t]his circumstance, in itself, weighs heavily in favor of denying mandatory intervention"); Drew Faust, President of Harvard University, 2015 Remarks at Morning Prayers (Sept. 2, 2015) (pledging a "vigorous defense" to this action) (hereinafter "Faust Remarks"), *available at* http://www.harvard.edu/president/ speech/2015/2015-remarks-morning-prayers. The district court rightly found the prospect of Harvard's surrender to be "'extremely remote'" (Dist. Ct. Op. 16), and the Students have given this Court no basis to disturb that finding.[1]

---

[1] As the district court also noted, in the vanishingly "unlikely event" that Harvard were to "settle[] this action or fail[] to appeal" an adverse judgment, the Students could at that time "renew their motion to intervene." Dist. Ct. Op. 16.

### 2. Harvard need not present precisely the same arguments as the Students in order to represent their interests adequately

The crux of the Students' inadequacy argument is their claim (at 32) that they "would advance a number of arguments that Harvard would likely resist." This reasoning falls short for several reasons.

First, and most fundamentally, a party need not present every one of a proposed intervenor's arguments in order to represent its interests adequately. Although a party's "refusal to present obvious arguments" could hypothetically be "so extreme as to justify a finding" of inadequacy, this Court and many others have held that "the use of different arguments as a matter of litigation judgment" does not, on its own, constitute inadequate representation. *Daggett*, 172 F.3d at 112; *accord Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009); *Little Rock Sch. Dist. v. North Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987); *United States v. City of Chicago*, 796 F.2d 205, 211 (7th Cir. 1986).

*Daggett*, on which the Students rely (at 29-30) for the proposition that Harvard's supposedly "conflicting interests" render it an inadequate representative, actually proves the contrary. The proposed intervenors in that case, who sought to defend the constitutionality of a campaign-finance statute, argued that the Attorney General was an inadequate representative both because his interests were "'broader' … at some abstract level" and because—having been "appointed by the

state legislature"—he might "hesitate to justify the statute by pointing to alleged corruption associated with the pre-reform … election system." 172 F.3d at 112. This Court rejected those arguments, reasoning that the Attorney General was "prepared to defend the constitutionality of the [statute] in full," that there was "no indication that he [was] proposing to compromise or would decline to appeal if victory were only partial," and that "it would take more than speculation to show that he [was] likely to soft-pedal arguments so clearly helpful to his cause." *Id.* That conclusion as much as dictates the outcome here: Even though the Students claim (much like the intervenors in *Daggett*) that Harvard serves a broad array of constituencies and that it might hesitate to bring certain arguments to the fore, what matters is that Harvard has mounted and will continue to mount a vigorous defense of its admissions process, even if its arguments do not perfectly match those the Students would tender.

The other cases cited by the Students are equally unavailing. The Students rely (at 31) on *B. Fernandez* and *United Nuclear Corp. v. Cannon*, 696 F.2d 141 (1st Cir. 1982), for the proposition that a party must make *all* of a proposed intervenor's arguments in order to represent the intervenor's interests adequately. But neither case applies the adequacy analysis in a manner that favors the Students. In *Cannon*, the Court held that a party adequately represented the interests of a proposed intervenor, even though the intervenor had "a more specialized interest,"

- 13 -

because the party and the intervenor had "the same ultimate goal." 696 F.2d at
144. The same is true here. As for *B. Fernandez*, although the Students invoke it
for the proposition that a proposed intervenor can "rebut the presumption of
adequacy by explaining" how its interests and the party's interests "are
'sufficiently different in kind or degree'" (Br. 30 (quoting 440 F.3d at 546)), the
degree of difference identified as warranting intervention in *B. Fernandez* far
surpasses anything the Students have shown. In *B. Fernandez*, the Court found a
party to be an inadequate representative only because of "[t]he potential for [the]
litigation to have a *greater* adverse impact on" the proposed intervenor than on the
party (440 F.3d at 547 (emphasis added))—a circumstance plainly not present here,
given the depth of Harvard's institutional commitment to the pursuit of diversity
through race-conscious admissions. *See* Faust Remarks, *supra* (characterizing this
litigation as a threat to the university's "most fundamental values").[2]

---

[2] Both *B. Fernandez* and *Cannon* merely recite language from Ninth Circuit
opinions, but neither adopts that language as the law of this Circuit, and, as noted
above, the analyses in both cases favor Harvard's position here. *See B. Fernandez*,
440 F.3d at 547 (citing *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d
810, 824 (9th Cir. 2001)); *Cannon*, 696 F.2d at 144 (quoting *Blake v. Pallan*, 554
F.2d 947, 954-955 (9th Cir. 1977)). To the extent either opinion might be read to
suggest that any divergence in arguments between an existing party and a proposed
intervenor could establish inadequacy of representation, that reading would
conflict with the clear law of this Circuit (*Daggett*, 172 F.3d at 112) and, for that
matter, with more recent Ninth Circuit case law (*Perry*, 587 F.3d at 954).

