No. 15-1823

═══════════════════════════════

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

STUDENTS FOR FAIR ADMISSIONS, INC.,
Plaintiff – Appellee,
v.
PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD
CORPORATION),
Defendant – Appellee;

SARAH COLE, FADHAL MOORE, ARJINI KUMARI NAWAL, ITZEL
VASQUEZ-RODRIGUEZ, KEYANNA WIGGLESWORTH, M.B., K.C., Y.D.,
G.E., A.G., I.G., R.H., J.L., R.S.,
Movants – Appellants.
_____

On Appeal from the United States District Court
for the District of Massachusetts
_____

**REPLY BRIEF FOR MOVANTS – APPELLANTS**
_____

Lawrence E. Culleen
Nancy L. Perkins
ARNOLD & PORTER, LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel: (202) 942-5000

Jon M. Greenbaum
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005
Tel: (202) 662-8600

Steven L. Mayer
ARNOLD & PORTER, LLP
10th Floor, Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 471-3100

Iván Espinoza-Madrigal
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND ECONOMIC
JUSTICE
294 Washington Street, Suite 443
Boston, MA 02108
Tel: (617) 988-0624

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................... ii

Introduction ...............................................................................................1

Argument....................................................................................................3

I.   THE STUDENTS' INTERESTS ARE SUFFICIENT FOR
     INTERVENTION AS OF RIGHT....................................................3

   A.   No "Legally Protectable" Interest Is Required for Intervention. ...................4

   B.   The Applicant Students' Interest in This Litigation Is Sufficiently
        Direct to Warrant Intervention Under *Cotter*.................................7

II.  THE STUDENTS MET THEIR BURDEN TO SHOW
     INADEQUATE REPRESENTATION.............................................9

   A.   The Students Can Satisfy Their Burden by Showing a Conflict
        of Interest, Substantiated by Specific Arguments that Harvard Is
        Unlikely to Raise. ...........................................................11

   B.   None of the Cases Appellees Cite Raise the Modest Bar for
        Showing Inadequate Representation. ........................................13

   C.   The Students' Unique Arguments Could Be Dispositive Under
        *Fisher*'s Narrow-Tailoring Requirement.....................................16

   D.   SFFA's Presentation of Evidence Does Not Cure the Inadequacy
        of Representation. ...........................................................20

Conclusion ...............................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
    440 F.3d 541 (1st Cir. 2006) ...................................................................*passim*

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992) ..........................................................................1, 6, 7

*Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*,
    219 F.3d 31 (1st Cir. 2000) .......................................................................*passim*

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
    172 F.3d 104 (1st Cir. 1999) ....................................................................*passim*

*Fisher v. Univ. of Texas at Austin*,
    133 S. Ct. 2411 (2013) ...........................................................................16, 17, 18

*Flynn v. Hubbard*,
    782 F.2d 1084 (1st Cir. 1986) .......................................................................1, 5, 6

*Grutter v. Bollinger*,
    539 U.S. 306 (2003) .............................................................................................17

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) ...................................................................4, 16, 19

*Hopwood v. State of Texas*,
    21 F.3d 603 (5th Cir. 1994) ..........................................................................16, 17

*Massachusetts Food Association v. Massachusetts Alcoholic
    Beverages Control Commission*,
    197 F.3d 560 (1st Cir. 1999) .........................................................................14, 15

*Moosehead Sanitary District v. S.G. Phillips Corp.*,
    610 F.2d 49 (1st Cir. 1979) ...............................................................................12

*Public Service Co. of New Hampshire v. Patch*,
    136 F.3d 197 (1st Cir. 1998) .........................................................................12, 14

*Schuette v. BAMN*,
    134 S. Ct. 1623 (2014)....................................................................2, 4

*Travelers Indemnity Co. v. Dingwell*,
    884 F.2d 629 (1st. Cir. 1989)..........................................................5, 6

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1971).....................................................................11, 12

*United States v. Louisiana*,
    90 F.R.D. 365 (E.D. La. 1981) .........................................................20

# INTRODUCTION

Appellees' Briefs hide behind the standard of review, arguing that the District Court's order denying intervention as of right is reviewable only for abuse of discretion. Although that is the proper standard when the trial court applies the correct law, this appeal turns on whether the District Court erroneously raised the bar for Rule 24(a) intervention beyond the legal standards in this Court's jurisprudence. This Court reviews such questions *de novo* and has repeatedly reversed the denial of intervention when the trial court's decision was infected by an error of law. *See, e.g.*, *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541 (1st Cir. 2006); *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31 (1st Cir. 2000); *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104 (1st Cir. 1999); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992); *see also Flynn v. Hubbard*, 782 F.2d 1084, 1086 (1st Cir. 1986) (faced with a question of law, "the standard of review is whether the court committed legal error in denying intervention").

