# ARNOLD & PORTER LLP

**Taylor M. Owings**

+1 202.942.6508
+1 202.942.5999 Fax

601 Massachusetts Ave., NW
Washington, DC 20001-3743

November 17, 2015

<u>**VIA ECF**</u>

Margaret Carter
Clerk of Court
U.S. Court of Appeals for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

>  Re:   *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*
>  Case No. 15-1823
>  Submission Pursuant to Federal Rule of Appellate Procedure 28(j)

Dear Ms. Carter:

At oral argument in the above-referenced case, Judge Kayatta asked counsel for the Students whether they could have a "protectable" interest within the meaning of Rule 24(a) if they would have no legal recourse to prevent Harvard from privately agreeing with SFFA not to consider race in admissions. Counsel for the Students responded that although they would not be able to do anything about Harvard's private agreement to stop considering race, they could, as intervenors, oppose entry of a legal order barring Harvard from considering race, as the intervenors did in *Mosbacher*, 966 F.2d 39 (1st Cir. 1992).

I am writing now to draw the Court's attention to what happened after the interested fishing groups intervened in *Mosbacher*.

**ARNOLD & PORTER** LLP

Page 2

  In a subsequent decision in the same case, *Conservation Law Foundation v. Franklin*, 989 F.2d 54 (1st Cir. 1993), this Court recognized that the right to intervene is not contingent upon the intervenor being able to bring a claim that a settlement agreement is legally impermissible as to it. In *Franklin*, the plaintiff and defendant had moved to enter their settlement agreement as an order of the court. The intervenors challenged the district court's decision to enter the consent decree on several grounds, including that it would have a negative impact on them. In affirming the district court's denial of the intervenors' motion to vacate the consent decree, this Court held that the intervenors had not alleged that the decree affected their interests in a way that would give rise to standing, and that this failure was fatal to their argument that the decree should be vacated for negatively impacting third parties. *Id.* at 59. In so deciding, the Court explicitly distinguished the type of third-party interest that would allow the fishing groups to block the agreement from that necessary for intervention: "A right to intervene does not necessarily suffice to meet the test for vacating a consent decree." *Id.*

  Taken together, these two cases stand squarely for the proposition that an intervenor need not have the type of interest that would enable it to invalidate a settlement between the original parties.

         Respectfully Submitted,

         s/ Taylor M. Owings
         Taylor M. Owings

Attachment (1)

terization does not contravene any specific provision of the guidelines themselves.

On the other hand, our holding in *Gallego* weighs in favor of characterizing the amendment as a substantive change. Given that holding, the amendment alters the guideline as interpreted by the First Circuit. Furthermore, any amendment that is inconsistent with the clear meaning results in a substantive change, regardless of the Sentencing Commission's characterization. *United States v. Ruiz–Batista*, 956 F.2d 351, 353 (1st Cir.) ("if there was no ambiguity ... the Commission could not change [the] meaning retroactively by using a magic word, clarification"), *cert. denied*, — U.S. —, 113 S.Ct. 105, 121 L.Ed.2d 64 (1992). In *Gallego* we held it to be "perfectly clear" that a fine is a criminal justice sentence, as that term is used in U.S.S.G. § 4A1.1. The contrary amendment therefore would seem to represent a substantive change, rather than a clarification.

Given our holding in *Gallego*, we rule that the amendment was not a clarification. Rather, the amendment presented a change in the meaning of a clear and unambiguous guideline. As the amendment was not a clarification, it is not entitled to retroactive effect. Accordingly, the district court did not err in sentencing appellant.[1]

[3] We turn now to appellant's constitutional claims. Appellant insists that he is being penalized because he was paying his fine incrementally according to a state established schedule. According to appellant, the Fourteenth Amendment does not permit criminal penalties due to a defendant's inability to pay a fine.