Finally, the Students cite *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992), for the proposition that "a defendant with a broad base of constituents and a commitment to them all could not adequately represent the narrow interests of one group of those constituents." Br. 31-32. But *Mosbacher* is clearly inapposite here. In *Mosbacher*, the defendant agency was in the process of settling "a suit filed by public interest organizations seeking more extensive regulation by" the agency, and the proposed intervenors—regulated parties—wanted *less* regulation. 966 F.2d at 40; *see id.* (explaining that the plaintiff and the agency "agreed upon the terms of a consent decree" while the "petitions for intervention" were pending). The interest of the intervenors was thus directly threatened by the action the defendant was proposing to take in settling the case. No such circumstance is present here, for Harvard is strongly defending its admissions practices.

In any event, even if the Students were correct that a divergence in arguments could make Harvard an inadequate representative—a proposition thoroughly refuted by the case law—they have not shown how any of the arguments they wish to make would be relevant to the litigation of this case at all, let alone "obvious[ly]" so (*Daggett*, 172 F.3d at 112). The Students propose to argue that "Harvard's history, along with its preference for legacy applicants, for Early Action applicants, and for high SAT scores," supposedly "disfavors

- 15 -

underrepresented racial minorities and justifies its race-conscious admissions decisions." Br. 32. But "Harvard's history" has nothing to do with the legality of its current admissions practices, which are lawful on the basis of the present-day importance of student-body diversity. In focusing on the need for diversity *today*, Harvard adheres to the Supreme Court's statements that universities may consider race in the admissions process to further their "interest in the educational benefits that flow from a diverse student body," but not to "redress[] past discrimination." *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411, 2417 (2013) (citing *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 307-309 (1978) (opinion of Powell, J.)); *see also id.* at 2418 (noting the Court's "endorse[ment]" of "the precepts stated by Justice Powell").

Moreover, any rationales the Students might offer for Harvard's consideration of race in the admissions process, beyond those put forward by Harvard, are legally irrelevant. As the Supreme Court has held on numerous occasions, a university's consideration of race or ethnicity (among many other factors) in pursuit of admitting a diverse student body is integrally tied to the *university's* conception of its academic mission and its pedagogical judgment about the best conditions for teaching and learning on its campus. *See, e.g.*, *Fisher*, 133 S. Ct. at 2419 (stressing that the pursuit of student-body diversity is an "academic judgment"); *Grutter v. Bollinger*, 539 U.S. 306, 328 (2003) (deferring

to the university's "educational judgment that … diversity is essential to its educational mission"); *Bakke*, 438 U.S. at 312 (opinion of Powell, J.). Only Harvard, therefore, can advance the legally relevant justifications for the race-conscious pursuit of diversity. If the Students think Harvard should be considering race for different or additional reasons, they are free to voice that view as members of the University community, but it is Harvard's academically rooted decision about how and why to consider race in the admissions process—not the Students' individual views—that must ultimately matter in this litigation.

Finally, even if (as the Students suggest) evidence about certain admissions practices that allegedly detract from diversity might be relevant to this litigation, the district court still was justified in denying intervention, for the court correctly found that SFFA intends to develop the relevant evidence. *See* Dist. Ct. Op. 18; *see also* JA 98-99, 102-103 (SFFA's complaint, alleging that Harvard's early admissions program and its consideration of whether an applicant's parents attended Harvard or Radcliffe operate to the detriment of minority applicants). The Students argue (at 34) that SFFA will rely on this evidence for a different purpose: Whereas SFFA plans to invoke the supposedly harmful effects of certain practices as a reason Harvard *may not* consider race in admissions, the Students wish to use the same evidence as a reason Harvard *may* consider race in admissions. But that is beside the point; what matters, as the district court

recognized, is that SFFA intends to develop evidence on those issues. The Students—to whom the district court granted broad rights to participate as amici curiae (Dist. Ct. Op. 22)—will then be able to present whatever arguments they wish to make on the basis of this record evidence. The Court will then have the benefit of both the evidence in the record and the Student's arguments based on that evidence. That is sufficient to ensure that the Students' distinct perspective is fully heard.[3]