Like the District Court, Appellees overstate the legal standards for intervention. First, SFFA argues this Court should uphold the District Court's erroneous interpretation of the interest requirement. SFFA asserts that the interest required for intervention is the same as the interest required to initiate a lawsuit,

1

but ignores the text of Rule 24(a) and this Court's jurisprudence in favor of pressing a Supreme Court case, *Schuette v. BAMN*, 134 S. Ct. 1623 (2014), that had nothing to do with intervention.  SFFA also argues the Applicant Students' interests are insufficiently direct, but it is unable to convincingly distinguish *Cotter*.  The Students' interests, like the minority officers' in *Cotter*, are sufficiently direct for intervention.

Next, both SFFA and Harvard argue this Court should uphold the District Court's erroneous approach to finding adequacy of representation.  They overstate the burden the Students must overcome and understate the importance of the arguments that the Students will raise.  Moreover, they attempt to justify the District Court's decision to look at SFFA's contributions to the Students' defense.  But that approach only helps to substantiate Harvard's inability to adequately represent the Students' interests.  The Students' unique, legally relevant arguments about the effect of the SAT and other allowable admissions criteria substantiate their showing that Harvard has a conflict of interests that will affect its ability to fully defend the degree to which it considers race to achieve diversity.  Contrary to the District Court's holding and the parties' arguments, a substantiated showing of this sort is sufficient to rebut the presumption of adequate representation that the Students face.

In reviewing each of these errors of law, the Court should conclude that the District Court reached the wrong result in denying intervention to these Students, whose educational opportunities are among the interests most directly affected by the pending litigation.

## ARGUMENT

## I.    THE STUDENTS' INTERESTS ARE SUFFICIENT FOR INTERVENTION AS OF RIGHT.

Rule 24(a) does not require an intervenor to have a legally protectable claim in order to have an interest in the outcome of the litigation.  Nevertheless, SFFA argues that the Students failed to satisfy this inapplicable requirement.  *See* SFFA Br. 10-16.  Imposing such a requirement, as SFFA has explained it and as the District Court applied it, is tantamount to requiring that the would-be intervenors have the same standing that a plaintiff must demonstrate to initiate a suit.  This Court has expressly rejected any such requirement for defendant-intervenors.  *See Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 109 (1st Cir. 1999).  *See* Part I(A), *infra*.  Similarly, SFFA's claim that the Applicant Students' interest in this case is too "contingent" or "indirect" (SFFA Br. 16-17) is foreclosed by *Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 21 (1st Cir. 2000).  *See* Part I(B), *infra*.

## A.    No "Legally Protectable" Interest Is Required for Intervention.

SFFA contends that whereas its members "have a legally protectable right to ensure that Harvard's use of race complies with Title VI and the Equal Protection Clause, the Students lack any protectable interest in maintaining the use of race in admissions."  SFFA Br. 11.  The District Court denied intervention to the Students, *inter alia*, for the same reason.  Op. at 12-13 (as to Applicant Students), 15 (as to Current Students).  No such interest is required for intervention.

SFFA's argument to the contrary relies heavily on *Schuette*, 134 S. Ct. 1623. *See* SFFA Br. 15.  But that case has nothing to do with intervention.  Instead, it involved the plaintiffs' challenge to a voter-approved constitutional amendment banning affirmative action.  *Schuette* would therefore be relevant only if the Students had to show they had an affirmative right to have their race considered by Harvard in order to intervene—it begs rather than answers the question at issue. Accordingly, SFFA's speculation that the Sixth Circuit would have decided the intervention question in *Grutter* differently after *Schuette* is unfounded.  *See* SFFA Br. 11-12.