We disagree with appellant's analysis. He is not being penalized for nonpayment of a fine. Rather, he is being penalized because that fine is not yet due and payable, and therefore appellant is still subject to a criminal justice sentence. We have rejected similar claims on these very grounds. *Gallego*, 905 F.2d at 483 n. 2. Furthermore, appellant is not an indigent, and therefore is not entitled to the protections he claims. *See Bearden v. Georgia*, 461 U.S. 660, 664–69, 103 S.Ct. 2064, 2068–71, 76 L.Ed.2d 221 (1983) (distinguishing between indigents and nonindigents for constitutional purposes). Appellant's sentence invokes no constitutional concerns.

We cannot conclude without a respectful observation regarding what we perceive to be a too often exercised prerogative by the Sentencing Commission, that of making significant alterations to the guidelines commentary accompanied by a suggestion that the alteration is a "clarification." Considering the thin line separating substance from clarification in this neural area of the law, we believe judicious restraint by the Commission would not only avoid unnecessary litigation and the possible violation of constitutional rights, but would add to the credibility of its action.

The sentence is *affirmed*.



CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC., et al., Plaintiffs, Appellees,

v.

Barbara H. FRANKLIN, ETC., et al., Defendants, Appellees.

Appeal of ASSOCIATED FISHERIES OF MAINE, et al., Intervenors, Appellants.

No. 92–2029.

United States Court of Appeals, First Circuit.

Heard Dec. 7, 1992.

Decided March 30, 1993.

Fishing associations moved to vacate consent decree establishing fishery man-

---

1. We will, of course, apply the commentary in future cases not involving retroactivity.

agement plan for New England. The United States District Court for the District of Massachusetts, A. David Mazzone, J., denied motion, and fishing associations appealed. The Court of Appeals, Torruella, Circuit Judge, held that: (1) associations were not entitled to vacation of decree in the absence of any allegation of specific injury to themselves or any other parties, and (2) Secretary of Commerce may make her own revisions to regional council-generated plans, if council fails to revise after reasonable time.

Affirmed.

**1. Federal Courts** ⚖763

District courts must review consent decree to ensure that it is fair, adequate, and reasonable; that proposed decree will not violate Constitution, statute or other authority; and that it is consistent with objectives of Congress.

**2. Federal Civil Procedure** ⚖2397.1

Where administrative agency has committed itself to consent decree, district court must exercise some deference to agency's determination that settlement is appropriate.

**3. Federal Civil Procedure** ⚖2397.3

District court is not barred from entering consent decree merely because it might lack authority under governing statute to do so after trial.

**4. Federal Civil Procedure** ⚖2397.2

Parties enjoy wide latitude in terms of what they may agree to by consent decree and have sanctioned by court.

**5. Compromise and Settlement** ⚖2

There is strong and clear policy in favor of encouraging settlements, especially in complicated regulatory settings.

**6. Federal Courts** ⚖829

Court of Appeals reviews district court's denial of motion to vacate consent decree for abuse of discretion.

**7. Federal Civil Procedure** ⚖2397.4

Double required deference—district court to agency and appellate court to district court—places heavy burden on those who propose to upset trial judge's approval of consent decree.

**8. Federal Civil Procedure** ⚖2397.4

In instances in which rights of third parties are basis for blocking entry of, or vacating, consent decree, there must be demonstrable injury or adverse effect upon group not party to decree which is analogous to standing requirement.

**9. Federal Civil Procedure** ⚖2397.4

Right to intervene does not necessarily suffice to meet test for vacating consent decree.

**10. Federal Civil Procedure** ⚖2397.4

Fishing associations were not entitled to vacation of consent decree which established timetable for fishery management plan where associations failed to allege any specific injury to themselves or other parties.

**11. Fish** ⚖12

Secretary of Commerce may generate her own revisions to regional council-generated fishery management plans under Magnuson Fishery Conservation and Management Act, if council fails to revised plan after reasonable time. Magnuson Fishery Conservation and Management Act, § 304(c)(1)(A, B), as amended, 16 U.S.C.A. § 1854(c)(1)(A, B).