### C. The Sixth Circuit's Decision Allowing Intervention In *Grutter* Does Not Require A Different Result

The Students invoke the Sixth Circuit's divided decision to permit intervention by students and prospective students in another challenge to the consideration of race in university admissions as providing support for their right to intervene in this case. Br. 29-31; *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999). *Grutter* is not controlling here, however, both because of differences in circuit law on intervention and because of developments in constitutional jurisprudence over the past sixteen years. Furthermore, *Grutter* is not the only

---

[3]     The Students also are incorrect to suggest it is novel for a court to hold that the interests of a potential intervenor are represented in some respects by one party and in other respects by a different party. *See United States v. State of La.*, 90 F.R.D. 365, 367 (E.D. La. 1981) (holding that the interests of a proposed intervenor were adequately represented "[i]n light of both the assurance of the [plaintiff] United States that it [was] cognizant of and intend[ed] to be satisfied with respect to the issues raised in the petition for intervention and the fact that at least one party defendant ha[d] previously raised" similar issues).

word on the subject; the Students are incorrect to assert (at 19) that "[n]o other circuit has considered whether underrepresented minority students have a right to intervene to defend the use of race in university admissions." The Fifth Circuit in *Hopwood v. State of Texas*, 21 F.3d 603 (5th Cir. 1994), directly considered the question and declined to allow intervention in this circumstance, as did the district court in *Fisher v. University of Texas at Austin*, and *Grutter* is less persuasive than either of those opinions.

### 1. *Grutter* does not control this case

In *Grutter*, a divided panel of the Sixth Circuit found "a *potential* for inadequate representation," on the theory that the University of Michigan was "unlikely to present evidence of past discrimination by the University itself or of the disparate impact of some current admissions criteria, and that these may be important and relevant factors in determining the legality of a race-conscious admissions policy." 188 F.3d at 400-401.[4] That decision provides no basis to overturn the district court's denial of intervention in this case, for several reasons.

---

[4] The dissenting judge, by contrast, found "nothing in the record … to suggest that the University of Michigan [would] not zealously defend its voluntarily-adopted admissions policies, [would] not present all relevant evidence in support of its admissions policies, [would] not resist unspecified pressures that could temper its ability to defend its admissions policies, or [would] not raise all defenses or make all arguments that the prospective intervenors [could] raise or make." 188 F.3d at 401 (Stafford, J., dissenting).

*First*, the Sixth Circuit reviews the denial of intervention under a standard far less deferential than this Court's. *Compare Grutter*, 188 F.3d at 398 ("A district court's denial of intervention as of right is reviewed *de novo*, except for the timeliness element[.]") *with Ewers*, 419 F.3d at 2-3 (unless a district court "ignored the … pertinent legal criteria," this Court will reverse the denial of intervention only if the district court "committed clear error in the facts it found or was entirely unreasonable in its judgment about applying the … criteria to the facts"). Under the law of this Circuit, a district court's decision denying intervention carries greater weight on appeal.

*Second*, *Grutter* relied on the proposition that "the proposed intervenors' burden in showing inadequacy [was] 'minimal.'" 188 F.3d at 400 (citing *Trbovich*, 404 U.S. at 538 n.10; *Linton by Arnold v. Commissioner of Health & Env't, State of Tenn.*, 973 F.2d 1311, 1319 (6th Cir. 1992)). By contrast, this Court—like a number of others[5]—has held that *Trbovich*'s "minimal" standard does not apply where, as here, "the intervenor's ultimate objective matches that of the named party" and the named party is thus presumed to represent the intervenor's interests. *B. Fernandez*, 440 F.3d at 545-546; *see supra* pp. 9-10. More generally, this Court

---

[5]     *See, e.g.*, *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (distinguishing *Trbovich* as a case where "the proposed intervenors did not even share the same ultimate objective as an existing party," such that it was "perfectly sensible to require a more modest showing of inadequacy before granting intervention of right"); *Arakaki*, 324 F.3d at 1086; *Butler, Fitzgerald & Potter*, 250 F.3d at 179.

requires all proposed intervenors to "produce some tangible basis to support a claim of purported inadequacy," *Patch*, 136 F.3d at 207, which requires "more than speculation," *Moosehead*, 610 F.2d at 54. The Sixth Circuit's approach to intervention is significantly more lenient, as demonstrated by its decision in *Grutter* to credit the proposed intervenors' speculative "concerns" about arguments that "the University [might] not present." 188 F.3d at 401.