SFFA's remaining attempts to disparage *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999), are equally unfounded.  *Id.*  It cites the Sixth Circuit's statement that "in this circuit we subscribe to a 'rather expansive notion of the interest sufficient to invoke intervention of right,'" but it fails to point out that the very

next sentence in the Sixth Circuit's opinion is: "For example, an intervenor need not have the same standing necessary to initiate a lawsuit." *Id.* at 398 (citations omitted). This Court reached the same result, at least as to defendant-intervenors, in *Daggett*. The Court held there that, in order to satisfy both the interest requirement and whatever Article III requirement might attach, a defendant-intervenor need not show anything more than a "concrete stake" in the outcome of the litigation. 172 F.3d at 109.

SFFA nonetheless tries to import a plaintiff's requirements for standing by arguing that *Flynn v. Hubbard*, 782 F.2d 1084 (1st Cir. 1986), and *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629 (1st. Cir. 1989), provide "ample authority that intervention requires a legally protectable interest." SFFA Br. 13-14. Not so. As a preliminary matter, the quotations from *Flynn* that SFFA cites (*see* SFFA Br. 14) are both from Judge Coffin's concurrence, not the Court's opinion. Contrary to SFFA's suggestion, the Court's decision in *Flynn* was that "[i]t would be premature to decide now whether the interests asserted by [the movants] meet the requirements of Rule 24." 782 F.2d at 1089.

SFFA cites to *Travelers* apparently for the mere fact that it quotes Judge Coffin's opinion in *Flynn*. But the Court in *Travelers* quoted Judge Coffin only to support its rule statement that "the interest must be direct, not contingent," 884 F.2d at 638, confirming that Judge Coffin used the words "legal" and "legally

protectible" to denote nothing more than the uncontroversial requirement that the intervention interest must be sufficiently concrete to create a true controversy. *See Flynn*, 782 F.2d at 1093-94; *accord Daggett*, 172 F.3d at 109. As the Students explained in their opening brief, the holding in *Travelers* actually supports the Students' position: the Court in *Travelers* held against the movant, *inter alia*, because it could vindicate its legal interests as a cause of action in a subsequent suit. 884 F.2d at 639-40. If having an interest that could form the basis of a legal claim is cause for defeating intervention, it cannot simultaneously be a requirement for granting intervention.

Indeed, since *Travelers*, this Court has authorized intervention without requiring the intervenor to show it could have brought a lawsuit to prevent the outcome it contests. *See, e.g.*, *Daggett*, 172 F.3d at 104; *Mosbacher*, 966 F.2d at 39. SFFA's attempt to distinguish these cases is meritless. It merely points out that the movants in those cases sought to avoid the financial consequences that would follow from the plaintiffs winning their claims. SFFA Br. 14. But this point only supports the Students' position: the Court relied on the concreteness of those interests and allowed the movants to assert that the defendants' discretionary policy choices were legally permissible. *Daggett*, 172 F.3d at 109; *Mosbacher*, 966 F.2d at 43. The Court did not search for causes of action that would have allowed the movants to bring claims against the governmental defendants for

failing to enact the financial benefits. *Cf. Mosbacher*, 966 F.2d at 41 (rejecting appellees' "legally cognizable" interest requirement).[1]   Like the movants in *Daggett* and *Mosbacher*, the Students may not be able to sue Harvard to enforce the use of race in admissions, but they should be able to intervene to defend the policy that benefits them.

SFFA fails to rescue the District Court's erroneous adoption of the extra-textual requirement that a Rule 24(a) interest must be a legally cognizable claim. The Students will assert legal defenses in furtherance of their concrete interest in Harvard's right to consider race, and that is sufficient for intervention.

### B.   The Applicant Students' Interest in This Litigation Is Sufficiently Direct to Warrant Intervention Under *Cotter*.

This Court held in *Cotter* that an organization representing minority employees had a sufficient interest in protecting a race-conscious selection policy to warrant intervention in an action challenging the use of race in making employment decisions.   As the Court stated, "a number of … current officer members are going to seek promotion to sergeant … and the likely impact on other MAMLEO members seems to us substantial, predictable and far more concrete

---

[1] SFFA also claims the Court in *Mosbacher* applied a "relaxed" standard for public law disputes affecting federal regulatory programs (SFFA Br. 14 n.3), but, if relevant at all, that standard is analogous to the relaxed standard the Court announced for civil rights disputes in *Cotter*.   *See* 219 F.3d at 37 (relaxing the interest requirement because the broad effect of an affirmative action dispute may not manifest as "a discrete common law action between a plaintiff and a defendant").

than some general interests in precedent." 219 F.3d at 37.  Applying the reasoning in *Cotter*, this Court should again determine that intervention must be granted here.