**12. Fish** ⚖12

Magnuson Fishery Conservation and Management Act section, providing that Secretary of Commerce may act if he disapproves or partially disapproves any management plan or amendment, disapproves revised plan or amendment, and regional council involved fails to submit revised or further revised plan or amendment, did not apply to consent decree entered into by Secretary and environmental group. Magnuson Fishery Conservation and Management Act, § 304(c)(1)(B), as amended, 16 U.S.C.A. § 1854(c)(1)(B).

**13. Fish** ⚖12

Consent decree regarding fishery management plan for fishing off New England

was valid, although it may have resolved matters beyond complaint.

**14. Federal Civil Procedure ⚖2397.1**

Parties to consent decree are not restricted to terms of complaint, and may enter consent decree on other matters, provided they have legal authority to do so.

**15. Fish ⚖12**

Change in consent decree which committed Secretary of Commerce to develop fishery management plan to "eliminate" overfishing, rather than "prevent" overfishing as stated in Magnuson Fishery Conservation and Management Act, did not amount to rule making establishing new standard; decree used word "eliminate" because regional council already had determined that overfishing of cod, haddock, and yellowtail flounder presently occurred and one could not prevent what had already occurred. Magnuson Fishery Conservation and Management Act, § 301(a), as amended, 16 U.S.C.A. § 1851(a).

**16. Fish ⚖12**

Consent decree establishing timetable for fishery management plan or amendment to regional council's plan for New England waters did not impose new "good faith" requirement with respect to council action which was not present in Magnuson Fishery Conservation and Management Act; "good faith" language of consent decree was superfluous and did not change relationship between regional council and Secretary of Commerce. Magnuson Fishery Conservation and Management Act, §§ 2–406, as amended, 16 U.S.C.A. §§ 1801–1882.

**17. Fish ⚖12**

Secretary has broad discretion under Magnuson Fishery Conservation and Management Act concerning contents of fishery management plan. Magnuson Fishery Conservation and Management Act, § 303(b)(10), as amended, 16 U.S.C.A. § 1853(b)(10).

**18. Fish ⚖12**

Because district court had jurisdiction under Magnuson Fishery Conservation and Management Act to review amendment to regional council's fishery management plan, district court could enter consent decree regarding plan. Magnuson Fishery Conservation and Management Act, §§ 2–406, as amended, 16 U.S.C.A. §§ 1801–1882.

---

Ralph J. Gillis, argued, with whom Gillis & Campbell, was on brief for appellants.

Peter A. Appel, Attorney, Dept. of Justice, argued, with whom Vicki A. O'Meara, Acting Asst. Atty. Gen., A. John Pappalardo, U.S. Atty., Suzanne E. Durrell, Asst. U.S. Atty., J. Carol Williams and Jean W. Williams, Attorneys, Dept. of Justice, Margaret F. Hayes and Gene S. Martin, Office of Gen. Counsel, Nat. Oceanic & Atmospheric Admin., were on brief for Federal appellees.

Peter Shelley, argued, with whom Maura J. Sheehan, was on brief for appellees Conservation Law Foundation, Inc., and Massachusetts Audubon Soc.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

In this appeal, several fishing associations,[1] appellants here, request that we vacate a consent decree approved and entered by the district court between the Conservation Law Foundation of New England, Inc. and Massachusetts Audubon Society (collectively, "Conservation"), and the Secretary of Commerce ("Secretary"). For the reasons that follow, we reject this request.

## PRIOR PROCEEDINGS

Conservation sued the Secretary alleging that the Secretary failed to prevent overfishing off the coast of New England, as required by the Magnuson Fishery Conser-

---

1. These associations include: Associated Fisheries of Maine, N.E.; Atlantic Swordfish Net Ass'n, Inc.; Massachusetts Inshore Dragger- men's Ass'n, Inc.; and Point Judith Fishermen's Cooperative Ass'n, Inc.

vation and Management Act of 1976, as amended, 16 U.S.C. §§ 1801–1882 (1985 & Supp.1992) ("Magnuson Act"). Appellants sought to intervene. The district court denied the request, but we granted it in *Conservation Law Foundation, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir.1992). While the appeal seeking intervention was pending, the district court entered a consent decree between Conservation and the Secretary. Appellants now seek to vacate the consent decree on various grounds. To fully understand the present appeal, we must briefly describe the statutory context of this suit.