*Third*, since the Sixth Circuit's decision, the Supreme Court has made clear that many of the arguments proffered by the proposed intervenors in both this case and *Grutter* are irrelevant to whether a university may take race into account in its admissions process. The Sixth Circuit relied on the premise that "evidence of past discrimination by the University itself or of the disparate impact of some current admissions criteria"—evidence the University was "unlikely to present"—could be "important and relevant … in determining the legality of a race-conscious admissions policy." *Grutter*, 188 F.3d at 400-401. But as discussed above, the interest the Supreme Court has recognized as sufficiently compelling to permit the consideration of race in admissions is the pursuit of diversity—not, as the Sixth Circuit suggested, the remediation of "past discrimination" or "the disparate impact of" other "admissions criteria." *See Fisher*, 133 S. Ct. at 2417; *supra* p. 16. Moreover, the Supreme Court has underscored that the permissibility of considering race in admissions turns on the *university's* academically rooted

judgment about the need for diversity in fashioning a vibrant learning environment. *See supra* p. 16. If the Sixth Circuit were considering *Grutter* today, even under its less rigorous intervention standard, it might well conclude that the University of Michigan would present all the *relevant* arguments advanced by the proposed intervenors. The same is true here.

### 2. Other courts have denied intervention in similar circumstances

In *Hopwood*, the Fifth Circuit held that two organizations of African-American students were not entitled to intervene in litigation challenging Texas's consideration of race in admissions to its public universities. The grounds of inadequacy asserted by the proposed intervenors were remarkably similar to those proffered in this case:

> The [organizations] contend that the State cannot adequately represent their interest because 1) the long history of discrimination against African-Americans by the State weighs against the State's willingness to vigorously represent the interests of the African-American students; 2) the State's interests are broader in that they must balance the interests of the African-American students against other students as well as balancing educational goals, fiscal responsibility, administrative concerns and public opinion; while the petitioners' only interest is in preserving an admissions policy that remedies the past effects of discrimination and fosters an atmosphere that is receptive to African-American students, and 3) the petitioners are in a better position to present evidence of recent discrimination.

21 F.3d at 605. But the Court held that the proposed intervenors had not "met their burden of demonstrating that they ha[d] a separate interest that the State [would]

not adequately represent," reasoning that the State would "strongly defend its affirmative action program" and that the proposed intervenors had shown no "separate defense … that the State ha[d] failed to assert." *Id.* at 606.

More recently, the district court in *Fisher v. University of Texas at Austin*— another challenge to the University of Texas's consideration of race in admissions—denied two motions to intervene by students asserting grounds of inadequacy similar to those raised here. One group of proposed intervenors argued that the defendants might "be hesitant to advance any relevant arguments advocating affirmative action as a remedial step that would expose their own history of past discrimination or to address ongoing problems with race relations on the campus." Mot. to Intervene of Sarah Cortez, et al. at 19, *Fisher v. Univ. of Texas at Austin*, No. 08-cv-263 (W.D. Tex. July 25, 2008), ECF No. 72. The other suggested that the defendants might "be reluctant, if not unwilling," to address "the disparate impact on African-American applicants of other admissions criteria used by" the University and "existing and past racial tensions and discrimination experienced by African-American students at" the University. Mot. to Intervene of Chad Stanton, et al. at 18, *Fisher v. Univ. of Texas at Austin*, No. 08-cv-263 (W.D. Tex. July 23, 2008), ECF No. 63. As in *Hopwood*, the district court denied the motions, determining that the defendants "adequately represented" the interests of the proposed intervenors. Order at 2, *Fisher v. Univ. of Texas at Austin*, No. 08-

cv-263 (W.D. Tex. Aug. 11, 2008), ECF No. 83.  Neither group of proposed

intervenors in *Fisher* appealed.

Thus, *Grutter* is only one of several cases that have addressed the propriety

of intervention on similar facts.  The decisions to deny intervention in *Hopwood*

and *Fisher* are more persuasive than the decision to allow intervention in *Grutter*,

are more consistent with this Court's precedents on intervention than is *Grutter*,

and therefore provide more reliable guideposts to the proper result in this case.

## CONCLUSION

The district court's order denying intervention should be affirmed.

Respectfully submitted.

<br>

FELICIA H. ELLSWORTH
ERIC F. FLETCHER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

/s/ Seth P. Waxman
SETH P. WAXMAN
PAUL R.Q. WOLFSON
DANIEL WINIK
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC  20006
(202) 663-6000

*Attorneys for Defendant-Appellee*
*President and Fellows of Harvard*
*College*

September 23, 2015

- 24 -

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 5,701 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Seth P. Waxman
SETH P. WAXMAN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC  20006
(202) 663-6000

September 23, 2015

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Seth P. Waxman
SETH P. WAXMAN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC  20006
(202) 663-6000