SFFA quotes this language (SFFA Br. 17), but fails to acknowledge its force, and relevance here.  Instead, SFFA relies on the fact that *Cotter* referred to a "particular fact pattern" and "matters of degree." *Id.* (quoting 219 F.3d at 37).  But SFFA does not even attempt to show that the Applicant Students who seek intervention here are any less likely to be injured by a judgment in the plaintiff's favor than the potential employment applicants in *Cotter*.

The only ground SFFA advances for distinguishing *Cotter* is the fact that Harvard's consideration of race is voluntary.  SFFA Br. 17.  This is a reprise of SFFA's meritless argument that the Students can only intervene if they could independently sue Harvard to adopt a race-conscious admissions policy.  It has nothing to do with whether the Students' interests are direct or contingent.  Indeed, SFFA itself argues that "[t]here is no basis to think that Harvard would suddenly and voluntarily abandon a practice it deems essential to its institutional mission." SFFA Br. 23-24.  Accordingly, Harvard's consideration of race is not at all remote or contingent.  It is, rather, "far more concrete than some general interests in precedent." *Cotter*, 219 F.3d at 37.  The Students thus have a protectable interest in defending a race-conscious admissions policy that will benefit candidates such

as the Applicant Students, who have backgrounds that can contribute to enhancing diversity at Harvard.

## II.    THE STUDENTS MET THEIR BURDEN TO SHOW INADEQUATE REPRESENTATION.

Appellees rely on the presumption of adequate representation arising from the fact that Harvard and the Students share the same ultimate objective in the litigation—*i.e.*, they both want to defeat SFFA's claims.  SFFA Br. 19-20; Harvard Br. 8.  But they overstate the showing necessary to overcome the presumption.  All the Students need show is that their interests "are sufficiently different *in kind or degree* from those of the named party."  *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006) (emphasis added).

That is the precise situation here.  Harvard agrees with the Students that a race-conscious admissions policy is necessary to achieve a diverse student body, but their rationales for the policy differ.  The Students—but *not* Harvard—contend that consideration of race is necessary in part to overcome the adverse effects of Harvard's use of Early Action, its preference for legacy applicants, and its reliance on the SAT.  *See* JA 302 ¶ 305, JA 305-08 ¶¶ 341, 344, 351, 353, 364, 365.  In contrast, Harvard will deny that these practices have any negative impact on the admission of underrepresented minority students (*see e.g.*, JA 144, 191, 193, ¶¶ 8, 344, 364-65) and, therefore, will understate both the impact that these practices have on its level of diversity and its need to consider race.

Contrary to what the Appellees assert, these distinctions between Harvard's and the Student's arguments are neither a mere lawyers' quibble about litigation strategy nor a legally irrelevant defense. *See* SFFA Br. 20-21; Harvard Br. 12, 16-17. Instead, the distinctions represent a fundamental difference in Harvard's and the Students' abilities to defend the use of race in admissions. Because the consideration of race to achieve diversity must be narrowly tailored, the extent to which Harvard can consider race necessarily will be affected by whether its *other* admissions criteria adversely impact its effort to achieve racial diversity. To the extent that Harvard claims it will "vigorously" defend race-conscious admissions *without* considering the degree to which its other admissions policy impair racial diversity, Harvard will be defending race-conscious admissions with one hand tied behind its back.

The District Court attempted to cure Harvard's inadequacy by looking to SFFA. It erroneously held that the Students' interests could be adequately represented by SFFA because SFFA believes that Harvard's other admissions criteria decrease racial diversity. Op. at 18. But no case in this Circuit holds that a would-be intervenor's interests can be adequately represented by the party it seeks to oppose. And understandably so. In any event, the District Court ignored a key fact: SFFA takes an opposing position from the Students on both the fact of the SAT's negative impact on racial diversity and the merits of its use in admissions.