## STATUTORY BACKGROUND

Congress enacted the Magnuson Act to establish a comprehensive system of fisheries management for waters within the jurisdiction of the United States. 16 U.S.C. § 1801(b)(1). In particular, Congress found that certain stocks of fish had been so overfished that their survival was threatened, *id.* at § 1801(a)(2), and mandated that overfishing be prevented, *id.* at § 1851(a)(1).

To attain these goals, the Act creates eight regional fishery management councils. *Id.* at § 1852(a). The regional councils are comprised of state and federal government officials, as well as individuals nominated by state executives and appointed by the Secretary. *Id.* at § 1852(b), (c). The Magnuson Act charges the Secretary and the Councils with developing fishery management plans ("FMPs") for stocks of fish within their jurisdictions that require conservation and management. The Act specifies the procedures by which FMPs are developed and creates a number of standards to which the plans must conform. National Standard One requires that "[c]onservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry." *Id.* at § 1851(a)(1). The Secretary has issued guidelines to assist the development of plans by the regional councils. *See* 50 C.F.R. pt. 602.

The Act provides that either the councils or the Secretary can develop FMPs. If a council generates a plan, the Secretary must follow a detailed procedure for review, as specified in § 1854(a), (b). The Secretary first reviews the plan for compliance with statutory mandates and publishes notice of the plan in the Federal Register, soliciting comments from interested persons. After review, the Secretary may approve, partially approve, or disapprove the plan. If the Secretary disapproves or partially disapproves of a plan she must inform the council of her reasons. 16 U.S.C. § 1854(b)(2). The council may then submit a revised plan, *id.* at § 1854(b)(3), which the Secretary will review.

The Act authorizes the Secretary to develop an FMP with respect to any fishery if (1) "the appropriate council fails to develop and submit to the Secretary, *after a reasonable period of time*, a fishery management plan for such fishery, or any necessary amendment to such a plan, if such fishery requires conservation and management ...," *id.* at § 1854(c)(1)(A) (emphasis added); or (2) "the Secretary disapproves or partially disapproves any such plan or amendment, or disapproves a revised plan or amendment, and the Council involved fails to submit a revised or further revised plan or amendment, as the case may be." *Id.* at § 1854(c)(1)(B). Under either statutory authority, the Secretary must submit the FMP to the appropriate council for comments, and publish notice of the plan and regulations to implement the plan in the Federal Register. *Id.* at § 1854(c)(2)(A). Before the Secretary implements the plan, she must consider the comments of the council and the public, and ensure compliance with the national standards. *Id.* at §§ 1854(c)(2)(B), 1851, 1853.

Approved FMPs are implemented by regulations promulgated by the Secretary, which are subject to judicial review in accordance with select provisions of the Administrative Procedures Act, 5 U.S.C. § 701 *et seq. See* 16 U.S.C. § 1855(b).

## HISTORY OF THE NORTHEAST MULTISPECIES FISHERIES PLAN

This case involves the conservation and management of groundfish off the coast of New England.[2] In its effort to manage New England fisheries, the New England Fishery Management Council ("New England Council") first eliminated foreign fishing within its jurisdiction, 42 Fed.Reg. 13,998 (1977). In 1985, it developed the Northeast Multispecies Fisheries Plan, Proposed Rule, 50 Fed.Reg. 49,582 (1985), because overfishing remained a problem. The Secretary approved the plan as an interim rule in 1986, indicating that the rule improved matters, but was unsatisfactory for long term conservation and management. Interim Rule, 51 Fed.Reg. 29,642, 29,643 (1986). In 1987, the rule became final and three amendments followed. *See* Final Rule, 52 Fed.Reg. 35,093 (1987) (amendment one); Final Rule, 54 Fed.Reg. 4,798 (1989) (amendment two); Final Rule, 54 Fed.Reg. 52,803 (1989) (amendment three).