*See* JA 61-62 ¶ 208, JA 64-65, JA 136 ¶¶ 216-20 (alleging that higher SAT scores of Asian American students is proof that they should be admitted in greater numbers to Harvard).  SFFA seeks to increase Harvard's reliance on the SAT while simultaneously arguing Harvard cannot consider race, whereas the Students contend that the SAT has a detrimental effect on the admission of underrepresented minorities and thus justifies the consideration of race.  *See* JA 306-07 ¶ 351.  The fundamental legal error of relying on SFFA's arguments to find adequacy of representation requires reversal of the District Court's order denying intervention.

### A.    The Students Can Satisfy Their Burden by Showing a Conflict of Interest, Substantiated by Specific Arguments that Harvard Is Unlikely to Raise.

The Students and Appellees agree that a presumption of adequacy arises when the movant and a named party share the same ultimate goal.  Students Br. 34; Harvard Br. 9-10; SFFA Br. 19.  They further agree that *B. Fernandez*, 440 F.3d 541, announces the controlling standard for rebuttal.  *Id.*  But Harvard and SFFA overstate the threshold for rebuttal by claiming the burden is "significant" and requires "far more" than the "minimal" showing required in *Trbovich v. United Mine Workers*, 404 U.S. 528 (1971).  Harvard Br. 9; SFFA Br. 19.  The standard in *B. Fernandez* is more permissive than Appellees aver:  "[T]o overcome the presumption, the intervenor need only offer 'an adequate explanation as to why' it is not sufficiently represented by the named party," which can be done by showing

that the named party has interests that are "advers[e]" or "sufficiently different in kind or degree" from that of the movant.  440 F.3d at 546 (citation omitted).  *B. Fernandez* did not reject the permissive standard from *Trbovich*; rather, it quoted from that opinion in explaining that even once the burden shifts to the movant, the movant need only raise "sufficient doubt about the adequacy of representation." 440 F.3d at 547 (quoting 404 U.S. at 538).  Requiring more, as the District Court did here, is an error of law.

Appellees attempt to defend the District Court's high evidentiary bar by reciting language from *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197 (1st Cir. 1998), and *Moosehead Sanitary District v. S.G. Phillips Corp.*, 610 F.2d 49 (1st Cir. 1979), that rebuttal requires "some tangible basis" of support and "more than speculation."  Harvard Br. 9; SFFA Br. 24.  Appellees point to Harvard's prior actions and statements, which support its willingness to defend its admissions policy.  Harvard Br. 10-11; SFFA Br. 23.  But Appellees overlook that Harvard's prior actions are not the only way to substantiate that its interests are likely different in kind or degree from the Students'.  *Cf. Daggett*, 172 F.3d at 112 (a showing of a divergence of interests is not too speculative as long as the conflict "can be reasonably predicted").

One way a prospective intervenor may substantiate a divergence of interests and rebut the presumption of adequate representation is by identifying legally

relevant arguments that the named party would be unlikely to raise.  *See B. Fernandez*, 440 F.3d at 546; *Cotter*, 219 F.3d at 35 (holding there was "enough likelihood of conflict . . . of interest" because the Boston Police Department would be unlikely to raise arguments premised on the need to consider race as a remedy for the disparate impact of its testing criteria).

The District Court erred by overlooking this showing: it recognized that the Students would make arguments that Harvard would resist, but held that the Students failed to rebut the presumption of adequacy notwithstanding.  This error warrants reversal.

### B. None of the Cases Appellees Cite Raise the Modest Bar for Showing Inadequate Representation.

The Students have substantiated that their interests diverge from Harvard's by showing there are defenses it will raise that Harvard will not.  None of the cases Appellees cite establish that the Students must do more.

As an initial matter, Harvard attempts to distinguish *B. Fernandez* on factual grounds, contending that the conflict of interests in *B. Fernandez* "surpasses" those here.  Harvard Br. 14.  But *B. Fernandez* warned against raising the bar for inadequacy in this way, by requiring factual symmetry with prior cases: "we have stressed the case-specific nature of this inquiry, and have discouraged district courts from identifying only a limited number of 'cubbyholes' for inadequate representation claims."  440 F.3d at 546.