The Rule and its amendments did not prevent overfishing as required by National Standard One. Pursuant to the Secretary's guidelines on what constitutes overfishing, 50 C.F.R. 602.11 (1991), the Council determined that cod, haddock, and yellowtail flounder in certain fisheries off the coast of New England were overfished and drafted amendment four to redress that problem. The Secretary partially approved amendment four, 56 Fed.Reg. 24,724 (1991), but found the amendment deficient, stating that it did "not constitute a complete rebuilding strategy...." *Id.* at 24,725.

In response to amendment four, Conservation sued the Secretary, complaining that she had arbitrarily and capriciously approved the amendment and that the overall FMP failed to comply with National Standard One. Thereafter, Conservation and the Secretary began negotiations to enter a consent decree settling the suit. Appellants sought to intervene but the district court denied the request. While the appeal was pending, the district court entered a consent decree on August 28, 1991. In the appeal, we granted appellants intervenor status.

## THE CONSENT DECREE

The consent decree established a timetable for a FMP or an amendment to the plan applicable to New England waters that would "eliminate the overfished condition of cod and yellowtail flounder stocks in five years after implementation and ... eliminate the overfished condition of haddock stocks in ten years after implementation." *Conservation Law Foundation, Inc. v. Mosbacher*, No. 91-11759-MA, slip op. at 2 (D.Mass., Aug. 28, 1991) (consent decree). The decree expressly stated that it "shall meet all requirements established by applicable statutes and regulations...." *Id.* at 2. It directed that the New England Council would have the first opportunity to develop the groundfish rebuilding plan, but also established a timetable for the Secretary to create and implement her own plan if the council failed to act. Appellants unsuccessfully moved to vacate the consent decree. This appeal followed.

## DISCUSSION

[1-3] District courts must review a consent decree to ensure that it is "fair, adequate, and reasonable; that the proposed decree will not violate the Constitution, a statute or other authority; [and] that it is consistent with the objectives of Congress...." *Durrett v. Housing Authority of Providence*, 896 F.2d 600, 604 (1st Cir.1990). Where an administrative agency has committed itself to a consent decree, the district court must exercise some deference to the agency's determination that settlement is appropriate, *F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404, 408 (1st Cir.1987), and "refrain from second-guessing the Executive Branch." *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). Moreover, "the court is not barred from entering a consent decree merely be-

---

2. Groundfish tend to live near the ocean floor and include cod, haddock, and flounder.

cause it might lack authority under [the governing statute] to do so after a trial." *Local No. 93, Int'l Ass'n of Firefighters v. Cleveland*, 478 U.S. 501, 525–26, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986).

[4, 5] The Supreme Court has stated that district courts may properly approve a consent decree where (1) it "spring[s] from and serve[s] to resolve a dispute within the courts' subject-matter jurisdiction"; (2) it "come[s] within the general scope of the case made by the pleadings"; and (3) furthers the objectives upon which the complaint was based. *Id.* Therefore, the parties enjoy wide latitude in terms of what they may agree to by consent decree and have sanctioned by a court. Furthermore, we recognize a strong and "clear policy in favor of encouraging settlements," especially in complicated regulatory settings. *Durrett*, 896 F.2d at 604 (citation omitted); *Cannons Engineering*, 899 F.2d at 84.

[6, 7] We review the district court's denial of a motion to vacate a consent decree for abuse of discretion. *Cannons Engineering*, 899 F.2d at 84. Additionally, "[t]he doubly required deference—district court to agency and appellate court to district court—places a heavy burden on those who propose to upset the trial judge's approval of a consent decree." *Id.* We turn now to appellants' challenge to the decree.