Appellees ask the Court to analogize to *Patch*, where the defendants' full-scale defense of their conduct weighed against finding inadequacy.  Harvard Br. 11; SFFA Br. 20.  But *Patch* is unlike this case because the named party there was a governmental entity and the movants were a group of the general citizen population, which the State is bound to fairly represent.  136 F.3d at 207-10.  The Court affirmatively held that the defendant-State did not have any interest that conflicted or diverged from the proposed intervenors'.  *Id.*  Here, to the contrary, the Students have raised the reasonable likelihood that Harvard's defense will be determined in part by its reputational interests and its commitment to specific constituents like alumni.  Appellees' reliance on *Daggett* is no more persuasive.  In *Daggett* the Court held that a governmental defendant with "broader" interests than movants might still be an adequate representative.  172 F.3d at 112; Harvard Br. 12-13; SFFA Br. 20.  But that conclusion is inapposite here, where the defendant is a private entity serving specific constituents whose interests are at odds with movants'.

Next, Appellees cite to *Daggett*, 172 F.3d 104, and to *Massachusetts Food Association v. Massachusetts Alcoholic Beverages Control Commission*, 197 F.3d 560 (1st Cir. 1999), to support their contention that a movant offering unique arguments is insufficient to substantiate a showing of inadequate representation.  Harvard Br. 12; SFFA Br. 20-21. Neither decision is applicable to this situation,

where the Students will develop factual support for arguments that could be dispositive in the defense of Harvard's use of race. *Daggett* stands only for the proposition that "the use of different arguments as a matter of litigation judgment is not inadequate representation *per se*." 172 F.3d at 112; Harvard Br. 12. Indeed, a difference of opinion over litigation strategies would not go to show that the named party has interests that diverge in kind or degree from the movants' interests. In this case, however, the Students do not merely disagree with Harvard over litigation strategy. The Students have a unique defense to offer and Harvard's unwillingness to pursue it demonstrates that its interests diverge from the Students' interests. *Massachusetts Food Association* is equally unpersuasive. The Court there held that one unique argument was insufficient to establish the need for intervention, but it did not consider the question of a divergence of interests. 197 F.3d at 567. Rather, the Court relied upon the fact that the one argument at issue did not require factual development. *Id.* The movant could make its argument as an *amicus* and it could thus protect its interests without full-party status. *Id.* That case is unavailing here, where the Students' arguments depend on factual development and Harvard's unwillingness to develop them substantiates that its interests diverge in kind or degree from the Students' interests. *See* Part II(D), *infra*.

## C.    The Students' Unique Arguments Could Be Dispositive Under *Fisher*'s Narrow-Tailoring Requirement.

Appellees next contend that the Students do not need to make their unique arguments because they are legally irrelevant. *See* Harvard Br. 16; SFFA Br. 22. Appellees are wrong about both what the Students will argue and its legal significance. There is no dispute that the Students are the only group that intends to defend race-conscious admissions practices by showing that several of Harvard's admissions policies—including its reliance on the SAT—tend to decrease diversity. They do not plan to argue, as the District Court misunderstood and the Appellees now repeat, that Harvard is required to remedy the effects of past discrimination or of a policy that had a disparate impact. *See* Op. at 18 n.6; Harvard Br. 15-16; SFFA Br. 23-24. Rather, the Students will argue Harvard's use of race survives *Fisher's* narrow-tailoring test given the degree to which Harvard's other admissions criteria disadvantage underrepresented minorities. As with the university in *Grutter*, 188 F.3d at 400-01, Harvard's likely unwillingness to present these unflattering realities is sufficient to establish the risk of inadequate representation.[2]

---

[2] Appellees raise the Fifth Circuit's decision denying intervention in *Hopwood v. State of Texas*, 21 F.3d 603 (5th Cir. 1994), a challenge to the University of Texas's affirmative action plan, as a counterpoint to *Grutter*. SFFA Br. 18; Harvard Br. 22-23. *Hopwood* is inapposite because it turned on the state's obligation to represent the students' interests—a consideration the Sixth Circuit declined to take into account in *Grutter*. *See Hopwood*, 21 F.3d at 605; *Grutter*, 188 F.3d at 400. In *Hopwood*, the court found both that the students could present