Appellants contend that the consent decree constitutes improper rulemaking under the statute which deprives the public of an opportunity to comment. They assert that the consent decree (1) creates a new standard requiring that the FMP "eliminate" overfishing, whereas National Standard One mandates "prevention" of overfishing while maintaining maximum sustainable yield from fisheries; (2) requires a rebuilding program and a timetable for compliance not present in the Magnuson Act; (3) establishes a "good faith" performance standard for Council action; and (4) constrains the Secretary's discretion under the Act.

Appellants essentially maintain that the Secretary's action with respect to Council-generated FMPs, or amendments thereto, must follow the statutorily prescribed course of review, as set forth in 16 U.S.C. § 1854(b), which requires that the Secretary notify the council of her reasons for disapproving any portion of the plan and provide an opportunity for the council to revise the plan. Appellants also argue that the consent decree essentially is improper under § 1854(c), which authorizes the Secretary to generate her own plans under certain circumstances. Appellants maintain that the Secretary may not act unless the Council has failed to issue a plan after a reasonable period, or the Secretary disapproves of some aspect of a plan and the Council fails to revise it. Because neither § 1854(c) condition has occurred, appellants contend that the consent decree constitutes unlawful rulemaking. They allege that the Secretary is not free to by-pass the dictates of § 1854 through a consent decree, but rather must wait for a revised amendment before developing her own plan.

[8–10] Appellants' challenge fails for three reasons. First, in instances in which the rights of third parties are the basis for blocking the entry of, or vacating, a consent decree, there must be a demonstrable injury or adverse effect upon the group not party to the decree. *See Durrett*, 896 F.2d at 604. This threshold showing is analogous to the standing requirement. A right to intervene does not necessarily suffice to meet the test for vacating a consent decree. In this case, appellants have failed to allege any specific injury to themselves, or any other party. The district court denied appellants' motion to vacate without prejudice to renewal for precisely this reason. Furthermore, appellants' suggestion that they have been excluded from the development of the plan is simply untrue. Appellants will have ample opportunity to comment on the plan contemplated by the consent decree through their influence in the New England Council,[3] and through the notice and comment process required before final rules and regulations are promulgated by the Secretary.

---

3. Apparently some members of the intervenor associations are on the Council.

Second, the statutory argument based on § 1854(c)(1)(B) is without merit. Section 1854(c)(1)(B) grants the Secretary authority to generate her own plan, after disapproving or partially disapproving a council-generated plan, only after the council fails to submit a revision. Appellants read § 1854(c)(1)(B) as circumscribing the Secretary's authority in this case, because Conservation sued alleging the illegality of amendment four. According to appellants, the consent decree represents an improper exercise by the Secretary because the Council has not been given a chance to revise amendment four. Thus, until the New England Council fails to propose revisions, the Secretary may not act. If we were to follow appellants' suggestion, the Secretary would not be able to exercise her statutory discretion to develop her own plan once the Council submits a plan. The practical effect would permit the Council to determine the timetable for developing and enforcing FMPs.

[11] The language of the statute, however, does not support appellants' interpretation. The statute authorizes the Secretary to develop her own plan if the council fails to submit a plan, or amendment thereto, "within a reasonable time." 16 U.S.C. § 1854(c)(1)(A). Section 1854(c)(1)(B) provides that the Secretary may act if "[he] disapproves or partially disapproves any such plan or amendment, or disapproves a revised plan or amendment, and the Council involved fails to submit a revised or further revised plan or amendment, as the case may be." *Id.* at § 1854(c)(1)(B). Thus, while the provision does not expressly include the phrase "after a reasonable time," as in § 1854(c)(1)(A), such a condition is implicit. Without it, the statute fails to indicate who decides when a Council has failed to act or how much time must pass before that decision maker can conclude that the council has failed to act. Since these two subsections are part of the same statutory grant of authority, and a contrary reading would create an incomprehensible gap in the statute and hold the Secretary hostage to the Councils, we hold that the Secretary may generate her own revisions to Council-generated plans, if the council fails to revise after a reasonable time.