Footnote continued on next page

*Fisher* establishes the applicable standard for judging a race-conscious admissions policy under strict scrutiny.[3]  *See Fisher v. Univ. of Texas at Austin*, 133 S. Ct. 2411, 2420 (2013).  The Supreme Court there held that the Fifth Circuit had afforded too much deference to the University of Texas (UT) in determining the permissibility of its race-conscious admissions policy.  *Id.* at 2419-20.  Even deferring to UT's stated goal of diversity, the Court explained that a reviewing court must ensure that "the means chosen by the University to attain diversity are narrowly tailored to that [purpose]."  *Id.*  The narrow-tailoring inquiry entails a two-part test.  *Id.* at 2420.  First, the university's admissions policy must "ensure that each applicant is evaluated as an individual," such that race is not the "defining feature of his or her application."  *Id.*  Second, considering race must be "necessary" to achieve diversity's benefits, such that "no workable race-neutral alternatives" could "achieve sufficient diversity."  *Id.*

The arguments that the Students offer and that Harvard resists bear undeniable relevance on this second prong of the narrow-tailoring test.  The court

---

Footnote continued from previous page

their evidence to the State and that they did not have a separate defense from the State's.  Here, in contrast, the Students have no forum before Harvard and they intend to produce evidence that is inconsistent with Harvard's position that its other admissions criteria negatively affect diversity.  Moreover, the Supreme Court's decision in *Grutter v. Bollinger*, 539 U.S. 306 (2003), abrogated *Hopwood* on the merits.  The Fifth Circuit's decision on intervention was therefore clearly based on a misconception of the interests at stake for underrepresented minority students.

[3] Recognizing that the cart is unavoidably before the horse, the Students proceed here as if cases in the line of *Fisher* apply to non-public universities, an issue which the parties will contest in the proceedings below.

must determine both what constitutes "sufficient diversity" and whether any alternative, non-racial means could achieve such levels of diversity. Harvard denies that some of its current practices—legacy preferences and Early Action— negatively affect the admissions rates for underrepresented minorities. JA 144 ¶ 8, 191 ¶ 344, 193 ¶ 364-65. The Students, in contrast, admit those factual allegations. *See* JA 302 ¶ 305, JA 305-08 ¶¶ 341, 344, 353, 364, 365. In addition, the Students are the only group that will argue Harvard's reliance on the SAT negatively affects the admissions rates for underrepresented minorities. JA 306-07 ¶ 351. Although SFFA opposes Early Action and legacy preferences, it suggests the SATs should be more influential in admissions. *See* JA 61-62 ¶ 208, JA 64-65 ¶¶216-20. Both named parties, therefore, have an undeniable interest in defending certain admissions criteria that undermine the goal of diversity. The Students would be the only party to argue that using these admissions criteria, which are not unconstitutional and are relatively conventional, leaves Harvard with "no workable race-neutral alternatives." Harvard's unwillingness to admit to the detrimental effects of its admissions criteria means that it will necessarily understate the extent to which considering race is required to yield "sufficient diversity."

Moreover, *Fisher* instructs that the court does not defer to the university's definition of "sufficient diversity," but rather must make its own assessment based on the facts before it. 133 S. Ct. at 2420. The Students have an important role to

play in developing those facts, even though it is entirely Harvard's decision whether it seeks to achieve diversity. Despite, and maybe because of, Harvard's public commitment to diversity, it is reasonably predictable that only the Students will argue that "sufficient diversity" requires a greater presence of underrepresented minority students than currently exists at Harvard. *See, e.g.*, JA 248, 251, 254, 257, 260 (current Students declaring their desire for higher proportion of underrepresented minority students). For Harvard to argue that even greater racial diversity is needed may damage its reputational interests and its commitment to other, non-minority constituents.

Contrary to the assertions of the District Court and Appellees, this is not a case like *Daggett* where there is "no obvious reason why…[the named party] could not offer the testimony of the proposed intervenors, treating them as friendly witnesses." Op. at 17 (quoting 172 F.3d at 113). This case is much more like *Grutter*, *see* 188 F.3d at 400-01, because the Students and their expert witnesses are immune from the internal and external pressures that the university faces and can therefore scrutinize current admissions rates and data regarding underrepresented minorities at Harvard. The Students will be able to argue that race should be even more influential in order to achieve "sufficient diversity." Although the Students do not claim the Constitution requires higher levels of

diversity, they would offer these arguments to argue that Harvard's limited use of race to achieve something more modest is constitutionally acceptable.