Our reading gives proper deference to the Secretary, who, under the Magnuson Act, is ultimately charged with preventing overfishing as mandated by National Standard One. The councils serve the Secretary by presenting FMPs. The Magnuson Act also unequivocally vests the Secretary with the discretion to determine whether a Council's progress on conservation and management is reasonable.

[12] Furthermore, contrary to appellants' assertions, section 1854(c)(1)(B) simply is not implicated in this case. The purpose of the consent decree was to avoid a legal determination whether amendment four complied with National Standard One, or whether the Secretary had discharged her statutory duty under the Magnuson Act. The decree sought to save limited agency resources that would have been wasted on discovery, compiling an administrative record, and protracted litigation. The decree purposefully did not admit wrong-doing on the part of the Secretary or the improper approval of amendment four. It merely mandates the creation of a new amendment, rather than the revision of an old one—amendment four. As the provisions in § 1854(c)(1)(B) related to revisions do not apply here, that section cannot be used as a shield to prevent the Secretary from exercising her statutory discretion.

[13, 14] The third, and final, reason the appeal fails relates to the permissible scope of consent decrees. Appellants argue that because the suit challenged amendment four, the consent decree cannot resolve matters beyond the terms of the amendment. They misstate the factual scope of Conservation's complaint. While it is true that Conservation's original complaint attacked the Secretary's approval of amendment four, it also sought broader relief— more vigorous conservation and management of New England fisheries. In any event, the law governing consent decrees clearly holds that parties are not restricted to the terms of the complaint, and may enter a consent decree on other matters,

provided they have the legal authority to do so. *Local No. 93*, 478 U.S. at 525–26, 106 S.Ct. at 3077.

In the present case, the Secretary simply has exercised her discretion to set a timetable for the development of a FMP for New England fisheries. Specifically, the Secretary has stated in advance that she will exercise her authority to create a plan pursuant to § 1854(c)(1)(A), unless the Council develops a FMP within the "reasonable time" set by the consent decree. Indeed, it specifically provides that the New England Council attempt to create a FMP before the Secretary acts.

The Secretary could have established the same schedule without explicitly notifying the New England Council, or without entering a consent decree, since what constitutes a "reasonable time" under the statute is solely within the Secretary's discretion. Instead, the Secretary chose to settle Conservation's law suit with a fair, adequate, and reasonable consent decree that agrees to flexible dates for the development of a much needed FMP for New England.[4] *See Durrett*, 896 F.2d at 604.

In addition, the district court properly entered the consent decree under the other factors of *Local No. 93*. First, the decree resolved a dispute within the subject matter jurisdiction of the court since the suit challenged the Secretary's approval of amendment four, which was reviewable pursuant to § 1855(b). Second, the parties agreed to develop a fishery rebuilding program to prevent overfishing which remedy is within the general scope of the pleadings. Indeed, this is exactly the relief requested. Third, it satisfies the objectives of the complaint. *Local No. 93*, 478 U.S. at 525–26, 106 S.Ct. at 3077.

[15] We find no merit to appellants' other arguments. Appellants rely heavily on the fact that the consent decree commits the Secretary to develop a plan to "eliminate" overfishing, rather than "prevent" overfishing as stated in the Magnuson Act, 16 U.S.C. § 1851(a). This change, they assert, amounts to rulemaking establishing a new standard. On the contrary, the decree uses the word "eliminate" because the New England Council already has determined that overfishing of cod, haddock, and yellowtail flounder presently occurs. One cannot prevent what has already occurred. Thus, the consent decree establishes that a plan to rebuild will be developed in order to "eliminate" present overfishing, and "prevent" future overfishing.