### D. SFFA's Presentation of Evidence Does Not Cure the Inadequacy of Representation.

Appellees cite no First Circuit cases to defend the District Court's holding that a party with an opposing goal in the litigation may play a role in the adequate representation of a would-be intervenor. Harvard Br. 17-18; SFFA Br. 21-22. Harvard cites to one district court case in Louisiana in which the court used the approach (Harvard Br. 18 n.3), but the extent of that reach only corroborates that the District Court's analysis is unprecedented in this Circuit and requires reversal.[4]

Appellees attempt to defend the District Court's unprecedented methodology by claiming SFFA will develop the record as the Students would, enabling them to advance their arguments as *amici*. Harvard Br. 17-18; SFFA Br. 21-22. This is a distinction without a difference: nothing in Rule 24(a) or this Court's jurisprudence requires the Students to entrust the task of developing the record to an opposing

---

[4] The case to which Harvard cites, *United States v. Louisiana*, 90 F.R.D. 365 (E.D. La. 1981), is unpersuasive for the additional reason that it turned on several factors not present in this case. In *Louisiana*, a faculty member at Southern University at New Orleans ("SUNO") moved to intervene in a higher education desegregation lawsuit against historically black institutions, including SUNO. The proposed intervenor wanted to raise the issue of the alleged inequities suffered by faculty at SUNO as compared to faculty at traditionally white institutions. But the movant's case for intervention was weak because she moved seven years after the case was filed and she acknowledged that the issues she raised could be the subject of a subsequent lawsuit. Id. at 366-67. For these reasons and others, the court was persuaded by the fact that there would be "particularly little prejudice to the movant if she is not allowed to intervene." *Id.* at 367. In contrast, the Students seek here to pursue the only avenue they will have to be involved in defending a policy that will determine their educational opportunities.

party.  Moreover, Appellees and the District Court were wrong about the facts the Students would develop.  Even assuming that SFFA would present evidence on the effect of Early Action and legacy preferences in a manner that would be helpful to the Students, it is undisputed that the Students are the only group that would present evidence to show the SAT has a negative impact on diversity.  SFFA suggests that the District Court believed SFFA would develop this evidence, stating (at 21-22 of its Brief), "The District Court referred to SFFA's allegations about *SAT scores*, legacy admissions, and Early Action … [in order] to address the Students' claims that their intervention was essential to develop the record on these issues." (emphasis added).  Contrary to SFFA's characterization, the District Court never mentioned whether SFFA would present SAT evidence.  *See* Op. at 18.  But no matter.  If SFFA is right, then the District Court relied on an erroneous assumption; if it is wrong, then the District Court ignored an important void in the factual record that neither named party intends to fill.  Regardless of the precise nature of the District Court's error, it is clear that unless the Students are allowed to intervene, they will be unable to develop the factual record necessary for their arguments.  *Amici* status is therefore not an adequate result.

The District Court acknowledged Harvard's conflict of interests by accepting that SFFA would have to play a role in the Students' defense.  But it erred in holding that SFFA could mitigate the risk that the Students would be

inadequately represented.  This Court should correct the District Court's error and hold that the Students have met their burden to demonstrate the risk of inadequate representation.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court and order it to permit the Students to intervene.

Dated: October 5, 2015                    Respectfully submitted,

<u>s/ Lawrence E. Culleen</u>
Lawrence E. Culleen
First Circuit # 1171295
ARNOLD & PORTER, LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel: (202) 942-5000

Jon M. Greenbaum
First Circuit # 95913
LAWYERS' COMMITTEE FOR
 CIVIL RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005
Tel: (202) 662-8600

Iván Espinoza-Madrigal
First Circuit # 1171237
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND ECONOMIC
JUSTICE
294 Washington Street, Suite 443
Boston, MA 02108

Tel: (617) 988-0624

*ATTORNEYS OF RECORD FOR
MOVANTS – APPELLANTS*

Nancy L. Perkins
ARNOLD & PORTER, LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel: (202) 942-5000

Steven L. Mayer
ARNOLD & PORTER, LLP
10th Floor, Three Embarcadero
Center
San Francisco, CA 94111
Tel: (415) 471-3100

*ATTORNEYS FOR MOVANTS –
APPELLANTS*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,271 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

s/ Lawrence E. Culleen
Lawrence E. Culleen

*ATTORNEY FOR MOVANTS – APPELLANTS*

October 5, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2015, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/ Lawrence E. Culleen
Lawrence E. Culleen

*ATTORNEY FOR MOVANTS – APPELLANTS*

October 5, 2015