[16] Similarly, we are unmoved by appellants' contention that the consent decree imposes a new "good faith" requirement with respect to Council action, which is not present in the Magnuson Act. The "good faith" language of the consent decree is superfluous and does not change the relationship between the New England Council and the Secretary in any respect. As the consent decree states, the Secretary maintains sole discretion to determine whether the Council's failure to act requires that she begin developing her own conservation program. Substantively, the provisions of the consent decree mirror those of § 1854. "The fact that certain provisions in the Decree track the language of the Act more closely than others is irrelevant, so long as all are consistent with it." *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1125 (D.C.Cir.1983) (holding consent decree that established similar timetable judicially enforceable).

[17] With respect to the five and ten year rebuilding goals, the Secretary has discretion to establish such target periods. Section 1853(b)(10) provides that the Secretary may include "such other measures, requirements, or conditions and restrictions as are determined to be necessary and appropriate for the conservation and management of the fishery." The Secretary, thus, has broad discretion concerning the contents of a FMP. Of course, the rebuilding targets in the consent decree are not rules, but rather periods that may be incorporated into a final rebuilding program contemplated by the consent decree.

---

4. The parties to the consent decree already have indicated that the specific dates in the decree will be changed because the Council has failed to meet the deadline and both agree more time is necessary.

The decree expressly provides that the provisions for notice and comment by the New England Council and the public will be followed. Once the Secretary approves a plan, she will promulgate regulations to enforce the plan. The consent decree, therefore, does not violate the notice and comment requirements of the statute because it creates no rule for which notice and comment is required. Appellants will have an opportunity to voice their opinions on the plan.

[18] Appellants' last argument contends that the district court could not enter the decree because it lacked jurisdiction under 16 U.S.C. § 1855(b) of the Magnuson Act, which provides for judicial review only of regulations and certain secretarial actions. The claim is without merit. The benchmark for determining whether the court properly exercised jurisdiction is the original complaint filed by Conservation. The complaint challenged amendment four, among other things. Because the district court had jurisdiction under § 1855(b) to review amendment four, the district court could enter the consent decree because it resolved the dispute within the standards established by *Local No. 93*, 478 U.S. at 525–26, 106 S.Ct. at 3077.

The district court's denial of the motion to vacate the consent decree is *affirmed*.



**Nestor Omar BARREIRO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 92–2093.

United States Court of Appeals, First Circuit.

Heard Feb. 1, 1993.

Decided March 31, 1993.

Lawful permanent resident alien petitioned for review of order of Board of Immigration Appeals. The Court of Appeals, Bailey Aldrich, Senior Circuit Judge, held that Immigration Act of 1990 precluded waiver of deportation for alien convicted of aggravated felony who had served term of at least five years imprisonment for that felony.

Affirmed.

**Aliens** ⚖=53.2(3)

Lawful permanent resident alien's imprisonment for seven years on charges of possession of controlled substance with intent to distribute, though largely completed before Immigration Act of 1990, was comprehended therein, accordingly waiver of deportation was precluded by provision prohibiting waiver for alien convicted of aggravated felony who had served term of imprisonment of at least five years for that felony. Immigration and Nationality Act, §§ 212(c), 241(a)(2)(B)(i), as amended, 8 U.S.C.A. §§ 1182(c), 1251(a)(2)(B)(i); § 241(a)(11), as amended, 8 U.S.C.(1988 Ed.) § 1251(a)(11).

---

Jeremiah Friedman with whom Harvey Kaplan, Kaplan, O'Sullivan & Friedman, Lory D. Rosenberg and American Immigration Law Foundation, were on brief for petitioner.

Alexander Shapiro with whom Stuart M. Gerson, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, and Charles E. Pazar, Office of Immigration Litigation, were on brief for respondent.

Denyse Sabagh, Metzger, Gordon & Scully, Barbara Hines, and Lawyers' Committee for Civ. Rights Under Law of Texas, on brief for American Immigration Lawyers Ass'n and Nat. Immigration Project of the Nat. Lawyers Guild, Inc., amici curiae.

Before SELYA, Circuit Judge, BAILEY ALDRICH, Senior Circuit Judge, and CYR, Circuit Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Petitioner Nestor Omar Barreiro, a 40 year old citizen of Argentina, moves for a